David M. Audet, OSB No. 79014
lawdawgs1@aol.com
1001 SW 5th Avenue
Suite 1414
Portland, OR   97204
Tel:  971-254-4162
Fax:  503-224-3203

Attorney for Defendant Duane Leo Ehmer

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATE OF AMERICA' | ) | |
|     Plaintiff, | ) | Case No. 3:16-CR-00051 |
| v. | ) | |
| | ) | **DEFENDANT'S MEMORANDUM** |
| DUANE LEO EHMER, | ) | **IN SUPPORT OF PRETRIAL** |
| | ) | **RELEASE** |
|     Defendant. | ) | |

## I.   PROCEDURAL POSTURE

On January 27, 2016, Duane Ehmer was arrested as he drove out of the Malheur National Wildlife Refuge.  He and two codefendants are charged in a Criminal Complaint with conspiring to impede officers of the United States from discharging their official duties through the use of force, intimidation or threats.   On January 28, 2016, Mr. Ehmer made his first appearance in federal court on the complaint.  A federal public defender appeared with Mr. Ehmer at that hearing.  At that initial hearing, the Court set a preliminary hearing for February 3, 2016, and scheduled arraignment on any subsequent indictment for February 24, 2016.   A detention hearing was scheduled for my client and other defendants on January 29, 2016.  I appeared with Mr. Ehmer at the detention hearing and requested the matter be continued to February 4, 2016, so I could obtain more information about my client and so Pretrial Services could verify that information.

 1 – DEFENDANTS MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

Defendants Shawna Cox and Joseph O'Shaughnessy were conditionally released. The government sought review of the decision releasing Joseph O'Shaughnessy and Defendant Peter Santilli sought review of his detention before Judge Mosman on February 2, 2016. Defendant O'Shaughnessy's conditional release was affirmed and Mr. Santilli's release decision was delayed to February 4, 2016. The government informed counsel on February 2 that they will seek an indictment prior to the scheduled preliminary hearing. Arraignment will occur on February 24, 2016.

## II. APPLICABLE LAW

The Bail Reform Act, 18 USC 3142(b), creates a presumption for release on one's own personal recognizance unless the judicial officer finds that release will not reasonably assure the appearance of the person as required, or will endanger the safety of the community or any person. If the Court determines that recognizance release will not reasonably ensure both the defendant's appearance and the safety of the community, section 3142(c) directs the Court to release the person on "the least restrictive" condition or set of conditions. Detention is appropriate only if "no condition or combination of conditions will reasonable assure the appearance of the person as required and the safety of any other person and the community." 18 USC 3142(f).

The government bears the burden of proof as to both risk of flight and danger to the community. The government must establish flight risk by a preponderance of the evidence and danger by clear and convincing evidence. *United State v. Gebro*, 948 F. 2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The federal rules concerning admissibility of evidence in criminal trials are inapplicable. 18 USC 3142(f). The Court may base its finding on proffer and hearsay. *United States v. Winsor*, 785 F2d 755 (9th Cir. 1986).

Factors to be considered by the Court in assessing release or detention include: the nature and circumstances of the alleged offense, the weight of the evidence, the history and characteristics of the person, and the risk of danger to any person or the community

2 – DEFENDANTS MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

in general. 18 USC 3142(g).

### III. APPLICATION OF THE LAW TO THIS CASE

A. The Nature and circumstances of the offense and the weight of the evidence.

Mr. Ehmer is charged with conspiring with others to prevent federal officials from discharging their official duties at the Malheur National Wildlife Refuge (MNWR) by force, threat or intimidation. The affidavit attached to the complaint sets forth five primary occurrences in an attempt to establish probable cause against the defendants: (1) The Hammonds' Sentencing; (2) Armed Occupier Activity in Harney County, October 5-December 31, 2015; (3) January 2016 Takeover of the MNWR; (4) Continued Occupation of the MNWR; and (5) Social Media Reports and Posts.

1. The Hammonds' Sentencing, Affidavit of Agent Katherine Armstrong, Pages 4-5.

Mr. Ehmer had no involvement in the Hammonds' case. He, like the original sentencing judge, has expressed his belief that a five year mandatory minimum sentence was too harsh a punishment. This belief does not support a finding of dangerousness or flight risk.

2. Armed Occupier Activity, Affidavit of Agent Katherine Armstrong, Pages 5-8.

This portion of the Affidavit refers to activities that occurred in Harney County from October 5, 2015, to December 31, 2015. Mr. Ehmer was not in Harney County during that time. My client did not know any of the other defendants at that time. He did not participate in any of the activities described in paragraphs 14 to 18 of the affidavit. The allegations in this section of the affidavit provide no evidence to suggest Mr. Ehmer is either a danger or a flight risk.

