Andrew M. Kohlmetz, OSB #955418
Kohlmetz Steen & Hanrahan, PC.
741 SW Lincoln Street
Portland, OR 97201
Tel: (503) 224-1104
Fax: (503) 224-9417
Email: andy@kshlawyers.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON PATRICK,<br><br>Defendant. | Case No. 3:16-CR-00051-09-BR<br><br>DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO REVOKE PRETRIAL DETENTION ORDER AND FOR RELEASE OF DEFENDANT |

**Procedural History**

On January 29, 2016, Mr. Patrick made his first appearance on the underlying Complaint herein. The Complaint charge Mr. Patrick with Conspiracy to Impede Officers of the United States From Discharging Their Duties Through the Use of Force, Intimidation, or Threats in violation of 18 U.S.C. § 372. This is a class D felony punishable by a maximum of 6 years of incarceration and a fine not to exceed $250,000.00. According to the federal sentencing guidelines, the Base Offense Level for this crime is 10. *USSG 2X1.1, 2A2.4.*

A detention hearing was held pursuant to 18 U.S.C. § 3142(f). Magistrate Judge Stacie Beckerman, the same judge who found probable cause to issue the Complaint itself, presided over the detention hearing. After considering the submissions and arguments of the parties Judge Beckerman ordered Mr. Patrick detained as both a flight risk and a danger to the community.

The first part of Judge Beckerman's detention Order, attached as Exhibit A, found that on the motion of the government that the this case involved an alleged risk to the safety of any other person or the community because it involved a crime described in 18 U.S.C. § 3142(f)(1), as well as a "serious risk" that the defendant would flee.

Judge Beckerman's Order went on to find that "No condition or combination of conditions will reasonably assure the appearance of the defendant as required due to:

- Unknown family/employment/community ties
- Unstable/no residence available
- Information unverified/unverifiable
- Other: Pending case in GA/No ties to District

And that "No condition or combination of conditions will reasonably assure the safety of other persons and the community due to:

- Nature of offense
- Violent behavior
- Prior criminal history
- Other: pending case in GA

On February 3, 2016 the defendant was indicted with a single count of Conspiracy to Impede Officers of the United States, the same charge as in the original complaint. Pursuant to 18 U.S.C. § 3145(b) Mr. Patrick now seeks revocation of Magistrate Judge Beckerman's January 29, 2016, Order of Detention. Review of a magistrate's release decision and facts relied thereon is *de novo*. *United States v. Koenig, 912 F.2d 1190, 1192-93 (9th Cir. 1990); United States v. Lopp, 2015 WL 5139367 (N.D.Ca. 9/1/15)*

**Statutory Framework**

The Bail Reform Act codified at 18 U.S.C. § 3141 *et. seq.* provides the statutory framework by which release decisions are to be made in federal criminal courts. In cases such as the defendant's, a class D felony, the Bail Reform Act creates a presumption that the defendant will be released on his own recognizance or unsecured bond. 18 U.S.C. § 3142(b). If the Court determines that a recognizance or bond release will not reasonably assure the appearance of the



Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

defendant or will endanger the safety of any other person or the community, the Court shall order the defendant released on conditions. 18 U.S.C. § 3142(c). The conditions of such a release must be "the least restrictive" condition or combination of conditions that will reasonably assure the appearance of the defendant and the safety of other persons and the community. *18 U.S.C. § 3142(c)(B).*

Detention of a defendant facing this charge is appropriate only if after a hearing the Court determines that there are no conditions or combination of conditions that will reasonably assure the appearance of the defendant or the safety of other persons or the community. 18 U.S.C. § 3142(f). In keeping with the presumption of release, the statute calls for reasonable assurances of appearance and safety: Not for absolute assurances. Since the presumption is one of release the government bears the burden of demonstrating that no condition or combination of conditions can reasonably assure the appearance of the defendant and/or the safety of other persons and the community.

