Andrew M. Kohlmetz, OSB #955418
Kohlmetz Steen & Hanrahan PC
741 SW Lincoln Street
Portland, OR 97201
Tel: (503) 224-1104
Fax: (503) 224-9417
Email: andy@kshlawyers.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> vs.<br><br>JASON PATRICK,<br><br>    Defendant | Case No. 3:16-CR-00051-BR-09<br><br>RESPONSE TO GOVERNMENT'S MOTION FOR PROTECTIVE ORDER |

COMES NOW The Defendant, Jason Patrick, by and through his attorney Andrew M. Kohlmetz, and hereby Responds to the Government's Motion for a Protective Order (Docket record #245) in this Case.

**Summary of Response**

The defendant objects to the blanket protective order sought in this case on the following grounds:

1) The government's Motion fails to establish good cause for the blanket Order requested.

2) There is a compelling public interest in disclosure in this case.

3) The terms of the proposed Order are vague, and overbroad, and

4) The terms of the proposed Order unduly Infringe upon and chill the defense function.

DEFENDANT'S RESPONSE TO MOTION FOR PROTECTIVE ORDER

The defense does not object in principle to a more narrowly drafted Protective Order based on particularized showing(s) of good cause. Nor does the defense object in principle to the redaction of certain personal identification information from discovery materials to be provided to the defendant or others not part of the defense team. The defense remains available to confer with the government on the terms of any such proposed Order.

**Expanded Response**

**1) The Government's Motion Fails to Demonstrate Good Cause for the Blanket Order Requested.**

Pursuant to Federal Rule of Criminal Procedure 16(d)(1) the government must set forth good cause before the court may enter a protective order or otherwise "deny, restrict, or defer discovery or inspection, or grant other appropriate relief." While there are few Ninth Circuit cases dealing with the good cause standard in criminal cases, recent District Court opinions have cited favorably to the Third Circuit approach as outlined in *United States v. Wecht,* 484 F.3d 194 (3d Cir. 2007). In *Wecht*, the Third Circuit drew its reasoning from prior cases analyzing Federal Rule of Civil Procedure 26(c). The rule in *Wecht* is stated succinctly as this:

> Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.
> *Wecht,* 484 F.3d at 211, quoting *Pansy v. Borough of Stroudsburg,*
> 23 F.3d 772, 786 (3rd Cir. 1994).

While no reported criminal case in the Ninth Circuit has explicitly adopted the reasoning of *Wecht,* The Ninth Circuit's civil discovery case law tracks with that in the Third Circuit. See *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003). Under *Foltz*,

a party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted…see also *Beckman,* 966 F.2d at 476 ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.*") (*quoting *Cippoline v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3rd Cir. 1986)(internal quotation marks omitted)); *Defor v. Schmid Prods. Co.,* 120 F.R.D. 648, 653 (D.Md. 1987)(requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad , conclusory allegations of potential harm.") *Foltz*, 331 F.3d at 1130-31.

*Foltz*, has been cited with approval in at least three unreported District Court decisions in the Ninth Circuit: *United States v. Calderon, 2014 WL 1401941 (D.C.C.D.Cal.)(unpublished opinion 4/8/14), United States v. Arredondo, 2012 WL 1946955 (D.C.D.Arizona)(unpublished opinion 5/30/12), and United States v. Patkar, 2008 WL 233062 (D.C.D. Hawai'i)(unpublished opinion 1/28/08)* The obvious implication of these analyses is that blanket protective orders are clearly inappropriate. The Government's Motion seeks a blanket order preventing the free dissemination of all 95,000 plus pages of discovery based on the Affidavit of Katherine D. Armstrong. In her affidavit Ms. Armstrong concludes:

> That if witness statements provided to the defense in discovery were to be publicly disseminated, then it would be highly likely that those witnesses would be subject to harassment, threats, and intimidation.
> (Affidavit at paragraph 5)

The problem is that Agent Armstrong's conclusion does not flow from the facts upon which it is based. Nor does her conclusion support the blanket Protective Order requested by the government, as opposed to a more precise remedy: For example – redaction of the personal information of concern to the government upon a specific showing of good cause. Paragraph 5 of

DEFENDANT'S RESPONSE TO MOTION FOR PROTECTIVE ORDER

her affidavit lists alphabetically five discrete examples of what the government refers to as witness intimidation or harassment. All of these events occurred in the days leading up to and during the so-called occupation of the Malheur National Wildlife Refuge.

