Lisa Hay
Federal Public Defender
Rich Federico
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon  97204
(503) 326-2123  Telephone
(503) 326-5524  Facsimile
Lisa_Hay@fd.org
Rich_Federico@fd.org
Attorneys for Defendant Ryan Payne

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:16-cr-00051-BR |
| Plaintiff, | JOINT STATUS REPORT |
| v. | |
| AMMON BUNDY, JON RITZHEIMER, JOSEPH O'SHAUGHNESSY, RYAN PAYNE, RYAN BUNDY, BRIAN CAVALIER, SHAWNA COX, PETER SANTILLI, JASON PATRICK, DUANE LEO EHMER, DYLAN ANDERSON, SEAN ANDERSON, DAVID LEE FRY, JEFF WAYNE BANTA, SANDRA LYNN ANDERSON, KENNETH MEDENBACH, BLAINE COOPER, WESLEY KJAR, COREY LEQUIEU, NEIL WAMPLER, JASON CHARLES BLOMGREN, DARRYL WILLIAM THORN, GEOFFREY STANEK, TRAVIS COX, ERIC LEE FLORES, and JAKE RYAN, | |
| Defendants. | |

PAGE 1.   JOINT STATUS REPORT

The defendants, through AFPD Rich Federico, and the government, through AUSA Ethan Knight, submit the following Joint Status Report, in accordance with the Court's Case Order March 9, 2016 (Docket No. 285, Sealed).

**CERTIFICATION OF CONFERRAL**: Undersigned counsel certifies that Assistant United States Attorney Ethan Knight was provided a copy of, and consulted regarding the content of, this Joint Status Report.  Both the government and the defense positions are set forth herein.

### PROPOSED AGENDA FOR STATUS CONFERENCE OF APRIL 6, 2016

The parties propose the following agenda items be addressed at the status conference to be held on April 6, 2016:

1. Objections to signed Protective Order (Joint Status Report, Doc. 338);

2. Discovery Management (Joint Status Report, Doc. 337) – Funding of third-party vendor to host voluminous discovery productions.  Objections and Memoranda in Opposition filed on behalf of Mr. Blomgren (Doc. 343) and Mr. Ritzheimer (Docs. 350/351);

3. Trial Schedule / Timing of Motions (Joint Status Report, Doc. 336; Court's email of 3/24/2016);

4. Proposal and Plan for Jury Summons and Selection – detailed below;

5. Courthouse access for defense lawyers;

6. Motion for Stay of Order Pending Appellate Review (Doc. 357);

7. Counsel for Mr. O'Shaughnessy, discussion and objection regarding inability to communicate with client due to him being in the custody of District of Nevada; and

8. Resources and budget – *ex parte* discussion with defense.  Proposed agenda to be provided to the Court by separate filing prior to the Status Hearing.

PROPOSAL – JURY SUMMONS AND SELECTION

In response to paragraph 7 of the Court's Order, the parties have met and conferred regarding a proposal for the summonsing and selection of a jury. Additionally, the parties have consulted the Clerk's Office and experts from outside of the district with experience with trials in multi-defendant cases. The Court directed the parties to submit their respective positions on a number of questions regarding a jury plan. The defendants do not have a unified position on the questions directed by the Court to be answered. However, the following represents the best attempt at a consensus view based upon the assumption that the current plan is to try all co-defendants together in one trial. Each defendant reserves the right to object or make clarifications to his or her position, depending upon how the case progresses. As of the date of filing, the parties propose as follows:

*(1) Whether the jurors should remain anonymous to all except the Court and counsel?*

Government position – It is the government's position that the jurors' identities and related personal information should remain anonymous from public disclosure during the jurors' service. The government will request a non-disclosure order that governs all attorneys and defendants to effectuate this request.

Defense position – Defendants object to juror anonymity.

*(2) What is the size of the jury pool the Court should summons?*

Government position – It is the government's position that it is too early to recommend the number of jurors that need to appear for trial.

Defense position – Assuming a trial with all defendants, the defense anticipates that an initial summons of approximately 800-900 people could be appropriate.

PAGE 3.   JOINT STATUS REPORT

*(3) What are the procedures to be followed during voir dire?*

<u>Government position</u> – It is the government's position that voir dire should be conducted by the Court. Relatedly, it is the government's position that specific questions that the parties seek to ask prospective jurors should be forwarded to the Court for the Court's consideration and for the Court to ask the jurors.

