**LISSA CASEY**, OSB #086541
**MICHAEL ARNOLD**, OSB #011873
lissa@arnoldlawfirm.com
mike@arnoldlawfirm.com
Arnold Law
401 East 10th Ave. Ste 400
Eugene, OR 97401
Ph: 541-338-9111
Attorneys for Ammon Bundy

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br>      vs.<br><br>AMMON BUNDY *et al*,<br><br>             Defendants. | Case No.: 3:16-CR-00051<br><br>**DEFENDANT AMMON BUNDY'S MEMORANDUM IN OPPOSITION TO TO SIGNED PROTECTIVE ORDER AND MOTION TO MODIFY** |

### Certificate of Conferral and Positions of Attorneys

A draft copy of this Memorandum and the proposed protective order was emailed to counsel for the Government, and they object for reasons previously articulated to the Court. As per the status report, defendants will make their positions known at the status hearing.

Page 1- Memorandum Re: Protective Order

**Relief Sought**

Defendant AMMON BUNDY objects[1] to the protective order and requests that it be vacated, and in the alternative, moves to modify the protective order as proposed and filed herein. Ammon Bundy incorporates by reference his attorney's declaration in support of this memorandum.

In the Ninth Circuit and subject to certain exceptions, documents exchanged in discovery are presumptively public in nature. Moulay v. Ragingwire Enterprise Solutions, Inc., 2010 WL 4628076, * 3 (E.D.Cal. November 4, 2010) (citing San Jose Mercury News, Inc. v. U.S. District Court, 187 F.3d 1096, 1103 (9th Cir.1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public").

**Introduction**

Given the highly charged political and social commentary that surround this case, it is especially important to note that all of the defendants are wholly dependent on this Court *to ensure* that the law - not hyperbole, exaggeration, or politics - rules the day. So far, the explanations and presumptions about what happened at the Malheur National Wildlife Refuge – including some explanations already made here in this Court – have been tainted by governmental bias. In fact,

---

[1] Co-defendant Jason Patrick, through his counsel, filed a response to the government's motion (Document 249), and Mr. Bundy hereby incorporates those arguments by reference herein.

the government has made no secret of its tactical plan to use and infiltrate traditional and social media to mischaracterize, discredit and marginalize "the militia" and to undermine a legitimate and lawful political protest, as demonstrated in publicly released emails and documents.

While law enforcement and prosecutors have openly mocked and derided Ammon Bundy and his "Citizens for Constitutional Freedom" colleagues, it is shocking how little awareness and appreciation the government has shown for their having simultaneously invoked their rights under the protection of the First, Second and Fifth Amendments to the Constitution of the United States.

These failures are precisely why the defendants must depend upon *this Court* as a fair and neutral tribunal – focused on the actual facts and the relevant lawIn essence, what is at stake here is the loss of an opportunity to express to Congress a protester's dissatisfaction with the laws and policies of the United States and to utilize those same free speech rights to mount a vigorous defense investigation.

Staged demonstrations—capable of attracting national or regional attention in the press and broadcast media—are, for better or worse, a major vehicle by which those who wish to express dissent can create a forum where their views may be brought to the attention of a mass audience, and in turn, to the attention of state and national legislatures.

Long gone are the times when a citizen could literally walk into the White House and talk to the President. For instance, Thomas Jefferson and subsequent presidents, along with their wives, would greet visitors in the East Room around lunchtime. People were not allowed in during the morning, when the president was sleeping, or while he was out of town. People were, however, allowed to have essentially unfettered access to the White House grounds. This serves as a stark contrast to the the police-state-like atmosphere of the White House today and the Burns and the Harney County Courthouse during the FBI occupation.

In contrast to the astute (albeit novel) protest at Malheur are the actions of sorely misguided county officials and an unquestionably inept Oregon governor who deliberately orchestrated a highly charged and highly political overreaction by both the media and by state and federal law enforcement, and who referred to Mr. Bundy and his fellow protestors as "domestic extremists," although no charges had been made, no indictment had been returned, no ejectment, eviction or removal proceedings filed in court for camping or squatting, and no arrest warrants had been issued – that is, of course, until after the shooting death of LaVoy Finicum by Oregon State Police and the FBI (which is now being investigated by the Department of Justice for possible cover-up, evidence tampering, and obstruction of justice.)

