SAMUEL C. KAUFFMAN, OSB #943527
KAUFFMAN KILBERG LLC
Suite 1414
1001 SW Fifth Avenue
Portland, OR  97204
Telephone: (503) 224-2595
Fax: (503) 224-3203
E-Mail: sam@kauffmankilberg.com

      Attorneys for Defendant
      Dylan Anderson

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>      Plaintiff,<br><br>v.<br><br>**DYLAN ANDERSON,**<br><br>      Defendant. | **Case No. 3:16-cr-00051-BR-11**<br><br>**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF DETENTION ORDER** |

Defendant Dylan Anderson, through counsel, hereby moves pursuant to 18 U.S.C. § 3145(b) for review and revoke the detention order issued by Magistrate Judge Beckerman on January 29, 2016. (CR-14).   Mr. Anderson further moves for review of his detention based upon additional information regarding his history and characteristics and the government's case against him that was not available at the

**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF DETENTION ORDER**

time of the initial detention hearing. This motion is made on the grounds that the government did not and cannot meet its burden of proving that Mr. Anderson is either a risk of flight or danger to the community such that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

To the contrary, Mr. Anderson's history and characteristics, including his extensive family support, lack of criminal history, his employment history and his reported character and work ethic, show that he is an ideal candidate for release. Further, Judge Beckerman was wrong in concluding that Mr. Anderson was a "key player" in the alleged conspiracy and in her suggestion that he was at the refuge for the entirety of the alleged occupation. Indeed, Mr. Anderson was at the refuge for only about 10-days between January 2 and January 27, 2016, the date of his arrest. Mr. Anderson was not a "key player" in the alleged conspiracy.

The government opposes Mr. Anderson's request for release. United States Pretrial Services recommended that the Court release Mr. Anderson at the previous detention hearing.

**Procedural Background:**

On January 26, 2016, Dylan Anderson was arrested in Burns, Oregon. He

**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF DETENTION ORDER**

and seven others were charged in a federal complaint with conspiring to impede, by force, intimidation, or threat, officers from discharging their duties in the Malheur National Wildlife Refuge in violation of 18 U.S.C. § 372. (CR-14). On January 27, 2016, Mr. Anderson made his first appearance in federal court on the complaint. (CR-15.) At that initial hearing, the Court set a preliminary hearing for February 3, 2016, and scheduled arraignment on any subsequent indictment for February 24, 2016. (CR-16).

As to release, United States Pretrial Services conducted a brief interview of Mr. Anderson, interviewed his mother over the telephone and prepared a report, which recommended that the Court release Mr. Anderson with various conditions. The Court, at the government's request, continued the detention hearing for Mr. Anderson and the other defendants for a period of two-days to January 29, 2016.

**The Detention Hearing:**

On January 29, 2016, Magistrate Judge Stacey Beckerman considered the report and recommendation from United States Pretrial Release and heard the arguments of the parties.  The government filed a Memorandum in Support of Detention (CR-8) regarding all of the defendants charged at the time and referenced the allegations made in the complaint (CR-14).  The government's argument regarding Mr. Anderson consisted of three short paragraphs at the very

**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF DETENTION ORDER**

end of the document.  Magistrate Judge Beckerman held a detention hearing on

January 29, 2016.  Judge Beckerman ordered that Mr. Anderson be detained:

> I'm looking at the factors that the Court must consider, including the three that we talked about a lot today, which is the nature and circumstance of the offense, the weight of the evidence, and the nature and seriousness of danger if the defendant is released, and those three factors are what are driving my decisions here today.
>
> For those key players in the armed occupation, and I count Mr. Anderson as one of those because he was there at the beginning and he was there at the end, as to these key players who created this incredibly dangerous situation and refused to leave, despite law enforcement's orders to do so, for an entire month, those three factors for me outweigh the history and characteristics of the accused here which speak to Mr. Anderson's unemployment, lack of income, and the fact that he came to Oregon over the protest of his family, with that balance in mind, I do find that the defendant presents a risk of danger to the community and a risk of nonappearance if I were to release him here today.
>
> So I will enter an order of detention for Mr. Anderson.

