BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**ETHAN D. KNIGHT, OSB #992984**
**GEOFFREY A. BARROW**
**CRAIG J. GABRIEL, OSB #012571**
Assistant United States Attorneys
ethan.knight@usdoj.gov
geoffrey.barrow@usdoj.gov
craig.gabriel@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:16-CR-00051-BR-12** |
| v. | |
| **SEAN ANDERSON,** | **GOVERNMENT'S OPPOSITION TO DEFENDANT ANDERSON'S MOTION FOR PRETRIAL RELEASE** |
| **Defendant.** | |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and through Ethan D. Knight, Geoffrey A. Barrow, and Craig J. Gabriel, Assistant United States Attorneys, provides its response in opposition to defendant Anderson's Motion for Pretrial Release (ECF No. 489). For the reasons outlined below and that will be presented at the review of detention hearing, the government is recommending that defendant Anderson remain in custody pending trial, as he is a flight risk and he presents a danger to the community.

I.     **Procedural History**

On January 29, 2016, Magistrate Judge Stacie Beckerman authorized a Complaint charging defendant with Conspiracy to Impede Officers of the United States from Discharging Their Duties Through the Use of Force, Intimidation, or Threats in violation of Title 18, United States Code, Section 372. On February 3, 2016, a grand jury in the District of Oregon charged defendant with a single count of 18 U.S.C. § 372.

Defendant was arrested by the FBI on February 11, 2016. The following day, he made an initial appearance before the Honorable John V. Acosta. At defendant's request, his detention hearing was set for February 19, 2016, and he was ordered detained. On February 17, 2016, the court granted defendant's request to strike the previously scheduled detention hearing.

On March 8, 2016, the grand jury returned a Superseding Indictment charging defendant with Conspiracy to Impede Officers of the United States from Discharging Their Duties Through the Use of Force, Intimidation, or Threats in violation of Title 18, United States Code, Section 372 (Count 1); Possession of Firearms and Dangerous Weapons in Federal Facilities in violation of Title 18, United States Code, Sections 930(b) and 2 (Count 2); Use and Carry of a Firearm in Relation to a Crime of Violence in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2 (Count 3); and Depredation of Government Property in violation of Title 18, United States Code, Sections 1361 and 2 (Count 6). Defendant is not named in Counts 4 and 5. Defendant was arraigned on March 9, 2016.

On April 28, 2016, defendant filed a Motion for release from custody (ECF No. 489). On May 2, 2016, the Honorable John V. Acosta heard argument on defendant's Motion. Judge Acosta ordered defendant to be released on conditions. The government sought a stay of Judge

Acosta's Order and moved to seek review with this Court. Judge Acosta agreed to stay his Release Order until May 4, 2016, at noon. Defendant's Motion is set for a hearing before this Court on Wednesday, May 4, 2016, at noon.

## II.     Defendant Should Be Detained Both As a Risk of Flight and a Danger to the Community

Under the Bail Reform Act, the court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant is either a flight risk or a danger to the community. It is not necessary to prove both. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990).

Where, as here, there is probable cause to believe that the defendant committed a violation of Title 18, United States Code, Section 924(c), there exists a rebuttable presumption that "no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(B).

Defendant has not and cannot rebut the presumption of detention in this case. A careful analysis of all four factors set forth in 18 U.S.C. § 3142(g) supports an order from this Court that defendant Anderson be detained pending trial.

/ / /

/ / /

### A. Nature and Circumstances of the Offense

The unique nature of the underlying offense supports detention. Defendant participated in a sustained, armed occupation of a public area that by its definition was intended to prevent federal employees from accessing their workplace. Count 1 of the Indictment is a crime of violence for purposes of the Bail Reform Act because it "has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another" and it is a felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(A). As previously noted, Count 3 carries a statutory presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e)(3)(B).

Defendant's conduct on the Malheur National Wildlife Refuge (MNWR) causes the government great concern for the community. During the occupation, defendant and his wife, Sandra Anderson, came and went from the MNWR on multiple occasions. He repeatedly inserted himself into a dangerous situation. In January, defendant's son contacted law enforcement because he was concerned for the welfare of his father. He reported that on January 9, 2016, defendant sent him a text message that read, "in case I never see you again, I love you and tried my best . . . we are in Burns, Oregon." Defendant's son reported that his father had previously told him that he was willing to die for his cause.

As the armed occupation continued, the Andersons elected to stay at the Refuge while others chose to leave. In two videos the government intends to offer as exhibits at the detention hearing, defendant criticized those occupiers who made the decision to leave the MNWR. The

**Government's Opposition to Defendant Anderson's Motion for Pretrial Release**                                                                **Page 4**

first video depicts Anderson carrying his rifle while a coconspirator operates an excavator in the background.  The occupiers were digging defensive trenches on the MWNR in anticipation of a government raid to remove them from the compound.  In the video, defendant Anderson says that the media had been waiting for a bloodbath and "now there's going to be one and they're [fellow occupiers] running!"  He says that the "American people better wake up and get here and fight for your country right now!  It is on!"  In the second video, Anderson declares that there "are no laws in this United States now.  This is a free for all Armageddon."  He declares that any law enforcement officers or military who do not abide by their oath are the enemy.  Finally, he says, "If they [law enforcement or military] stop you from getting here, kill them!"

