Matthew G. McHenry, OSB 04357
Levine & McHenry LLC
1001 S.W. Fifth Avenue, Suite 1414
Portland, Oregon 97204
503-546-3927
email: matthew@levinemchenry.com


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:16-cr-00051-BR-12 |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S RESPONSE TO |
| | ) | GOVERNMENT'S OPPOSITION TO |
| vs. | ) | DEFENDANT ANDERSON'S |
| | ) | MOTION FOR PRETRIAL RELEASE |
| | ) | |
| | ) | |
| SEAN ANDERSON, | ) | |
| | ) | |
| Defendant. | | |

Sean Anderson, through his attorney Matthew G. McHenry, files the

following Response to the Government's Opposition to Defendant

Anderson's Motion for Pretrial Release (Docket No. 507) (Opp.)

**MEMORANDUM**

The bulk of the assertions in the government's memorandum have already been fully addressed in Mr. Anderson's prior pleadings and exhibits (Docket Nos. 489 and 490).  Responses to specific portions of the government's pleading follow:

**A.  The Government's Unsupported Assertions Are Not Evidence.**

The government asserts, with no authority, that the conduct Mr. Anderson engaged in "by its definition was intended to prevent federal employees from accessing their workplace."  Opp. 4.  The government has simply stated its burden of proof at trial—whether federal government employees were impeded by any conduct of Mr. Anderson, and likewise whether Mr. Anderson had a culpable mental state, is a question for the jury. The government simply restating the charge is not evidence this Court should consider.  Likewise, The government's claim on page 5 that the "evidence against the defendant at this stage is strong" is simply an assertion.  *Id.* at 5.  In any event, Mr. Anderson is presumed innocent, and as such the weight of the evidence is "the least important of the various factors" under the Bail Reform Act.  *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

**B.      That Mr. and Mrs. Anderson Came and Went From The Refuge Does Not Auger In Favor Of Detention.**

The government argues that Mr. Anderson, who along with his wife came and went from the refuge on multiple occasions, staying only a few nights at a time, shows Mr. Anderson's willingness to "insert[] himself into a dangerous situation." Opp. 4. This is incorrect, as shown by the letter written by Iva and Rich Henderson of Riggins, Idaho (attached to Defendant's Supplemental Memorandum, Docket No. 490) (Henderson Letter). The Andersons first went to the refuge just to "find out for themselves what was really going on." Henderson Letter. The Andersons returned a few days later and reported that "everyone there was very friendly, peaceful, and caring. They never saw or heard anyone threaten or intimidate anyone, in fact, people from the local area and all parts of the country were coming and going all the time." *Id*. In short, the Andersons coming and going from the refuge was not, in their minds, inserting themselves into a dangerous situation. Rather, they saw a peaceful protest with at least some support from the local community.

**C.      Mr. Anderson Did Not Receive The Order To Safely Disperse From The Government.**

The government claims "the Andersons elected to stay at the Refuge while others chose to leave." Opp. 4. This is a mischaracterization. On

January 27, 2016, the day after Lavoy Finnicum was killed, the FBI made calls to several individuals on the refuge, informing them that if they left at that time, they could do so safely and without arrest.  Mr. and Mrs. Anderson, along the other few individuals who remained after the call to disperse, never received that offer from the government.  After Mr. Finnicum was killed, panic set in at the refuge.  Mr. and Mrs. Anderson were not at a central location on the refuge, did not have any radio communication with others on the refuges, and never heard a call or offer to disperse by the government.  The Andersons did not ignore the offer and simply elect to stay.  The order to disperse was not communicated to them.

**D.    The Government Misstates Mr. Anderson's Criminal History.**

The government has mischaracterized Mr. Anderson's criminal history, claiming it "includes multiple misdemeanor convictions that involved domestic violence."  Opp. 6.  In fact, Mr. Anderson has *no* misdemeanor convictions involving domestic violence.  The "multiple misdemeanor convictions" referred to total two.  Mr. Anderson has a 2002 misdemeanor conviction for Criminal Trespass, for which he received a fine. He has a 2008 misdemeanor conviction for Disorderly Conduct, for which he also received a fine.  In 2009, Mr. Anderson was convicted of a *violation* (not a crime) for Disorderly Conduct, and according to the report received

from Pretrial Services, that violation was notated as a "Domestic Abuse

Incident." The government's exaggeration of Mr. Anderson's criminal

history is incorrect.

**E.      Dr. Millkey's Risk Assessment Should Not Be Discounted, But Rather Embraced by the Court as a Professional Scientific Evaluation.**

Dr. Alexander Millkey, Psy.D., conducted an extensive and

comprehensive psychological evaluation and risk assessment for violence.

The government invites this Court to "discount" the risk assessment because,

in the government's words, Dr. Millkey's assessment is "pure guess" and

that his risk mitigation strategies are "equally flawed." Opp. 7. The

government is wrong.

Far from a "pure guess," Dr. Millkey based his assessment on

numerous psychological tests and violence risk assessment tools that are

widely accepted in his field, including the Hare Psychopathy Checklist-

Revised (PCL-2), the Historical Clinical Risk Management-20 (HCR-20),

and the Violence Risk Appraisal Guide, Revised (VRAG-R). *E.g.*, *United*

*States v. Mahoney*, 53 F.Supp.3d 401, 412–15 (D.Mass 2014) (noting that

the PCL-2, HCR-20, and VRAG assessments are admissible under *Daubert*

principles as they have been tested, subject to peer review, and have

widespread acceptance). In *Mahoney*, the government argued for the

admissibility of the risk assessment, apparently not sharing the view of the government in the instant case that risk assessments are a "pure guess." Moreover, the government routinely relies on such "risk assessments" when the assessments work in its favor. *E.g.*, *United States v. Guidry*, 2008 WL 3906792, at \*1 (D.Or. Aug. 22, 2008) (defendant's "most recent risk assessment determined that he continues to be armed and dangerous").

Dr. Millkey's assessment is based on a scientific approach utilizing multiple, widely accepted psychological tools and tests. Dr. Millkey's CV (attached as an exhibit to Docket No. 489) attests to his expertise and professional approach. The risk assessment is not guesswork—it is a valid, comprehensive assessment of Mr. Anderson's future risk for violence. This Court should not discount the assessment, but rather should embrace it as Judge Acosta did as the best and most reliable mechanism to determine Mr. Anderson's risk of violence.

/// /// ///

## CONCLUSION

For reasons set forth in this pleading and Mr. Anderson's prior

pleadings, and for reasons that will be submitted at the review hearing, the

Court should affirm the decision of Judge Acosta, agree with the

recommendation of U.S. Pretrial Services, and order Mr. Andersons' release

pending trial.

Respectfully Submitted this 3rd day of May, 2016:

/s/ *Matthew G. McHenry*
Matthew G. McHenry
Counsel for Sean Anderson