Lisa Hay
Federal Public Defender
Rich Federico
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123 Telephone
(503) 326-5524 Facsimile
Lisa_Hay@fd.org
Rich_Federico@fd.org
Attorneys for Defendant Ryan Payne

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**AMMON BUNDY, JON RITZHEIMER, JOSEPH O'SHAUGHNESSY, RYAN PAYNE, RYAN BUNDY, BRIAN CAVALIER, SHAWNA COX, PETER SANTILLI, JASON PATRICK, DUANE LEO EHMER, DYLAN ANDERSON, SEAN ANDERSON, DAVID LEE FRY, JEFF WAYNE BANTA, SANDRA LYNN ANDERSON, KENNETH MEDENBACH, BLAINE COOPER, WESLEY KJAR, COREY LEQUIEU, NEIL WAMPLER, JASON CHARLES BLOMGREN, DARRYL WILLIAM THORN, GEOFFREY STANEK, TRAVIS COX, ERIC LEE FLORES, and JAKE RYAN,**

**Defendants.**

**Case No. 3:16-cr-00051-BR**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ISSUING SUMMONS TO JURORS FROM THE ENTIRE DISTRICT OF OREGON**

Responsive to a directive of the Court, in a Joint Letter dated April 27, 2016, the defendants set forth their position that the Court's Jury Administrator should issue summonses to jurors outside the Portland Division.[1] At the Status Conference on May 4, 2016, the Court directed defendants to submit a written brief on this issue to support their position.[2] To ensure a fair cross section of the community of a fair and impartial jury is empaneled to hear the case, the defendants renew their request that jurors from the entire District of Oregon be issued summons.

**REQUESTED RELIEF**: There is not unanimity amongst the defendants regarding the relief sought. However, the following represents the three options the defendants collectively propose to the Court:

(A) A majority of the defendants respectfully request the Court order the Jury Administrator to issue summonses to prospective jurors residing throughout the entire District of Oregon, equally from each jury division (Eugene, Medford, Pendleton, and Portland). This would result in 375 jury summonses being issued to jurors form each division;

(B) Several defendants respectfully renew the request made at the May 4th Status Conference that the Jury Administrator issues summonses only to prospective jurors residing in the Pendleton Division. If there are insufficient numbers of qualified jurors in the Pendleton Division, that the Court exhaust that list prior to issuing summonses to jurors from the other three divisions, equally; or

---

[1] Defendants hereby incorporate the arguments set forth in the Joint Letter previously submitted.

[2] The latest Court Order (Doc. 523) discusses this issue but did not reaffirm the Court's directive stated at the hearing for defendants to file this memorandum.

(C) All defendants concur in a request that at a minimum, and in the alternative, the Court order the Jury Administrator to issue summonses to prospective jurors proportionately to the size of the Master Jury Wheel for each division, in accordance with the District of Oregon's Jury Management Plan § 2.02.

**CERTIFICATION OF CONFERRAL**: Undersigned counsel certifies that he conferred with Assistant United States Attorney Ethan Knight regarding the motion. The government opposes the requested the relief. As stated in the Joint Letter of April 27, 2016, consistent with district practice, and because of the absence of any controlling legal authority to the contrary, it is the government's position that jurors outside the Portland Division should not receive summonses. The government will separately brief substantive issues regarding issues raised by defendants' memorandum at the Court's request.

## I. The Law Provides for Trial Before a Fair Cross Section of the Community and This Should Include a Jury Pool Drawn from the Entire District of Oregon.

"[T]he American concept of the jury trial contemplates a jury drawn from a fair cross section of the community" as "an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana*, 419 U.S. 522, 527-28 (1975). The impartial jury must be drawn from "the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. amend. VI.

