BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**ETHAN D. KNIGHT, OSB #992984**
**GEOFFREY A. BARROW**
**CRAIG J. GABRIEL, OSB #012571**
Assistant United States Attorneys
ethan.knight@usdoj.gov
geoffrey.barrow@usdoj.gov
craig.gabriel@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:16-CR-00051-BR** |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (#527)** |
| **AMMON BUNDY, et al.,** | |
| **Defendants.** | |

The United States of America, by Billy J. Williams, United States Attorney for the

District of Oregon, and through Ethan D. Knight, Geoffrey A. Barrow, and Craig J. Gabriel,

Assistant United States Attorneys, hereby responds to Defendants' Motion to Dismiss for Lack

of Subject Matter Jurisdiction and Memorandum in Support (ECF No. 527), filed by defendant

Ammon Bundy on behalf of all defendants.

I.      **Summary**

Defendants urge this Court to dismiss the six-count Indictment in this case on grounds

that the United States Constitution prohibits the federal government from owning land generally

and the Malheur National Wildlife Refuge (MNWR) specifically.    (Defs.' Mem. 18).[1]

Defendants argue that the Property Clause of the Constitution does not authorize the federal

government to acquire or permanently own property.    (Defs.' Mem. 21).    They attempt to

distinguish over one hundred years of jurisprudence to the contrary by citation to historical

records, and they urge this Court to disregard binding precedent on grounds that numerous cases

were wrongly decided and should be overturned.

Defendants assert a single legal argument that they contend warrants dismissal of this

criminal action: that the Property Clause of the Constitution does not authorize the United States to

permanently own real property; rather, the Enclave Clause of the Constitution is the sole means by

which the federal government may do so.    That argument ignores both Supreme Court and Ninth

Circuit authority to the contrary and offers an unprecedented interpretation of the Enclave Clause.

*See Kleppe v. New Mexico*, 426 U.S. 529, 540-41 (1976); (Congress has near "complete power"

under the Property Clause); *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987);

*Utah Power & Light Co. v. United States*, 243 U.S. 389, 404 (1917); *United States v. Gardner*, 107

F.3d 1314, 1318 (9th Cir. 1997); *State of Nev. v. Watkins*, 914 F.2d 1545, 1553 (9th Cir. 1990);

*United States v. Vogler*, 859 F.2d 638, 640-41 (9th Cir.1988).    As these cases hold, and as further

explained below, the Property Clause vests plenary authority over federal lands—such as the

Malheur National Wildlife Refuge—in Congress, including the power of permanent ownership.

Defendants' Motion should be denied.

/ / /

---

[1]    The citations to defendants' Motion and Memorandum refer to the pages numbers in the ECF
header.

## II.     Defendants Lack Standing to Challenge Government's Authority to Retain Land

Defendant Bundy now claims that he led the armed takeover and occupation of the Malheur National Wildlife Refuge in a "calculated legal maneuver . . . . designed to force the federal government into court to address the constitutionality of its federal land management policy."  (Defs.' Mot. 1-2).   Defendants, however, lack standing to challenge the constitutionality of the federal government's ownership and management of public lands. Defendants do not argue that the MWNR is not owned by the federal government; nor do they challenge the validity of the statutes they are charged with violating.   They concede that the federal government has "plenary power to manage, regulate, sell or dispose of public lands." (Defs.' Mem. 23).   Nonetheless, they ask the Court to dismiss the six-count Indictment on grounds that the federal government does not have the authority to "forever retain the majority of the land within a State, and . . . specifically, the land and property occupied by Mr. Bundy."   *Id.*

All defendants have a right not to be convicted under a constitutionally invalid law.   *Bond v. United States*, 131 S. Ct. 2355, 2367 (2011) (Ginsburg, J., concurring).   However, to have standing to litigate an issue in federal court, defendants must satisfy the case or controversy requirement of Article III, Section 2 of the Constitution.   Defendants "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."   *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). Defendants' Motion does not challenge the constitutionality of the statutes they are charged with violating and, more importantly, a favorable ruling would not redress the harm defendants face.

/ / /

**Government's Response to Defendants' Motion to Dismiss for Lack of Subject        Page 3
Matter Jurisdiction (#527)**

None of the counts under which defendants were charged require the federal government to permanently own the MNWR.   The government's right to permanently hold property has no bearing on the charges in Counts 1, 3, 4, and 5.   To prove Count 2, the government will have to establish that defendants entered a "federal facility," defined by statute as "a building . . . owned or leased by the Federal Government."   18 U.S.C. § 930(f)(2).   To prove Count 6, the government must prove that defendants depredated property belonging to the United States.   Even assuming that the government cannot permanently hold federal lands including the MNWR (which it clearly can), the buildings on the Refuge were federal facilities and the property belonged to the United States on the dates set forth in the Indictment.   Accordingly, defendants lack standing to challenge the constitutionality of the government's federal land management policy.