//
//

3 – DEFENDANTS MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

3. January 2016 Takeover of the MNWR, Affidavit of Agent Katherine Armstrong, Pages 8-10.

Mr. Ehmer did not participate in the takeover of the MNWR. He arrived at the MNWR after January 2, 2016.

4. Continued Occupation of the MNWR

A number of alleged co-conspirators were arrested on January 26, 2016. Law enforcement officials directed remaining occupants of the MNWR to leave. On January 27, 2016, Mr. Ehmer heeded that call and drove out of the MNWR with his vehicle, horse trailer and horse. He spoke with agents at a checkpoint and agreed to return to the MNWR briefly in order to encourage others to leave. Other defendants left at my client's encouragement. Mr. Ehmer was arrested when he returned to the checkpoint.

5. Social Media Posts.

Law enforcement accessed Mr. Ehmer's public Facebook page. The Criminal Complaint refers to postings from January 8 to January 13, 2016. These postings contain photographs and comments to show my client was likely present on the MNWR. Mr. Ehmer is commonly recognized and was frequently photographed as the man on the horse holding the American flag. Most of the Facebook and media photographs show a solitary man on a horse with a flag. There are no photographs depicting him as a leader or an aggressor. There are other Facebook photographs showing a person who appears to be Mr. Ehmer cleaning some of the buildings. Other Facebook posting indicate Mr. Ehmer was there out of curiosity, to support the Hammonds and to feed cows. Most of my client's Facebook traffic consists of shared postings and links. I have reviewed Mr. Ehmer's Facebook history in December 2015. During that time there were no posts referring to demonstrations or groups active in Harney County. Mr. Ehmer used Facebook to maintain contact with family and friends. The only groups he is active in is a saddle club and the Society for Creative Anachronism. The Society for Creative

4 – DEFENDANTS MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

Anachronism is an organization dedicated to researching and recreating pre-17th century European history. There are many pictures showing Mr. Ehmer dressed in costume and participating in historical reenactments.

The government Memorandum in Support of Detention refers to a posting of a picture with a caption that refers to winning a war by killing enough of the enemy that they do not want to fight any more. This picture and caption are taken completely out of context. The posting refers to my client's interest in ancient history and wars associated with the historical reenactments he participates in.

The government also refers to a pistol my client allegedly possessed. The alleged pistol is an 1860 cap and ball revolver. This is a civil war era weapon. This is not a AR 15 rifle. The pistol was not on his person when he turned himself in. He never used or displayed the pistol in a threatening or aggressive manner. Indeed, the pistol is consistent with the image of a lone cowboy on the range. In sum, the allegations in the government affidavit and memorandum do not provide any indication of danger or flight risk.

    B. The Nature and Characteristics of the Person.

Duane Ehmer is 45 years old. He has lived most of his life in Oregon. He attended high school in Milton Freewater, Oregon. His father still lives in Milton Freewater. His mother lives with my client's stepfather in Irrigon, Oregon. Mr. Ehmer also lives in Irrigon with his wife, Sue Ellen Ehmer. Mr. Ehmer also has sole custody of his 12 year old daughter from a prior relationship. They own their own home in Irrigon. My client runs his own welding business out of a shop in the same town. He also works part time as a cowboy herding cattle at a local ranch.

Mr. Ehmer served 10 years in the army. He served in Iraq, Korea, Germany and in the United States. He reached the rank of sergeant. He was honorably discharged. While in the army, Mr. Ehmer readily admits developing a problem with alcohol. This lead to

5 – DEFENDANTS MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

his arrest and convictions for DUII and assault in Kansas in 1997. Mr. Ehmer was placed on probation for those offenses.   He completed his probation and has been sober for 18 years.   The age of the prior convictions and my client's current circumstances indicate he is not a danger to any person or to the community.

## IV.  CONCLUSION

Mr. Ehmer's alleged participation in the offense is limited at best.   He was not present in Harney County before or during the takeover.   He does not identify with any group that was active in demonstrations in Burns or initiating the takeover of the MNWR. There is no evidence he engaged in threatening or provocative behavior on the MNWR.  His presence on the MNWR is more consistent with patriotic, symbolic support of the American west and a rural lifestyle.

Mr. Ehmer is very stable in and has strong ties to Irrigon, Oregon.  He is the prime supporter of his family.  I have spoken with many of his family and friends in Irrigon. They uniformly describe him as a hardworking and giving man.  He is not driven by political agendas.   There are clearly conditions, such as no firearms, travel and internet restrictions, that will assure his appearance in court and the safety of the community.

Respectfully submitted this 4th day of February, 2016.

/s/ David Audet
Attorney for Defendant Duane Ehmer