The standard of proof for non-appearance and danger are different. The government must prove by a preponderance of the evidence that no condition or combinations of conditions can reasonably assure the appearance of the defendant. The government must demonstrate by clear and convincing evidence that the no condition or combinations thereof can reasonably assure the safety of others or the community. *United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991); United States v. Motamedi, 767 F.3d 1403, 1406 (9th Cir. 1985).*

Factors to be considered in determining the release issue are listed at 18 U.S.C. § 3142 (g). Briefly they are as follows:

1) The nature and circumstances of the offense.
2) The weight of the evidence against the person.
3) The history and characteristics of the person, and
4) The nature and seriousness of the danger to any person or the community if the defendant were released.

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

**1) The Nature and Circumstances of the Offense**

As an initial matter, the government is wrong, Judge Beckerman's Order notwithstanding, when it labels this offense a "crime of violence" under the Bail Reform Act. The Bail Reform Act defines "Crime of Violence" in pertinent part as:

> (A) An offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;
> (B) Any other offense that is a felony and that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense… 18 U.S.C. § 3156(4)

The crime of Conspiracy to Impede Officers of the United States does not necessarily contain an element of the "use, attempted use, or threatened use of physical force against the person or property of another." It would therefore only qualify as a crime of violence under the Bail Reform Act if it fell under 18 U.S.C. § 3156(B) as an offense that by its nature involves a substantial risk that physical force may be used in the course of committing the offense. The United States Supreme Court in Johnson v. United States recently struck down as unconstitutionally vague a similarly worded "residual" clause in the Armed Career Criminal Act at 18 U.S.C. § 924(e)(2)(B)(ii). *576 U.S.___, 135 S.Ct. 2551, 192 L.Ed.2d. 569 (2015).* Under *Johnson,* 18 U.S.C. § 3561(B) falls as well.

The government in its initial Complaint goes to great lengths to portray the acts of the charged defendants as an unjustified "armed occupation" of the Malhuer National Wildlife Refuge ("MNWR"). While it was certainly an occupation and while many of those participating in events at the Refuge were in fact armed, the government's narrative is incomplete. The occupation of the MNWR was born of the lawful protest(s) which had preceded it in Burns. It was primarily, almost exclusively a political act that had, allegedly criminal results. The nature of the crime itself is a political one which dramatically differentiates it from the generic criminal activity routinely prosecuted by the courts. This was an action taken based on sincerely and strongly held political beliefs that caused as a secondary effect an alleged violation of federal law. This is not crime for crime's sake. Nor is its genesis found in the more craven motives often seen in criminal cases: money, power, greed, hatred or sheer sociopathy. This "Armed Occupation" is in reality a political protest – and the "Occupiers" are themselves protesters.

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

Paragraph 58 of the initial complaint captures succinctly the purpose of this occupation in Mr. Patrick's own words:

> We hope to achieve is restore the constitution and the right of the people of Harney County…access of the land back to proper jurisdiction…Most people are walking around without a weapon.

What Mr. Patrick refers to is nothing new. It is representative of a longstanding and principled (if not legally correct) popular dispute concerning the role of the federal government in the ownership and regulation of public lands in the United States that has its antecedents in the Northwest Ordinance of 1787 enacted by the Confederation Congress. The Northwest Ordinance is commonly cited as the first authority for the principle that the federal government takes fee simple ownership of all unsettled and unclaimed lands outside the borders of recognized states.

The essence of the arguments underlying the current controversy that led many of the defendants and those sympathetic to their claims to Burns, Oregon in the late Fall of 2015 is a strict reading of the Constitution of the United States, which in the mind of Mr. Patrick does not authorize federal ownership and jurisdiction over the MNWR (and most other federal land holdings in the West.) His arguments are based on two separate provisions of the United States Constitution: Article I, section 8, clause 17, and Article IV, section 3, clause 2.