In subparagraph a) Agent Armstrong relays the account of a citizen who was approached by two individuals, now apparently identified as defendants herein, who yelled "You're BLM, You're BLM." One of the individuals then allegedly stated that he know what car she drove and that she would be followed home. A vehicle similar to the one the two individuals were driving was seen outside her home at some unspecified later point in time. The following week the citizen reported that another vehicle followed her in an aggressive manner. Finally, the previously mentioned black pickup was noticed outsider her place of employment on Christmas Day. All of these activities preceded the "occupation of the Refuge. No specific threats of harm appear to have been made.

In subparagraph b) Agent Armstrong indicates that on December 13, 2015, a Harney County Law Enforcement Officer received a disparaging email; that on December 16, 2015 this officer's parents reported being followed after leaving a school play; and that on January 1, 2016. One of the officer's parents described being watched as he picked up his mail by two men in a pickup truck with Colorado plates. No specific threats of harm appear to have been made, and no ties to any defendant in this case are established. The last event occurred on January 1, 2016, the day before the "occupation" of the Refuge began.

In subparagraph c) Agent Armstrong describes two incidents in late December and/or January 1 or 2, 2016 where the minor child of a nearby town's police chief was allegedly followed home. Again there are no specific threats and no ties can be established to any defendant herein.

DEFENDANT'S RESPONSE TO MOTION FOR PROTECTIVE ORDER

Kohlmetz Steen & Hanrahan PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

In subparagraph d) Agent Armstrong describes one environmentalist having his life threatened and another being accused of being an undercover FBI agent after going to the Refuge itself for ten days in mid to late January and holding press conferences after "occupiers" had held their own press conferences. A "very ugly" crowd is described. No ties to any defendant in this case are established.

Finally subparagraph e) refers to a plethora of threatening, intimidating and harassing statements regarding federal employees made by persons unspecified found at unspecified times on unspecified social media platforms.

From this small collection of incidents, none of which appear directly threatening, many of which are only tenuously connected to these defendants and which appear to have occurred primarily before and perhaps during the occupation but not since the occupation itself ended, the government seeks to restrict the defense dissemination of all discovery. It seems quite reasonable however that a far more limited protective order, if any at all, would suffice. Simple redaction of personal information or restriction of the dissemination of that personal information would achieve the same goals without unduly burdening the defense function.

2) **There is a compelling Public Interest in Disclosure in this Case.**

In the Ninth Circuit and subject to certain exceptions, documents exchanged in discovery are presumptively public in nature. *United States v. Calderon*, 2014 WL 1401941 (D.C.C.D.Cal.)(unpublished opinion 4/8/14) citing *Moulay v. Ragingwire Enterprise Solutions, Inc.*, 2010 WL 4628076 (E.D.Cal. November 4, 2010) (citing *San Jose Mercury News, Inc. v. U.S. District Court*, 187 F.3d 1096, 1103 (9th Cir.1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public")).

Kohlmetz Steen & Hanrahan PC
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

The public nature of the instant case is apparent. Local, state and national press have covered the "occupation" since its inception. The public's interest in the occupation overall and in the investigation of the occupiers is intense and ongoing. This interest is further stoked by public statements by federal and state officials regarding the investigation, along with the release by the government of reports and the results of investigations into issues directly related to the instant case. These public releases of information include much of the type of information that the government now seeks to control with the proposed protective order. The day of the filing of this motion, for example, the government publicly released the results of an investigation into the shooting death of Robert "LaVoy" Finicum, which included the information that the government was in the process of investigating one of the FBI special units involved in the death. This information has already been widely reported. See, e.g. Zaitz, Les, "FBI agents under investigation for possible misconduct in LaVoy Finicum shooting" *The Oregonian*, 8 Mar 2016, found at

http://www.oregonlive.com/oregon-standoff/2016/03/oregon_standoff_fbi_agents_und.html.