<u>Defense position</u> – The defense position on voir dire presumes a joint trial with all co-defendants. There is not a consensus amongst the defendants regarding the voir dire procedures and individual positions are evolving and will likely change depending upon the resolution of the final trial schedule for each defendant. However, this case involves many factors that warrant a comprehensive voir dire process to minimize the risk of an unfair trial. For example, there has been extensive media exposure of the case and individual defendants, which has been pervasive, saturated the community, and been highly prejudicial. Additionally, the issues raised during the protest were rooted in basic constitutional rights and likely involve strongly-held beliefs of many potential jury members. Accordingly, the defense asks the Court to direct the Clerk to randomly separate the jury pool into venire sub-panels of 30-50 prospective jurors, then to conduct voir dire on each sub-panel. The defense suggests that the Court conduct an initial voir dire, then allow the parties to conduct voir dire on the panel as a whole, and, if appropriate, separate individuals from the sub-panel so that attorneys may conduct voir dire on specific issues with individual jurors without potentially tainting the sub-panel as a whole. Any challenges for cause could be addressed either by excusing the venire sub-panel as needed or by addressing any challenges for cause at appropriate breaks in the process.

The trial could potentially be two to three months long. Related to the question of jurors who are able and eligible to sit for a lengthy trial, is the ability for counsel to plan for a trial

PAGE 4.   JOINT STATUS REPORT

schedule of such length.  The defense respectfully requests a discussion and consideration from the Court regarding a trial schedule that will seek to accommodate an orderly progress of the case for all parties, provides clients in custody sufficient opportunity to consult with counsel during the course of the trial, and also permits counsel to maintain their respective law practices.  Individual defense counsel have discussed different scheduling options that may be proposed, such as four-day trial weeks, or reduced trial hours on certain days, etc.

*(4) What is the appropriate number of alternate jurors?*

Government position – It is the government's position that the Court should seat one alternate for each week of trial (e.g., three alternates for three weeks of trial, excluding voir dire), consistent with the provisions of Fed. R. Crim. P. 24(c)(1).

Defense position –The maximum number of alternate jurors permitted by Fed. R. Crim. P. 24(c)(1) is six; defense recommends at least four alternates.

*(5) What is the appropriate number of peremptory challenges that each party should be allowed?*

Government position – It is the government's position that the Court should determine the number of peremptory challenges under Fed. R. Crim. P. 24(b), however the government requests that it receive approximately 60% percent of the total number of challenges given to all defendants consistent with the provisions of Fed. R. Crim. P. 24(b)(2).

Defense position – Fed. R. Crim. P. 24(b)(2) limits the government to six peremptory challenges, not including any challenges available for alternates pursuant to Fed. R. Crim. P. 24(c)(4). Fed. R. Crim. P. 24(b) permits the Court to allow 10 or more peremptory challenges in multiple-defendant cases.  The defense recommends that voir dire take place in waves, as discussed at subparagraph (3), above, and requests at least one peremptory challenge per defendant per wave,

to be exercised individually but after having an opportunity for defense counsel to confer. Should any trial involve less than the full contingent of defendants, then it would be appropriate to raise the number of peremptory challenges available per defendant, per wave accordingly.

*(6) What process should be used for the parties to make their peremptory challenges?*

Government position – The government defers to the Court regarding the process for exercising peremptory challenges.

Defense position – The defense suggests that each defendant be afforded a number of peremptory challenges per venire sub-panel. The appropriate number would depend on the number of defendants proceeding to trial. Once all parties have issued their peremptory challenges to the sub-panel, any jurors who remained qualified would be included in the jury, and the next sub-panel would be examined until the jury and alternates are selected.

Additionally, the parties also discussed the following question:

*(7) Whether jury questionnaires should be issued with a summons?*

Government position - It is the government's position that that prospective jurors should be required to complete questionnaires. Relatedly, it is the government's position that the questionnaires should be provided to prospective jurors only after their personal appearance, and that they should not be mailed with the summons. The government defers to the jury coordinator regarding the number of summons that should be sent and the timing of their distribution.

Defense position – The defense position on this issue is still under discussion. However, a consensus amongst the defendants is that a questionnaire should be issued with the summons in order to afford an opportunity to better prepare for voir dire and to make voir more efficient. Potentially, a basic questionnaire could be issued with the summons regarding availability to serve, and a second round of a more in-depth questionnaire could be issued based on the response to the

PAGE 6.   JOINT STATUS REPORT

initial questionnaire. Enough time should be afforded between the issuance of the questionnaires and the return of the questionnaires from the potential jurors to afford the parties to perform a meaningful analysis on the potential jurors and to minimize the danger of an unfair trial. This would be a difficult, if not impossible task if the venire, which would easily number in the many hundreds, were to fill out the questionnaires on the first day of the voir dire process.

Respectfully submitted this 31st day of March, 2016.

                                       */s/ Rich Federico*
                                       Rich Federico
                                       Assistant Federal Public Defender
                                       Attorney for Mr. Payne