Page 4- Memorandum Re: Protective Order

**Argument**

Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Yet with regards to the present circumstances, the Government did not demonstrate good cause to issue a blanket protective order.

Clearly, the Court has discretion in determining what constitutes "good cause" for purposes of granting a motion for protective order. United States v. Fort, 472 F.3d 1106, 1131 (9th Cir. 2007) ("Rule 16(d)(1)…grant[s] considerable discretion to the district court in drafting order" to protect witnesses, and "[a]ny debate about whether the district court's order has sufficiently protected witnesses is a debate about the drafting of a protective order under Rule 16(d)(1).)  In exercising its discretion, the commentary for the Federal Rules provides that the Court should consider "the safety of witnesses and others, a particular danger of perjury or witness intimidation, the protection of information vital to the national security, and the protection of business enterprises from economic reprisals."  Even here, "[g]ood cause is [only] established on a showing that disclosure will work a clearly defined and serious injury ... The injury must be shown with specificity." United States v. Wecht, 484 F.3d 194, 211 (3rd Cir. 2007) (citing Fed.R.Civ.P. 26(c)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." Id. (quoting Pansy v.

Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir.1994) (citation and internal quotation marks omitted)).

Thus, even if harm would be sustained by the government if a protective order did not issue, that harm must be balanced against the public's interest in the information, as well as any prejudice that would be suffered by the defendant should the protective order issue. See e.g. Wecht, 484 F. 3d at 211. ("The good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause."). This balances in the favor of disclosure.

In its motion, the government cites the "sensitive discovery" involved in this case, as well as the potential for witness intimidation. The Government further elaborates that the "sensitive discovery" includes law enforcement reports and interviews, analysis of evidence, and copies of seized physical evidence—all seemingly commonplace categories of discovery in a criminal case. The government also submitted an affidavit by Special Agent Katherine Armstrong in support of its motion.

Almost all of the government's arguments are based upon impermissible generalities. One of the only specific and articulated examples is Special Agent Armstrong's reference to an alleged, but un-established instance where a woman

Page 6- Memorandum Re: Protective Order

reports having been intimidated at a Safeway store in Burns, Oregon. Affidavit, p.3. She also cites a similarly un-established instance where the parents of a "Harney County law enforcement official" felt "harassed." Even assuming that these examples are true, it stands to reason that in a free and crowded society, sometimes people's feelings may be hurt and they may *feel* harassed. Further, these events have nothing to do with the result of making discovery materials public, nor with any certainty to these defendants. Making people *feel* comfortable in a crowded and free society should not be this Court's business when no actual and credible threats of violence have been proffered, particularly when weighed against the defense's need for crowdsourcing as set forth in the Declaration of Counsel. What is the "clearly defined" and "serious" injury? None.

Further, these kinds of examples are not supported by the "articulated reasoning" requirement as the kinds of instances that would be at issue. In the Ninth Circuit, to prevent access to unfiled discovery materials, "[a] party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." Foltz, 331 F.3d at 1130 (citation omitted) (emphasis added). Like other circuits, "[b]road allegations of harm" and "examples" that are not supported by "articulated reasoning, do not satisfy the Rule 26(c) test." Beckman Ind., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir.1992) ("In the instant case, the parties

Page 7- Memorandum Re: Protective Order

stipulated to a blanket protective order. Reliance will be less with a blanket order, because it is by nature overinclusive.")

And, regarding the specifics identified, at a hearing before this court, **once discovery was actually able to be quoted in open court instead of summarized by government witnesses,** both of those instances were either debunked or shown to be mischaracterized by the government. With respect to the Safeway incident (an accusation against Mr. Ritzheimer), counsel for Mr. Ritzheimer proffered that the complainant had receipts that demonstrated the impossibility of Mr. Ritzheimer to have been at the grocery store. A witness who claims to *feel* intimidated and incorrectly identifies the person who intimidated her to be one of the co-defendants in this case is not good cause for a blanket protective order with thousands of pages of discovery that have been provided to date.