Tr. 9.

On February 3, 2016, the government issued an indictment (CR-58)

charging Mr. Anderson and the other defendants with the same Conspiracy

contained in the Complaint.  On March 8, 2016, the government issued a

Superseding Indictment, which included additional defendants and additional

charges as to some of the defendants. As to Mr. Anderson, the government added a

charge of Possession of Firearms and Dangerous Weapons in Federal Facilities, 18

U.S.C. § 930(b), a Class D Felony, punishable by no more than five years

**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF DETENTION ORDER**

imprisonment.

**APPLICABLE LAW:**

**A. Basic Framework:**

The Bail Reform Act, 18 U.S.C. § 3142(b), creates a presumption for release on one's own personal recognizance unless the judicial officer finds that release will not reasonably assure the appearance of the person as required, or will endanger the safety of the community or any person. If the Court determines that recognizance release will not reasonably ensure both the defendant's appearance and the safety of the community, 18 U.S.C § 3142(c) directs the Court to release the person on "the least restrictive" condition or set of conditions. Detention is appropriate only if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

**B. The Government's Burdens:**

In seeking detention, the government bears the burden of proof as to both risk of flight and danger to the community. The standards of proof differ for each prong; the government must establish flight risk by a preponderance of the evidence and danger by clear and convincing evidence. *United States v. Gebro*,

**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF DETENTION ORDER**

948 F.2d 1118, 1121 (9th Cir.1991); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The federal rules concerning admissibility of evidence in criminal trials are inapplicable. 18 U.S.C. § 3142(f). The Court may base its findings on proffer and hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir.1986).

### C. Factors Weighing on the Release Decision:

Factors to be considered by the Court in assessing release or detention include: the nature and circumstances of the alleged offense; the weight of the evidence; the history and characteristics of the person; and the risk of danger to any person or the community in general. 18 U.S.C. § 3142(g).

### D. Standard of Review:

Review of the facts underlying a magistrate judge's release order is de novo. *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990); *United States v. Lopp*, 2015 WL 5139367 (N.D. Ca. Sept. 1, 2015).

## APPLICATION:

### A.    History and Characteristics of Dylan Anderson:

Dylan Anderson is 35 years old and was born and raised in the Provo, Utah area.  Prior to his arrest, he lived with his wife of three years Cynthia Anderson, in the basement apartment of the home owned by his mother, Jean Clay, to whom

**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF DETENTION ORDER**

they pay rent on a monthly basis.  Mr. Anderson seeks to return to Provo and

continue living his with his wife.

1. **Mr. Anderson has extensive family support both in Utah and in Oregon:**

    Mr. Anderson's father and stepmother live in American Fork, Utah, a short

distance from Mr. Anderson's residence in Provo.   Mr. Anderson's two younger

sisters, Justine Anderson and Cara Dahlquist also live in close proximity to Mr.

Anderson.  All of Mr. Anderson's immediate family are supportive of him and

pledge to assist him in any way that they can, including assisting him in getting to

Court appearances, if necessary.[1]

    Mr. Anderson's older sister lives with her family in Beaverton, Oregon.

She has also offered her support to Mr. Anderson and has even offered to allow

him to reside at her home if need be prior to and especially during trial.

2. **Mr. Anderson has always worked and will be employed upon his**
    **release:**

    Mr. Anderson graduated from high school in 1998.  As his family attests,

Mr. Anderson is known for his strong work ethic and has nearly always been

employed since graduating from high school.   Mr. Anderson's most recent long-

term employment was at a recycling company operating heavy equipment, where

---

[1] Mr. Anderson has filed under seal reports of interviews with Anderson's family containing private and confidential information.

**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF**
**DETENTION ORDER**

he worked from 2012 to about 2015.  He left that job only after he developed

tinnitus. Most recently, Mr. Anderson worked as delivery driver for a flower

company.  Although Mr. Anderson lost that job over the course of the MNWR

protest, he should have no trouble finding employment after his release.