In a video that was posted to the Internet, defendant Anderson shot at an aircraft.  The video was taken on January 27, 2016.  Defendant Anderson is seen carrying his rifle.  He walks off screen and someone says, "There it is."  Four shots are heard.  In the same video, the occupiers talk about trying to shoot a drone down.  Defendant Anderson subsequently admitted to an FBI negotiator that he shot in to the air, and he was concerned there would be criminal charges for that conduct.  There was an FBI surveillance airplane in the air at the time.  The pilot reported seeing shots fired from the ground.  The airplane was not hit.

### B.  The Weight of the Evidence

The weight of the evidence against defendant at this stage is strong.  Defendant's role in the offense was public and was marked by persistent defiance of the orders of local and federal law enforcement.  Defendant was repeatedly photographed carrying a rifle on the MNWR, and he made his intentions clear through videos and Internet postings.

/ / /

### C. The History and Characteristics of Defendant

The history and characteristics of defendant militate against release. Defendant has no ties to Oregon. He lived in Wisconsin for 25 years. He then moved to Iowa for eight months. In April of 2015, he moved to Riggins, Idaho. Nine months later, he headed to Oregon to join the occupation. Defendant is unemployed. He previously ran an outdoor store that failed. He also reported earning money from cutting wood. His only current income source is from his wife's employment and Pretrial Services has not confirmed an amount or source for that income.

Defendant's criminal history includes multiple misdemeanor convictions that involved domestic violence. He also had an outstanding warrant for failing to appear on charges of resisting arrest, possession of THC, and possession of drug paraphernalia. Before Judge Acosta, through counsel, defendant admitted that he deliberately decided not to report for court on those charges.

Defendant has strong anti-government views and has demonstrated his willingness to act on those views. By his own admission, he founded a militia group in Wisconsin. In a post-arrest statement, he reported that he and his wife came to the MNWRC to protest the re-sentencing of two Oregon ranchers convicted of arson. He admitted to occupying the MNWR in order to bring attention to the "cause." He brought firearms to the MNWR and he was frequently observed carrying firearms on the MWNR. Following his arrest, the government recovered the camouflaged Mini 14 rifle and a .45 caliber pistol that Anderson was photographed with at the MNWR.

Defendant is unlikely to be amenable to federal supervision. In his post-arrest statement, defendant made clear his view that the FBI and federal agents do not have any

**Government's Opposition to Defendant Anderson's Motion for**            **Page 6**
**Pretrial Release**

jurisdiction within the state of Oregon or ten miles outside of Washington, D.C.   He also explained that he believes the right to carry firearms is God-given and that another man does not have the right to judge whether or not a person should be allowed to possess and carry firearms.

Defendant commissioned a risk assessment.   The risk assessment notes that defendant does not suffer from mental illness.   The defense psychologist opines that defendant poses a low risk of danger to the community.   The government urges the Court to discount the risk assessment.   The psychologist opines that defendant is "likely only to act violently or encourage violence when he feels threatened or overwhelmed."   The risk assessment is based on the psychologist's pure guess that defendant will not feel threatened or overwhelmed if released. He states, "[t]his factor is presently absent, and I anticipate that it would remain absent if he were in a non-custodial environment."   His risk mitigation strategies are equally flawed.   The defendant is urged to avoid affiliation with "patriot movement groups," the very cause that he has declared a willingness to die for.   It suggests that his relationship with his wife will keep him from posing a danger, but ignores the fact that defendant traveled to the MNWR with his wife and they both stayed at the Refuge to the bitter end.   It proscribes employment to maintain defendant's self-esteem and keep him busy, but ignores the fact that defendant is unemployed.

D.    **The Nature and Seriousness of the Danger to any Person or the Community if the Defendant Were Released**

Defendant poses a significant danger to the community.   As set forth above, he responds to events that he disagrees with by calling for an armed response.   Through his words and by his actions, he has repeatedly demonstrated his disregard for the law and his willingness to take matters into his own hands.   He has called on others to kill law enforcement officers and

members of the military, and he fired upon surveillance aircraft. The risk defendant would pose if released is therefore not speculative; it is supported by defendant's words and his actions.

### III. Conclusion

This Court should deny defendant's Motion to for Pretrial Release because he is a flight risk and a danger to the community. Defendant has not rebutted the statutory presumption that no condition or combination of conditions of release will reasonably assure his appearance and the safety of the community. He should be detained.

Dated this 3rd day of May 2016.

                                              Respectfully submitted,

                                              BILLY J. WILLIAMS
                                              United States Attorney

                                              *s/ Geoffrey A. Barrow*
                                              ETHAN D. KNIGHT, OSB #992984
                                              GEOFFREY A. BARROW
                                              CRAIG J. GABRIEL, OSB #012571
                                              Assistant United States Attorneys