The Sixth Amendment imposes a geographic limitation on the prosecution of crimes, and the origins of the geographic limitation are found in English common law. For example, the right to be tried by a jury from a particular geographical region, or vicinage, came in part from the practice established in England by the early 1600's, and in part as a reaction to the efforts of the English Crown during the 1760's to bring colonists to London in order to try them for treason. *See*

*Zicarelli v. Gray*, 543 F.2d 466, 468 (3d Cir. 1976). Vicinage "means neighborhood, and 'vicinage of the jury' meant jury of the neighborhood or, in medieval England, jury of the county." *Williams v. Florida*, 399 U.S. 78, 94 n. 35 (1970). The original version of the Sixth Amendment drafted by James Madison and introduced in the House of Representatives incorporated the term "vicinage," but the term does not appear in the final version of the Sixth Amendment. *See id*. at 93 ("pending and after the adoption of the Constitution, fears were expressed that Article III's provision failed to preserve the common-law right to be tried by a 'jury of the vicinage.'").

The modern judicial district is borne from statute. The Jury Selection and Service Act of 1968 specifically provides for splitting a district into divisions and using only one division's jury wheel for petit juries: "[A]ll litigants in Federal court entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861.

Although a petit jury may be drawn constitutionally from only one division and not the whole district, *see United States v. Herbert*, 698 F.2d 981, 984 (9th Cir. 1983) (citing *Ruthenberg v. United States*, 245 U.S. 480 (1918)), nothing precludes the court from drawing jurors from the district when the unique circumstances of the case and fundamental fairness require it.[3] The language of the statute ("fair cross section of the community in the district or division") endorses the defendants' request, as does the District of Oregon's Jury Management Plan § 1.04 ("It is the policy of the court that all litigants in this Court, entitled to trial by jury, shall have the right to

[3] Defendants acknowledge that three Circuits have held that there is no right to a trial held in a particular division, even the one where the crime occurred. *See, e.g., Zicarelli*, 543 F.2d at 479; *United States v. Mase*, 556 F.2d 671, 675 (2d Cir.1977), cert. denied, 435 U.S. 916, (1978); *United States v. James*, 528 F.2d 999, 1021 (5th Cir.1976), cert. denied, 429 U.S. 959, (1976). The defendants did not find a 9th Circuit case holding the same.

grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the Court convenes.").

Finally, Fed. R. Crim P. 18 contemplates several factors regarding the *place* of trial (convenience of the defendant, any victim, and the witnesses), but it is otherwise silent regarding the places from which prospective jurors may be drawn. Thus, there is no legal impediment to prevent the Court from issuing summonses to prospective jurors from the entire District of Oregon. While the defendants acknowledge that there is no controlling authority that mandates it, there is no alternative mechanism in this case that will likely ensure the defendants are tried before a jury representing a fair cross section of the community.

## II. A Jury Pool Drawn Equally from the Entire District of Oregon will Ensure Fairness and Avoid the Appearance of Government Venue Shopping Under the Unique Facts and Circumstances of this Case.

This case has received substantial pretrial publicity and is politically charged. Hardly a day passes that a media story is not published regarding some aspect of this case – the alleged underlying events, the issues raised by the events, court proceedings, stories about individual defendants, etc. It is the defendants' expectation that 100% of the prospective jurors will have some degree of familiarity with the case due to pretrial press coverage which has saturated the community. Under the unique facts and circumstances of this case, opening the prospective jury pool to those outside of the Portland Division will greatly increase the chances of seating a fair and impartial jury.

Neither the defendants, potential witnesses, nor the alleged underlying events have any connection to the Portland Division. All events are alleged to have occurred at either the Malheur National Wildlife Refuge or in Burns, Oregon, which are located within Harney County, Oregon.

Harney County falls under the "Pendleton Jury Management Division." *See* Jury Management Plan § 1.07(b).