### III.    The Enclave Clause is Inapplicable to the Issues in This Case

The Enclave Clause of the Constitution, U.S. Const. art. I, § 8, cl. 17, provides that Congress may "exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."   Defendants erroneously assert that this constitutional provision is the sole mechanism by which Congress can acquire land permanently.   (*See* Defs.' Mem. 20-21).   It is not, as *Kleppe* makes clear.   426 U.S. at 541-42.   The lands at issue here were not purchased pursuant to the Enclave Clause, but were instead acquired by the United States pursuant to a 1933 Act[2] that specifically *did not* attempt to establish exclusive legislative

---

[2]   The land where the Malheur Refuge headquarters are located—and which was the primary site of the occupation—is within the 64,717 acre Blitzen Valley portion of the Malheur National

jurisdiction.   Thus, no state cession of jurisdiction was necessary; the United States exercises proprietary and sovereign jurisdiction over that property, the latter of which it shares with the state. *See Kleppe*, 426 U.S. at 543.   The Enclave Clause thus has no bearing on the land at issue here.

## IV.    The Property Clause Authorizes the Government to Permanently Own Land

The United States retains and manages the Refuge pursuant to its powers under the Constitution, primarily the Property Clause, which gives Congress the power "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."   U.S. Const. art. IV, § 3, cl. 2.   The Supreme Court and the Ninth Circuit have consistently interpreted this power to be expansive, repeatedly observing that "the power over the public land thus entrusted to Congress is without limitations."   *Kleppe*, 426 U.S. 529, 539 (1976); *United States v. San Francisco*, 310 U.S. 16, 29 (1940); *Gardner*, 107 F.3d at 1318 ("[U]nder the Property Clause, the United States can administer its federal lands any way it chooses."); *McFarland v. Kempthorne*, 545 F.3d 1106, 1112 (9th Cir. 2008) (same).   And consistent with this authority, the Ninth Circuit has expressly rejected the argument that the Property Clause "was intended by the Framers to be a temporary provision only" in light of "well-settled Supreme Court precedent establishing the broad power granted to the government in the property clause to regulate federal lands."   *Vogler*, 859 F.2d at 640-41 (citing *Kleppe*, 426 U.S. 529).

Defendants assert that this precedent is inapposite because the Property Clause allegedly addresses "<u>disposal</u> of public lands" rather than permanent ownership.   (Defs.' Mem. 25 n.29; 28 n.31).   But the Supreme Court in *Kleppe* rejected the same tenuous distinction defendants draw

---

Wildlife Refuge which was acquired in 1935 pursuant to "An Act [f]or the relief of unemployment through the performance of useful public work, and for other purposes," 48 Stat. 22 (1933).

**Government's Response to Defendants' Motion to Dismiss for Lack of Subject      Page 5
Matter Jurisdiction (#527)**

here: "appellees have presented no support for their position that the [Property] Clause grants Congress only the power to dispose of, to make incidental rules regarding the use of, and to protect federal property.   This failure is hardly surprising, for the Clause, in broad terms, gives Congress the power to determine what are 'needful' rules 'respecting' the public lands."[3]   *Kleppe*, 426 U.S. at 539.

Defendants' arguments distinguishing *Light v. United States*, 200 U.S. 523 (1911) are equally unavailing.   There, the Supreme Court unequivocally rejected the argument that "Congress cannot constitutionally withdraw large bodies of land from settlement without the consent of the state where it is located."   *Light*, 220 U.S. at 535-36.   The Court recognized that Congress has broad powers under the Property Clause and held that Congress has the authority to retain or reserve the public lands "indefinitely" and pass laws to regulate those lands.   *Id.* at 537.

In *Gardner*, 107 F.3d 1314, the Ninth Circuit rejected claims similar to those raised by defendants.   The Gardners owned a ranch near the Humboldt National Forest in Nevada.   They grazed livestock on Forest Service land in violation of the terms of their grazing permit.   The Forest Service revoked the permit, but the Gardners continued to graze livestock on the land without authorization and without paying requisite grazing fees.   The government sought and

---

[3]   To the extent that defendants contend that the Founding Fathers' debates should override clear Supreme Court or Circuit precedent or that this Court should ignore binding authority because of "historical documents" (Defs.' Mem. 24-26), that argument too should be flatly rejected.   It is axiomatic that this Court is bound by controlling precedent.   *See, e.g.*, *Krahel v. Owens-Brockway Glass Container, Inc.*, 971 F. Supp. 440, 449 (D. Or. 1997) (finding that the court is bound by controlling precedent absent intervening changes in the law) (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)).