Article I, section 8, clause 17 provides the Congress shall have the power:

> To exercise exclusive Legislation in all cases whatsoever, over such District (not exceeding ten Miles square) as may be, by Cession of particular States, and the acceptance of Congress, become the Seat of Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings:

According to many of the MNWR protesters, this provision gives the federal government authority only over lands ceded to or purchased by the consent of state legislatures. Article IV, section 3, clause 2 of the U.S. Constitution provides that:

> The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

The MNWR protesters read this provision of the Constitution to allow federal authority over only land within a "Territory" of the United States. Thus in the view of the MNWR protesters the federal government has no legal claim to the MNWR which was neither purchased or ceded from the State of Oregon, nor located within a Territory of the United States. Simply put the MNWR exists entirely within the State of Oregon. So situated, there is no basis for federal ownership, control or regulation.

This is the conceptual backdrop against which many of the MNWR protesters viewed the prosecution of the Hammond family. To be sure, there are many more complaints concerning the Hammond family's relationship to the federal government and how they were ultimately prosecuted and sentenced. However, and at risk of oversimplification, it is the very notion that the Hammonds could be prosecuted federally for offenses that occurred on land to which the federal government has no title or right is that is at the heart of not only the protests in Burns which preceded the occupation of the MNWR, but the occupation itself.

Mr. Patrick spoke openly to the press during his time at the MNWR. In a January 7, 2016, Oregonian Article he revealed to the reporter that,

> he lost a roofing job with an $80,000 annual salary, benefits and a company truck when he abruptly set out for the standoff. He had already exhausted most of his vacation days for the year attending other so-called Patriot events.
> "I didn't get to give appropriate notice," he said of his voicemail message he left to alert bosses he wouldn't be coming in to work.
>
> "The Constitution is more important," Patrick said.[1]

Whether one agrees with Mr. Patrick's views or the premises underlying them; Whether or not his actions ultimately prove criminal, the point is that Mr. Patrick was present at the MNWR as a result of his deeply held beliefs that the federal government was acting contrary to the U.S. Constitution. He felt and continues to feel he had a moral obligation to the country to make a stand against what he perceived as injustice. This is not traditional criminality. There are

---

[1] http://www.oregonlive.com/pacific-northwest-news/index.ssf/2016/01/with_little_outside_support_mi.html as viewed 2/10/16.

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

no attempts to hide his actions from the scrutiny of the public, law enforcement or the courts. His arrest and prosecution were known and highly likely outcomes.

The occupation of the MNWR is nothing if not a classic example of political protest through direct-action civil disobedience. Beginning in October of 2015, as the resentencing of the Hammonds approached, codefendants Ammon Bundy and Ryan Payne were already seeking redress of their complaints against the federal government from the local authorities in Harney County. In November Ammon Bundy provided Harney County Sheriff Dave Ward with a public letter outlining what they believed to be a litany of unconstitutional and illegal actions committed by the federal government in their treatment of the Hammond Family and their ranch. This letter and its references are attached hereto as Exhibit B. This letter was followed in December by what Ammon Bundy believed to be a more formal Notice of Redress of Grievances, made publicly available and provided to various local and Oregon State Officials. This Notice is attached hereto as Exhibit C.

What these documents and actions evince are that those individuals who ultimately occupied the MNWR were for months seeking what they thought were appropriate local government channels by and through which their complaints of a federal government gone out of control could be brought. To their mind seeking remedy from the federal government itself was futile and counterproductive. They sincerely believe that the local authorities are the only ones with Constitutional and legal authority to act on their behalf. It was only when it became clear to them that local authorities would not assist them in pressing their claims that the occupation of the MNWR occurred. Paragraph 12 of the Initial Complaint refers to a January 4. 2016 video in which Ammon Bundy expresses his frustration at having spent the last two months petitioning the state and local governments to no avail:

> We feel that we have exhausted all prudent measures and have been ignored. And it has been left to us to decide whether we allow these things to go on or whether we make a stand.