The government had also already publicly released video of this shooting almost immediately after the incident. See House, Kelly, "FBI releases video footage of LaVoy Finicum shooting" *The Oregonian*, 28 January 2016, found at

http://www.oregonlive.com/oregon-standoff/2016/01/fbi_to_release_video_footage_o.html. The government should not be allowed to pick and choose which discovery materials it deems appropriate for public release while at the same time seeking to restrict the defense's ability to do the same. What is good for the goose is good for the gander.

The Supreme Court, in addressing whether or not a newspaper should be allowed to release information obtained through depositions, production requests and interrogatories in a civil case in which it was a party found that it was necessary to consider whether the "practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression" and whether "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved. *Seattle Times Co. v. Rhinehart*, 467 US 20, 32 (1984) (internal citations omitted).

The exceptional public interest in this case and in the investigation and prosecution of this case in particular given the recent allegations of FBI misconduct in the shooting death of one of the protesters militates for public access to much if not all of the discovery material, subject to particularized requests for protective orders. This is not the first complex case in this District to be plagued by disturbing allegations of law enforcement misconduct in the government's investigation. In *United States v. David Joseph Pedersen and Holly Ann Grigsby*, Case no. 3:12-CR-00431, Judge Haggerty felt compelled to write a 63 page Amended Supervisory Opinion to describe in part what he saw as systemic problems with the government's investigation and provision of discovery and Brady evidence in this District. Not two months into this, perhaps the most complex criminal case in this District, we are today informed of an inquiry into potential misconduct by FBI agents in the shooting of occupier Lavoy Finnicum and its aftermath. It is interesting, if not disturbing that the revelation of this potential misconduct did not come by way of a *Brady* type disclosure, but by a press release. This case calls for more public exposure. Not less.

3) **The Terms of the Proposed Order are Vague, and Overbroad.**

The government's Motion seeks to prevent the dissemination of discovery to

1) The defendants in this case;

2) Persons employed by the attorney of record who are necessary to assist counsel of record in preparation for trial or other proceedings in this case: and

3) Persons who defense counsel deem necessary to further legitimate investigation and preparation of this case.

Who defines who is "necessary" to assist defense counsel? Are family, friends and associates of the defendants who wish to lend a helping hand "employed" by the attorney of record? How does one define "preparation" for trial? Who tells us who what a "legitimate" investigation entails? These words have only subjective meanings and it is clear the government's intent is simply to prevent public dissemination of the entirety of the discovery rather than to craft a narrow protective order justified by a particularized showing of good cause. Mr. Patrick and I have been approached by numerous friends, family members, acquaintances and other interested parties who have demonstrated some level of interest in assisting the defense in this case. By what definition do I decide one or all of them is necessary to a legitimate defense need?

4) **The Terms of the Protective Order Unduly Infringe Upon and Chill the Defense Function**

The Motion also seeks to make each and every defense attorney the gatekeeper of the government's voluminous production by requesting that all persons to who receive copies of the discovery abide by the Protective Order and refrain from copying or further disseminating the discovery materials. How is defense counsel to enforce this Order? Beyond having to make an

DEFENDANT'S RESPONSE TO MOTION FOR PROTECTIVE ORDER

ad-hoc determination to who can or cannot receive copies of the discovery materials based upon the ill- defined language of the Motion, the Motion appears to lay a foundation for a later finding that the attorneys or their clients are somehow liable for a disclosure that later appears not to conform with the AUSA's notion of who is person necessary to the defense function or what might be a legitimate defense investigative approach. The natural effect of this Order if granted would be to severely restrict the universe of persons to whom the defense might turn to in seeking assistance for their clients in this case. If I decide that one or all of the persons who have approached me or my client should have a copy of a pertinent portion of the discovery, have I opened myself or my client up to later contempt charges? As drafted, any reading of the Order, if not agreed with by the AUSA's office is a potential violation of its terms.

Conclusion

For the reasons above, and any others apparent at the hearing on the Motion, the government's Motion for a Protective Order should be denied without prejudice to file a request for a more limited protective order or orders after further conferral with the defense.

Respectfully submitted this 8th day of March, 2016.

*Andrew M. Kohlmetz*
Andrew M. Kohlmetz, OSB 955418
Attorney for Defendant Patrick