With respect to the second incident of alleged witness harassment, the discovery paints a different picture than Special Agent Armstrong likely hoped to convey to the court. The discovery in this case actually shows that the "law enforcement official," (Sheriff Dave Ward) wrote emails to the FBI that discuss threats his parents made to the co-defendants in this case, not the other way around. In fact, one of the co-defendants in this case was handing out fliers (exercising his right to free speech) and made a comment about "forcing the Sheriff to do his job." The Sheriff's parents commented back about the injury a

type of gun could cause to someone, and about what would happen if "one hair" on the Sheriff's head was harmed. Since that information was disclosed in open court, defense counsel is unaware of any actual threats or intimidation that were made to the parents of the sheriff. The government's hypothesis has been tested with the release of that information and is proof of the lack of need for a blanket order.

Special Agent Armstrong also points to statements by an environmentalist who repeatedly traveled to the refuge every day for ten days. That environmentalist stated that his life was threatened, although Special Agent Armstrong does not say by whom—a co-defendant in this case or not. However, this environmentalist allegedly left the refuge after one of his colleagues was accused of being an undercover FBI agent. There seem to be two equally likely possibilities that explain these allegations of harassment, which means that the government has not yet met its burden. One: The remarks by the government are purely speculative. Or, two: Super-sensitive, thin-skinned people may claim a "threat" or "intimidation" when it is just words that make them feel uncomfortable. In reality, neither of these scenarios have anything to do with threats of physical force. As Justice Potter Stewart defended,

> A function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That

Page 9- Memorandum Re: Protective Order

> is why freedom of speech * * * is * * * protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. * * * There is no room under our Constitution for a more restrictive view.

Edwards v. S. Carolina, 372 U.S. 229, 237-38, 83 S. Ct. 680, 684 (1963).

With respect to witness intimidation or harassment, our crowdsourcing efforts allowed us to discover that at least one crucial witness statement disclosed in discovery by the Government is claimed by that same witness to be inaccurate or false. Ammon Bundy cannot disclose that witness statement right now, as this person fears retaliation by the government. That's the problem and the reason why our society and our justice system favors the freedom to disclose and disseminate information: The government has already had the benefit of its communications – part of the benefit of discovery is to ensure that such a benefit is fair and balanced – and it is the public who can help do that more than anything.

Consider that the only accusation of witness intimidation that Ammon's legal team has uncovered so far has been on the part of the government through the FBI. Without crowdsourcing efforts, this inaccurate witness statement would likely have stood, uncontroverted, as part of the government's attempted characterization and false branding of these protestors as violent and threatening individuals. This taint is impermissible, and it will affect trial witnesses as well as potential jurors.The court can help dissipate such taint by refusing to keep in place

any overly broad restrictions on the free flow of essential information in the discovery materials.

Special Agent Armstrong also points to social media postings, where the defendants allegedly make "threatening, intimidating, and harassing statements regarding federal agency employees." Importantly, there are no charges for such conduct in this case. Thus, another way of framing Ms. Armstrong's example is that these alleged posts are an instance of defendants exercising their free speech, and the government completely fails to analyze the privileged nature of their statements. It also fails to analyze whether the statements are a correct statement of law made by certain defendants regarding their right to protect themselves from unlawful force by the government. For example, the law clearly provides that a person is entitled to defend himself from unlawful use of force in self-defense or in defense of others. "If-then" statements about what someone would do to defend themselves from unlawful use of force is not a threat – it is a true statement of law. Statements like this are made every day by individuals against other individuals and are entirely true statements of the law and privileged speech. Law enforcement has no special right above and beyond that of the person who reasonably believes to be the use or imminent use of "unlawful" physical force." State v. Oliphant, 347 Or. 175, 197, 218 P.3d 1281, 1293-94 (2009); State v. Wright, 310 Or. 430, 435, 799 P.2d 642, 644 (1990) ("If a peace officer uses

excessive force in making an arrest, the arrestee has a right to use physical force in self-defense against the excessive force being used by the officer.).