3. **Mr. Anderson's criminal history is minor and it is old:**

The government argued to Judge Beckerman that Mr. Anderson is a flight

risk because his history includes "drug and alcohol offenses and a failure to

appear."

Records reflect that Mr. Anderson was arrested on November 23, 1999 (age

18), by the Utah County Sheriff for possession of marijuana and marijuana

paraphernalia.  Records further reflect that Mr. Anderson was convicted in the

Springville Justice Court of Possession of Alcohol by a Minor and fined $248.65.

Mr. Anderson has had no reported police contact since that time.  Mr. Anderson's

minor transgressions at age 18 are hardly indicative of a danger to the community

or risk of flight at age 35 as the government has suggested.

B.    **The Nature and Circumstances of the Alleged Offense and the Weight**
     **of the Evidence:**

1. **Mr. Anderson was not a "key player" in the alleged conspiracy:**

Judge Beckerman indicated that she counted Mr. Anderson as a "key player"

**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF**
**DETENTION ORDER**

in the "armed occupation," because "he was there at the beginning and he was

there at the end." Tr. 9. Judge Beckerman's suggestion that Mr. Anderson was at

the MNWR the entire time period of the alleged occupation and that it somehow

reflects on his role in the alleged conspiracy is wrong for two reasons.

First, Mr. Anderson was in fact <u>not</u> present at the refuge during the entire

alleged occupation. Although he may have been photographed outside of the

refuge near the entrance on January 2, 2016 following the protest in Burns and was

reportedly seen again outside the refuge by a reporter the following day, he left

Oregon to return to Provo on the evening of January 7, 2016. See, Ex. 1 at 2 and

attachments. Mr. Anderson remained in Provo for the next 13-days and then

returned to the MNWF on about January 21, 2016. *Id*. Mr. Anderson voluntarily

departed on January 28, 2016 and was arrested at the FBI checkpoint unarmed and

without incident. Accordingly, Mr. Anderson was only at the refuge a total of

about ten-days. Accordingly, he could not have been a "key player." Moreover,

the government has presented no evidence that Mr. Anderson had any type of

leadership role in the occupation or, that he had any role beyond being present at

the beginning for that matter.

Second, if Mr. Anderson were a "key player," he would likely be referenced

in the discovery as such. However, in the nearly 5,000 pages of reports that the

**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF
DETENTION ORDER**

government has produced thus far, there is no mention of Mr. Anderson at all with respect to the alleged occupation of the refuge.  Although there is a reference to his arrest and to a firearm that was found on the refuge that was reportedly registered as purchased by him, apparently the government has yet to produce any evidence of any conduct or actions by Mr. Anderson on the refuge.

As the government indicated in its detention memorandum, Mr. Anderson does appear in a video taken outside the refuge where he is seen standing with his firearm along with Ammon Bundy and others prior to their entry.  However, Mr. Anderson made no statements and was not mentioned by name, as others were.

The only other reference to Mr. Anderson at or near the refuge is not from law enforcement, but from Oregon Public Broadcasting (OPB).  OPB reporter Amanda Peacher interviewed Mr. Anderson on January 3, 2016 while he was standing in the cold outside an entrance to the refuge.  Mr. Anderson was apparently unarmed, although Ms. Peacher describes him as "guarding" the entrance. Counsel could find no other references to Mr. Anderson in any media taken during the course of the protest.

//

//

//

**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF DETENTION ORDER**

**Conclusion:**

For the foregoing reasons, the Court should revoke the detention order

issued by Judge Beckerman and order that Mr. Anderson be released.

DATED this 7th day of April 2016.

KAUFFMAN KILBERG LLC


By /s/ Samuel C. Kauffman
    Samuel C. Kauffman, OSB #943527
    Telephone: (503) 224-2595
    Fax: (503) 224-3203
    E-Mail: sam@kauffmankilberg.com
    Attorneys for Dylan Anderson

**DEFENDANT DYLAN ANDERSON'S MOTION FOR REVIEW OF
DETENTION ORDER**