The question of whether to issue summonses to jurors from outside the Portland Division is inextricably linked to the question of venue. The government initiates criminal prosecutions and, thus, has the first crack at selecting the venue. *See United States v. Salinas*, 373 F.3d 161, 163 (1st Cir. 2014) (citing *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002)). "The purpose of limiting criminal prosecutions to 'a district in which the offense was committed' is to provide a 'safety net, which ensures that a criminal defendant cannot be tried in a distant, remote, or unfriendly forum solely at the prosecutor's whim.'" *United States v. Bravo-Fernandez*, 756 F. Supp. 2d 184, 206 (D.P.R. 2010) (quoting *Salinas*, 373 F.3d at 164).

It is unknown why the government decided to bring the defendants to Portland and initiate prosecution in the venue of the Portland Division. The decision may have been based upon logistical reasons of ensuring facilities and resources are sufficient for a trial of this size and magnitude. The defendants do not concede this point, especially given the widely divergent demographics and political views held by persons in different areas of the state. Although there is no sitting grand jury drawn exclusively from the Pendleton Division (where jurors are added to grand juries empaneled in the Portland Division), there are grand juries in both Eugene and Medford, as ordered by the Chief Judge of the District pursuant to Jury Management Plan § 4.07.[4] Given the closer proximity between the Malheur National Wildlife Refuge and the United States District Courts in Eugene and Medford than between the Refuge and Portland, the decision certainly wasn't made based upon geography alone. Regardless, the defendants have no right to

[4] This fact was provided by the Jury Administrator for the District or Oregon.

be present at a grand jury proceeding, so the location of the grand jury is not dispositive to the *situs* of the ultimate venue of prosecution. *See* Fed. R. Crim. P. 6(d).

As of the date of filing, the defendants are unable to provide the Court with the data typically used to support a motion for a change of venue, such as a media analysis of the publicity surrounding the case and/or a community attitude survey of jury-eligible residents. Funding to produce this data remains pending and is the subject of a separate filing before the court (Doc. 526).[5] However, the defendants are not currently asking the Court for a change of venue. Rather, the defendants are seeking to mitigate against the need for a venue change by ensuring a jury may be empaneled that may "lay aside [their] impression or opinion and render a verdict based on the evidence presented in court." *Hayes v. Ayers*, 632 F.3d 500, 511 (9th Cir. 2011) (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)).

While it is unknown, of course, whether the defendants will be able to receive a fair trial anywhere in the District, issuing summonses to prospective jurors equally from each division will at least eliminate the appearance that in choosing the venue of prosecution, the government purposefully sought a division that it considered to be a friendlier forum to prosecute its case. In other words, it will avoid the appearance of the harm that the common law vicinage requirement sought to prohibit, as illustrated by the practice of the English Crown bringing colonists to London to be tried for treason.

[5] Until the venue analysis is funded and completed the defendants are unable to accurately detect how the substantial pretrial publicity may be influencing or causing bias to prospective jurors. Defendants respectfully reserve the right to modify their position on venue if the data is collected and conclusions can be drawn regarding potential bias.

In the District of Oregon, county voter registration lists represent a fair cross section of the citizens residing within the District. *See* Jury Management Plan § 2.01. Because all of the jurors in this case will be registered voters, voter registration is the relevant data from which the defendants can demonstrate the differences between the four divisions within the District. Again, as funding requests remain pending, the defendants are unable to produce to the Court an attitudinal survey from registered voters from which the parties can extrapolate firm conclusions. However, that does not mean the defendants and the Court are left only to speculate, as there is relevant data available that requires closer scrutiny.

In modern America, the distinction between "liberals" and "conservatives" is generally considered to be a difference between the two major political parties – Democrats as "liberals" and Republicans as "conservatives." A political difference between the two parties also extends to their respective ideologies regarding the appropriate size and power of the federal government. That distinction was at the heart of the protest in this case that the government has charged as crimes – disputes over federal ownership and management of public lands. Additionally, this case is uniquely political and will require the finder of fact to evaluate and weigh evidence regarding whether alleged conduct is constitutionally protected speech, assembly, press, petition, and right to bear arms.