received an injunction and damages based on the Gardners' unauthorized use of the land.    On

appeal, the Gardners argued that the unappropriated lands in Nevada, including the Humboldt

National Forest, "are not territory or other property belonging to the United States."    *Id.* at

1317.    While they conceded that the United States "may" have received the land from Mexico

by treaty, they argued that "the United States was entitled only to hold the land in trust for the

creation of future states, and was not authorized to retain the land for its own purposes.    After

Nevada became a state . . . all of the public lands within the state boundaries reverted to the state

of Nevada."    *Id.* at 1317.    Like defendants in this case, the Gardners relied on *Pollard's Lessee*

*v. Hagan*, 44 U.S. (3 How.) 212 (1845) for the proposition that the United States had a duty to

hold public lands in trust for the formation of future states.    *Id.* at 1317.    The court found that

*Pollard* was inapplicable because, unlike the lands at issue in *Pollard*, which were cessions from

Virginia and Georgia to the Unites States, Nevada had no independent claim to sovereignty

before statehood and the federal government was the original owner of the land from which

Nevada was created.    *Id.* at 1318.    The court found that "under the Property Clause, the United

States can administer its federal lands any way it choses, including the establishment of a

national forest reserve."    *Id.*

Similarly, Oregon has no independent, pre-statehood claim to sovereignty over the lands

comprising the Malheur Refuge.    The lands originally became part of the United States as part

of the Compromise of 1846 that set the boundary between the United States and British territory

at the 49th parallel.    As explained in a comprehensive opinion of the Oregon Attorney General,

"the United States acquired clear ownership of the Oregon Territory, which included what is now

**Government's Response to Defendants' Motion to Dismiss for Lack of Subject        Page 7
Matter Jurisdiction (#527)**

Washington, Oregon and Idaho, as well as portions of Montana and Wyoming." *See The Honorable Gordon Smith*, Opinion No. 8237, 48 Or. Op. Atty. Gen. 1, 1995 WL 400487, at *3 (July 7, 1995).   When Oregon became a State in 1859, "Oregon acquiesced in federal ownership of the unappropriated public lands within the boundaries of the new state.   This agreement preserved the federal government's authority under the Property Clause from challenge by the new state."   *Id.* at *5.   Thus, *Pollard* is inapplicable to this case, and the United States may retain the Refuge for as long as it sees fit pursuant to the Property Clause.

## V.     Conclusion

Defendants' Motion to Dismiss the Indictment should be denied because they lack standing to raise their beliefs regarding the constitutionality of federal land management policy in this criminal proceeding.   Even if the Court were to adopt defendants' novel interpretation of the Constitution, the charges against defendants would stand.   The Property Clause grants the federal government broad power to own and regulate federal lands, including the Malheur National Wildlife Refuge.   And casting aside the fact that ownership of the Refuge is not relevant to the charges against the defendants, their claim that the Enclave Clause limits the

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Government's Response to Defendants' Motion to Dismiss for Lack of Subject       Page 8
Matter Jurisdiction (#527)**

authority of the United States to own public land is clearly contrary to binding Circuit and

Supreme Court authority and must be rejected.[4]

        Dated this 16th day of May 2016.

                                 Respectfully submitted,

                                 BILLY J. WILLIAMS
                                 United States Attorney


                               *s/ Geoffrey A. Barrow*
                               ETHAN D. KNIGHT, OSB #992984
                               GEOFFREY A. BARROW
                               CRAIG J. GABRIEL, OSB #012571
                               Assistant United States Attorneys

---

[4]  Defendants' Motion and Memorandum total 33 pages.   In addition, defendants attempt to shoehorn 60 pages from a 146-page "Legal Analysis" commissioned by the Utah state legislature as argument in this case "by reference."   (Defs.' Mem. 30).   Defendants' effort to incorporate these arguments should be rejected as inconsistent with this Court's Order (ECF No. 464) and the exhibit should be stricken from the record.   *See Raifman v. Wachovia Sec., LLC*, No. C 11-02885, 2012 WL 1611030, at *3 (N.D. Cal. May 8, 2012) (refusing to consider arguments incorporated by reference from a previously filed motion to dismiss because such incorporation is "wholly improper" and would "circumvent[] page limits on briefs set forth in the Civil Local Rules and this Court's Civil Standing Orders"); *see also Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996).   Moreover, the arguments raised in defendants' Exhibit 1 are as inconsistent with Supreme Court and Circuit precedent as those defendants raise in their own pleadings.   *See, e.g.*, *Gardner*, 107 F.3d at 1319 (Contrary to Gardners' claim, the Equal Footing Doctrine does not give Nevada title to the public lands within its boundaries.).

**Government's Response to Defendants' Motion to Dismiss for Lack of Subject     Page 9
Matter Jurisdiction (#527)**