The occupation of the MNWR began on January 2, 2016. On January 4, 2016, Ammon Bundy reaffirmed that the occupation was to be a peaceful one and that although they were (obviously) serious about what they were doing, there would be no violence unless "the

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

Government wants to take it there." (Complaint paragraph 11). For the most part Mr. Bundy proved accurate. Up until the stop and arrest of the first five of the MNWR protesters on state route 395 North of the MWNR January 26th, 2016 that resulted in the shooting death of Lavoy Finicum, the MNWR protesters came and went from the Refuge at will. Private citizens, members of various media organizations and even representatives of state and local governments traveled to and from the refuge to meet with the protesters. Press conferences were held both on and off the refuge. Not a single incident of threats, violence or intimidation were reported during these numerous interactions.

The government's initial Compliant while rich in rhetoric and tone in branding the "armed occupiers" as intimidating and threatening violence, completely lacks any specific threats of violence made by any of the occupiers contemporaneous to their presence at MNWR – other than statements made by a handful of the occupiers that they would defend themselves from law enforcement if necessary. There are but two paragraphs, paragraphs 16, and 25, in the Complaint that approach threats of violence. Paragraph 16 relates to an incident that occurred on December 18, 2015 in Burns, Oregon between a citizen and two individuals, one of whom is identified as codefendant Jon Ritzheimer, wherein the citizen hears shouting to the effect that she "is BLM." Mr. Ritzheimer and the other individual left the area in a black pickup truck. The paragraph goes on to relate that in the following weeks up until Christmas Day she observed the black pickup at her residence and place of employment and another tailgating her aggressively. These incidents predated the occupation of the MWNR. There is no evidence that they were in any way sanctioned or condoned by anyone other than Mr. Ritzheimer and his cohort.

Paragraph 25 refers to the alleged fact that on January 2, 2016, an unidentified and unverified "source" informed a Harney County Sheriff's Deputy, who then informed someone at the BLM that

> the group controlled the MNWR and had explosives, night vision goggles and weapons and that if they didn't get the fight they wanted out there they would bring the fight to town."

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

This is nothing more than unreliable and unverifiable multiple level hearsay. Furthermore the statement that they would bring the fight to town is absolutely contradicted by the subsequent and peaceful conduct of the occupation itself.

What few threats of violence appear in the narrative are those that are made in response to what at least some of the occupiers felt at the time was an imminent threat of an armed response to the occupation by federal law enforcement authorities. Ammon Bundy, Jon Ritzheimer and the deceased Lavoy Finicum are reported to have made statements to the effect that they were prepared to defend themselves if federal law enforcement agents entered the refuge in an attempt to seize them. (i.e. paragraph 32 – Jon Ritzheimer, paragraph 41 – Ammon Bundy.)

The Indictment under which the government now proceeds suffers from similar vagaries. After reciting a boiler-plate recitation of the statutory elements of 18 U.S.C. 372 as it applies them to the defendant the Indictment lists seven overt acts allegedly in support of the charge. The first alludes to two defendants travelling to Harney County in October, 2015, to warn the Harney County Sheriff of 'extreme civil unrest' if certain, unspecified demands. The next four overt acts describe in general and conclusory terms the protestors arrival and presence on the MNWR. While their presence is described as accomplished by force, no examples of any such force are proffered, save the fact that some of the protesters possessed firearms, and that certain "threats" were made by some to resist their forceful eviction from the MNWR. The last two overt acts allege simply that some protestors encouraged others to participate in their activities and that some had traveled to Harney County with the specific intent to intimidate and coerce the people of Harney County.

Yet, the facts of what did and did not occur were widely and publicly available in the months leading up to and even during the events which transpired at MNWR. Unlike routine criminal endeavors, the alleged conspirators in this case took extraordinary steps to document what was occurring at the refuge, who was present and/or involved and the reasons why the protest was being undertaken. Public calls for support, media press conferences and internet video reporting were all being conducted from the refuge up until the government shut off access after the shooting of Lavoy Finicum. Dozens of individuals came and went from the refuge.

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

Finally, one circumstance in Mr. Patrick's alleged offense that is not mentioned by the government is that on January 27, 2016, Mr. Patrick reached out to counsel in an effort to seek representation as he walked off the refuge to turn himself in to authorities. While the first group of defendant's made their initial appearances on January 27, 2016 I, and others at my office were in contact with case agents and AUSA's in an effort to communicate to them that Mr. Patrick wished to peacefully turn himself in. After walking some eight miles out of the MNWR that is precisely what he did. He has been in custody since that time and anything that has happened or been said at the MNWR since his voluntary departure into police custody should not be attributed to him.