Social media postings, incorrect witness identifications, threats by a sheriff's parents to the protestors, and the statement of one person saying that they *felt* threatened after holding press conferences at the refuge every day for ten days, does not demonstrate good cause for the government to obtain a blanket protective order.

Assuming, without conceding, that there was a credible threat to a witness, then a narrowly tailored protective order that covers one isolated report might be appropriate. A blanket protective order is not. And, upon this challenge, the law requires that the government now make a particularized showing – for specific discovery documents – before such documents can be included in a protective order. Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1131 (9th Cir. 2003) ("the district court must require [the party desiring protection] to make an actual showing of good cause for their continuing protection [of the documents].)

In the alternative, please see the attached proposed protective order that would meet the government's interests, presuming it can show good cause for it to apply to certain parts of discovery. Defendant Ammon Bundy suggests the following process for designating discovery as confidential and subject to a protective order:

Page 12- Memorandum Re: Protective Order

1. First, the government must file a motion for protective order and demonstrate good cause to keep that information confidential from the public.

2. The government must produce the discovery, marked as confidential, to the defense, along with that motion to seal.

3. The defense will agree not to disclose to the public any information produced with that motion.

4. Within 5 days, however, the government must file its motion with the court.

5. If the court determines that there is good cause for that isolated portion of discovery to be confidential, then it will be subject to a protective order.

Defendant Ammon Bundy objects to all things secret, from secret courts to secret discovery to secret police reports. He firmly maintains his belief that an open court and public accountability are the only ways to ensure that he receives a fair trial, as is his right under the United States Constitution.

This case, more so than any case in recent memory, in this district, or across the country, demonstrates the importance of making judicial documents public. For instance, in this case, many witnesses are afraid to come forward, even though they have critical information that could help the case. Ammon's legal team has actively solicited leads for weeks. Those efforts have paid off. By actively

Page 13- Memorandum Re: Protective Order

seeking assistance of the public, leads can be closed in mere minutes that would otherwise take days to close with an investigator. Only because Mr. Bundy's attorneys have gained the public trust and actively sought information, is Mr. Bundy finally learning the truth about what happened in this case, as opposed to the conclusions that the government hopes the public will draw from its selective release of information.

Public interest in this case will continue. The truth must come out. A protective order that seeks to "protect witnesses" will only allow the government to convict the protestors in the court of public opinion, as their attorneys stand by, chilled and unable to seek the truth on their behalf through crowdsourcing select parts of discovery.

This is not a case about concrete events to which only a select few are party.. This is a case of public interest because many people *safely* visited the refuge during this protest, as it *was* a safe gathering, open to the public andto agents of the government. It is true thatThere was one statement of intimidation made: "We ask that people stay away from the refuge for their safety." The defense concedes that this statement may have affected government officers and prevented them from feeling safe in accessing the refuge. Had this statement been made by the protestors, it would be the central piece of evidence against them,ut it wasn't. It was made by the government to set a narrative of fear rather than free speech and

protest.  Sheriff Ward made that statement on January 4, 2016, and in doing so was purportedly the first person to attempt to publicly discourage anyone from visiting or working at the refuge.

The public's impressions and opinions, and the information that they possess, are critical to defending these protestors.  Gagging the attorneys and protestors with an overly broad protective order does not seek justice—it only allows the government to use court filings to continue the false narrative that these protestors were and are dangerous, while removing an important defense investigative tool.

Mr. Bundy deserves a fair and speedy trial.  **This protective order prevents him from obtaining either**.  He needs the public's help to get to the truth, which is exactly what it appears the government is intending to prevent.  If the government can show good cause for very specific documents which need to be protected, then the parties can confer and seek the court's assistance if there is a disagreement *through a particularized motion by the Government*.  A blanket protective order is inappropriate in this case and infringes on the ability of both Mr. Bundy and his attorneys to seeking justice and find the truth.

DATED this 5th day of April, 2016.

/s/ Michael Arnold
Michael Arnold, OSB #011873
mike@arnoldlawfirm.com
Lissa Casey, OSB #086541

Page 15- Memorandum Re: Protective Order

lissa@arnoldlawfirm.com

Page 16- Memorandum Re: Protective Order