According to the Oregon Secretary of State's Office, the following charts represent the differences in voter registration in December 2015[6] by political party in the four divisions[7] within the District of Oregon[8]:

| | Total # of Voters | Democrats | Republicans | Independents | Not Available | Other |
|---|---|---|---|---|---|---|
| Eugene | 691,129 | 35.94% | 32.62% | 5.46% | 23.25% | 2.73% |
| Medford | 219,599 | 28.97% | 39.52% | 6.2% | 22.73% | 2.58% |
| Pendleton | 100,520 | 23.96% | 45.09% | 5.16% | 26.63% | .84% |
| Portland | 1,158,110 | 42.24% | 24.65% | 4.65% | 25.28% | 3.18% |
| **TOTALS** | 2,169,248 | 38.04% | 29.62% | 5.09% | 24.31% | 2.94% |

The differences between the divisions, and the Portland Division as compared to the other three divisions, is significant. For example, in raw numbers there are 203,711 more Democrats (489,185) than Republicans (285,474) in the Portland Division. By comparison, in the Pendleton Division there are 21,240 more Republicans (45,324) than Democrats (24,084). Thus, a simplistic review of voter registration data leads to the conclusion that a jury pool from the Portland Division will include more jurors registered to a more "liberal" political party than the Pendleton Division, where all of the charged events are alleged to have occurred. To avoid this discrepancy and to ensure that justice may be done, the Court should issue summonses to prospective jurors from

[6] This date was selected because according to the Jury Administrator it was after the last Master Jury Wheels were created in the District.

[7] **Eugene Division** (Benton, Coos, Deschutes, Douglas, Lane, Lincoln, Linn, Marion); **Medford Division** (Curry, Jackson, Josephine, Klamath, Lake); **Pendleton Division** (Baker, Crook, Gilliam, Grant, Harney, Malheur, Morrow, Sherman, Umatilla, Union, Wallowa, Wheeler); **Portland Division** (Clackamas, Clatsop, Columbia, Hood River, Jefferson, Multnomah, Polk, Tillamook, Wasco, Washington, Yamhill).

[8] *See* Appendix I; http://sos.oregon.gov/elections/Documents/registration/dec15.pdf.

beyond the Portland Division. As noted, there are several proposals put forth by the defendants as to how the Court could direct the Jury Administrator to issue summonses. All of the proposals would seek to level the ideological playing field and seek to ensure that a fair and impartial jury can be empaneled, as required based upon the unique facts and circumstances of this case.

In the Joint Letter, the parties agreed with the Court's proposal that the Jury Administrator issue the initial summonses to 1,500 prospective jurors. Should the Court issue 1,500 summons, a majority of the defendants respectfully request that it be done equally for each division, or that 375 summonses issued to jurors from each division. Several defendants renew the request that the Jury Administrator first exhaust the list of qualified jurors from the Pendleton Division prior to issuing summonses to prospective jurors in the other divisions. At a minimum, all defendants respectfully request as alternative relief that the Court issue summonses proportionately to prospective jurors from each division.

Lastly, as stated, this issue relates to the larger question of venue. The defendants have already alerted the Court of their desire to research the validity of a change of venue motion. If seating a fair and impartial jury becomes an impossibility based upon the jury pool harboring partiality or hostility towards the defendants that cannot be set aside, summonsing jurors from the entire District will greatly inform a change of venue motion. Both the Court and the parties will be in a better position to know what venue options might constitute constitutionally permissible alternatives. In other words, defendants will be in a position to know whether seeking a venue change to another Division within the District of Oregon is or is not a viable option.

Respectfully submitted this 11th day of May, 2016.

______________________________
Rich Federico
Assistant Federal Public Defender
Attorney for Mr. Payne

PAGE 11. DEFENDANTS' MEMORANDUM IN SUPPORT OF ISSUING SUMMONS TO JURORS FROM THE ENTIRE DISTRICT OF OREGON