2) **The Weight of the Evidence Against the Person**.

In terms of placing Mr. Patrick at the MNWR and participating in the occupation and protest, the government's proof does appear strong at this juncture. However, as the Bail Reform Act itself reminds us, this is in no way an abrogation of the presumption of innocence. 18 U.S.C. 3142(j). In that vein, the charge is one of Conspiracy and the Indictment (as well as the Complaint before it) is bereft of any evidence on the crucial element of any specific agreement made by Mr. Patrick to specifically accomplish the offense of Impeding a Federal Officer.

3) **The History and Characteristics of the Person**

Contrary to the findings made by Judge Beckerman in support of her initial detention Order Mr. Patrick does have known family, employment and community ties; He does have stable and verified residences available to him. That he has family, employment and community ties to the Pacific Northwest has been verified by U.S. Pretrial Services, and while not necessarily in the District of Oregon they are all in the Puget Sound are of Washington. Mr. Patrick is a 43 year old divorcee with two, young adult children. He was born in Everett, Washington and lived in the state of Washington until the year 2002. He graduated from the Snohomish County Christian School H.S. in 1990 and shortly thereafter married his high school sweetheart. He still has family and lifelong friends in Washington state. His Mother, Christy Patrick, and his sister Kelli Rippee – both interviewed by Pretrial services and both available to help ensure Mr. Patrick abides by any release conditions (and both present in the court room at his initial appearance) still reside in the area. He has been a professional roofing employee,

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

subcontractor, and the owner of a roofing contracting business since he was 17 years old. In 2002 he moved to Bonaire Georgia to take advantage of a building boom. He owned his own roofing contracting business, "Super Roofers." Mr. Patrick lost his business and his home in the recent great recession. Since that time he has worked sporadically as able as a roofer. Despite the economic downturn in 2014 he was recognized as a Red Cross Hometown Hero in Dsiaster Relief for his spontaneous efforts to help at least 18 people stranded in a snowstorm between Atlanta and Bonaire Georgia.[2] And while he recently lost an $80,000.00 a year job, he is easily employable.

Mr. Patrick also has a verified and stable residence available for him if he is released. His mother has informed Pretrial Services that he is welcome to live with her in Everett, WA. She owns her home free and clear and has told U.S. Pretrial that she is even willing to post a bond on the property if necessary. Ms. Patrick is also willing and able to assist Pretrial Services in any way to ensure that Mr. Patrick complies with the conditions of his release and returns to court. His sister's home is also a verified potential resource and she is willing also to assist Mr. Patrick in meeting his release obligations.

Mr. Patrick suffers from no substance or alcohol related addictions. He does not have any mental health conditions that would interfere with his ability to comply with this court's orders. Mr. Patrick's criminal history is extremely limited. According to the Pretrial Services reports available at the January 29, 2016, hearing he has one prior conviction for a minor driving offense and four prior arrests with no convictions. There is no indication he has ever failed to appear for a scheduled court appearance.

He does have a pending felony criminal case in Houston County Georgia for Terroristic Threat. While the title of the offense is no doubt concerning, the Georgia terroristic threats statute sweeps extraordinarily broadly. It reads in relevant part;

> A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence, to release any hazardous substance, as such term is defined in Code Section 12-8-92, or to burn or damage property with the purpose of

---

[2] http://www.13wmaz.com/story/news/local/warner-robins/2014/06/25/hometown-heroes/11367037/ As viewed 2/10/2016.

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

> terrorizing another or of causing the evacuation of a building, place of assembly, or facility of public transportation or otherwise causing serious public inconvenience or in reckless disregard of the risk of causing such terror or inconvenience. No person shall be convicted under this subsection on the uncorroborated testimony of the party to whom the threat is communicated. *Ga. Code Ann. § 16-11-37 (West*)

The underlying police reports from this case read far more like a drunk and disorderly charge than a terroristic threats case. In essence the authorities claim that Mr. Patrick entered into the Warner Robins Municipal Court in an intoxicated state. After allegedly refusing an alcohol test and becoming "loud and belligerent" he was physically taken into custody. After he was taken into custody law enforcement officers claim to have spoken to one witness who allegedly stated that earlier in the day Mr. Patrick was angry at having to access the court through a back alleyway due to construction and that the court was violating his Constitutional rights. The witness allegedly heard Mr. Patrick state that he was going to kill everyone in the courtroom when he got there. Mr. Patrick was not in possession of any weapons during this incident.

Mr. Patrick is represented by counsel in this case. He has an arraignment currently scheduled for February 17, 2016. It is Mr. Patrick's intent, confirmed by local counsel in Georgia, to enter a plea of not guilty and request a jury trial later this year. This makes sense given the underlying statute's prohibition on resting a conviction on the uncorroborated testimony of the party to whom the threat is communicated. Mr. Patrick has a release resource in Georgia, a close friend, David Ballengy, who has known Mr. Patrick for approximately six years. They met as congregants in the River Church in Kathleen Georgia where Mr. Ballengy indicates Mr. Patrick was for years an active church goer. They were involved directly with the Church's fundraising activities for battered women and at-risk youth. Mr. Ballengy has spoken to U.S. Pretrial and he confirms that he is available to assist Mr. Patrick in anyway necessary. Mr. Ballengy is a disabled veteran of the United States Marine Corps and shares a home in Perry, Georgia with his wife. Neither he nor his wife have any criminal convictions. He indicates that Mr. Patrick was residing with them at his home prior to returning to the Northwest and still has a bedroom at his home.

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

4) **The Nature and Seriousness of the Danger to any Person or the Community if the Defendant Were Released**.

In her initial Order Judge Beckerman further found that Mr. Patrick posed an unacceptable risk of danger because of the nature of the Offense, violent behavior, prior criminal history and his pending case in Georgia. The nature of the offense has been discussed at length above. To put the issue of violence to rest, there is simply no evidence of any violent behavior on the part of Mr. Patrick separate and apart from his presence at the MNWR. There is no written nor oral explanation of what if any risk to the community Mr. Patrick poses if released upon conditions, nor is there any evidence to support such a finding. The government speculates that he could "do it again." If that were the standard for such proof then no one would be released pending a federal criminal trial.

**Conclusion**

At its core this remains a Class D felony charge. Far more dangerous and less-likely-to return defendants are released on conditions in this District every day: Defendants charged with horrible and personal acts of violence; Defendants with multiple prior convictions, defendants with severe substance abuse problems, mental health or personality deficits, drug dealers, pimps, sophisticated fraudsters and thieves. Individuals who routinely have engaged in a criminal lifestyle. Such are some of the successful candidates for conditional release in federal court.

For Mr. Patrick, the events that led to this case are now over. The points he wished to make have been made and at long last there is a forum within which he believes his arguments may be heard. He is not a danger to commit any further offenses. Whatever minimal safety risk he may pose is easily manageable with any number of pretrial release conditions. He has a verified network of support and meets every release criteria in the Bail Reform Act.

In terms of his flight risk, the notion that he – or any of these defendants for that matter might flee the jurisdiction of the court borders on the ludicrous. It stands in contradiction to how the well documented, open and public course of events that led to this Indictment unfolded. Mr.

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

Patrick desires greatly to continue to participate in this case. This is in many respects a fight of his choosing. It is not the result of his discovery after an investigation of his clandestine activities. It is not something he will turn his back on. In an effort to have this matter heard he is absolutely willing and able to abide by conditions imposed on him by this court.

Respectfully submitted this 10th day of February, 2016.

Andrew M. Kohlmetz
Andrew M. Kohlmetz, OSB 955418
Attorney for Defendant Patrick

Kohlmetz Steen & Hanrahan, PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104