Paul Hood, OSB 132271
1001 SW Fifth Ave, Suite 1415
Portland, OR  97204
Telephone: 541-513-7545
Facsimile:  855-366-3359
paul@paulhoodlaw.com

Attorney for Defendant Travis Cox

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.  3:16-cr-00051-BR-24 |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | **DEFENDANT'S MOTION TO REVOKE DETENTION ORDER** |
| TRAVIS COX, | ) ) | |
| Defendant. | ) ) ) ) ) | |

## MOTION AND CERTIFICATE OF COUNSEL

Travis Cox, through undersigned counsel Paul Hood, respectfully moves this Court for an Order revoking the detention Order entered by Magistrate Judge Paul Papak on April 26, 2016, ECF 462.  This motion is based upon evidence that was not available at the time of the April 26 Order as well as a release plan that had not

Defendant's Motion to Revoke Detention Order page 1

been developed or investigated as of April 26.  Undersigned counsel has conferred with Assistant United States Attorney Ethan Knight regarding this motion.  The government opposes this motion.

## MEMORANDUM

### I.    PROCEDURAL BACKGROUND

On April 26, 2016, Travis Cox was arraigned before Magistrate Judge Paul Papak.  Counsel Paul Hood was present for the defendant, AUSA Ethan Knight was present for the government, and Officer Noe Rios was present from the pretrial services office.  At that arraignment, it was the intent of defense counsel to set over the detention hearing pending additional investigation and the possible development of a suitable pretrial release plan.  Defense counsel later learned that the April 26 appearance was treated as a detention hearing and that an Order affirming detention was entered on that date.  Upon learning this, defense counsel consulted with Mr. Cox.  Rather than returning to the Magistrate Court to litigate the procedural history of the April 26 court appearance, defendant and defense counsel agreed to move forward before this Court.  This approach was chosen in part to expedite the review of detention and to focus upon the development of a suitable release plan.  These background details are in no way meant as a slight to the Magistrate Court.  Defense counsel may be at fault for not adequately communicating his intent at the arraignment.  In any case, no evidence related to

pretrial release was presented at the April 26 arraignment. No arguments were made by either side regarding the issue of detention, and, perhaps most importantly, pretrial services had not yet interviewed Mr. Cox or investigated the possibility of a suitable release plan.

## II.   THE RELEASE PLAN

### A. Residence

Travis Cox is 21 years old and from central Oregon. He was twenty at the time of the allegations in this case. If permitted pretrial release, he would reside with his mother, Diane Cox, at her home. That address has previously been provided to Officer Noe Rios of the pretrial services office. Ms. Cox is employed by Fire and Rescue of Redmond, Oregon and has no criminal history. Defense counsel is in regular contact with Ms. Cox. She is supportive of pretrial release for her son and will allow him to return to her home. It is defense counsel's understanding that Officer Rios of the pretrial services office has confirmed the availability of this residence for Mr. Cox.

### B. Employment

If allowed pretrial release, Travis Cox could return to work for his former employer, a regional pizza restaurant chain in central Oregon. Defense counsel has talked to the owner of that business to confirm that Mr. Cox can return to work.

Defense counsel believes that Officer Rios has also confirmed this employment plan.

### C. Other Conditions

Defense counsel has discussed possible conditions of release with Officer Rios. If Mr. Cox is permitted pretrial release, Mr. Cox understands that there will be conditions placed upon him, which could include a curfew, random drug tests, and an agreement by his mother with the United States Office of Pretrial Services that she will act as a responsible party. Mr. Cox agrees to those conditions and will abide by them as well as other conditions that this Court may impose.

### III. THE LEGAL STANDARD

Pursuant to 18 USC § 3142, a defendant should be released pending trial unless "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting 18 U.S.C. § 3142 (e)). Mr. Cox is charged <u>only</u> in Count 1 (Conspiracy to Impede Officers of the United States under 18 USC § 372) and Count 2 (Possession of Firearms and Dangerous Weapons in Federal Facilities under 18 USC §§ 930(b) and 2). He is not charged in Count 3 (Use and Carry of a Firearm in Relation to a Crime of Violence under 18 U.S.C. §§ 924(c)(1)(A) and 2). As a result, there is no

presumption in favor of detention. The government must prove a serious flight risk or a safety risk, in order to justify continued detention.

To meet that burden, the government must prove flight risk by a preponderance of the evidence and danger to the community or an individual by clear and convincing evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). In the context of pretrial detention, The Ninth Circuit's "preponderance of the evidence" burden is greater than the usual "tips the scales slightly" test applied in civil cases. *United States v. Chen*, 820 F.Supp. 1205, 1208 (N.D. Cal. 1992). A standard of "clear preponderance" must be employed to give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant. *Id.* (*citing Motamedi*, 767 F.2d at 1405-06).

When determining if pretrial detention is necessary, the Court is to consider: the nature and circumstances of the offense charged; the weight of the evidence against the person; the history and characteristics of the person; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

### IV.   MR. COX SHOULD BE RELEASED

The Supreme Court has noted that the "traditional right to freedom before conviction permits the unhampered preparation of a defense and serves to prevent

the infliction of punishment prior to conviction." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). The Court further observed that "unless this right to bail before trial is preserved, the presumption of innocence secured only after centuries of struggle, would lose its meaning." *Id.* The Supreme Court has also noted that "[i]n our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). In keeping with this traditional right to freedom before and until conviction, under the Bail Reform Act, Congress directed that "[o]nly in rare circumstances should release be denied, and doubts about the propriety of release should be resolved in the defendant's favor." *Gebro*, 948 F.2d at 1121. The statute expressly provides that a defendant should be released on his own recognizance unless he represents a serious flight risk or a danger to the community. 18 U.S.C § 3142(b); *United States v. Eischeid*, 315 F. Supp. 2d 1033, 1037 (D. Ariz. 2003) (finding that the threat of flight must be great).

In an effort to justify detention, the government will likely point to the fact that Mr. Cox delayed turning himself in on this case. On February 12, 2016, Mr. Cox's name was added to the list of publically disclosed defendants in this case. Mr. Cox turned himself in on April 11, 2016 in Cedar City, Utah, at the Iron County Sheriff's Office. In the government's view, this delay in voluntary surrender suggests that Mr. Cox is a flight risk. Of course, the first and most important point

is that Mr. Cox did in fact turn himself in and did so peacefully and without incident. Also, he turned himself in shortly after having his first conversation with undersigned defense counsel.

On February 23, 2016, undersigned defense counsel was contacted by the Federal Public Defenders Office about the possibility of representing Mr. Cox. At that time, Mr. Cox was not in custody, and undersigned counsel had no contact information for him, no information on his location, and no names or contact information for any of his family members. Undersigned counsel sought contact information from the government, but none was provided. Fortunately, in early April, Mr. Cox's mother discovered that undersigned defense counsel was available to represent Mr. Cox and then contacted undersigned defense counsel. Subsequently, on or about April 7, 2016, undersigned defense counsel spoke to Mr. Cox for the first time and addressed the need for him to turn himself in. On April 11, 2016, Mr. Cox again contacted defense counsel and turned himself in without incident. In fact, Mr. Cox arrived at the Iron County Sheriff's Office at a time when no one was present in the office and waited in the parking lot until a deputy arrived in a patrol vehicle.

These actions do not suggest that Mr. Cox is a flight risk. Instead, the delay in turning himself in is consistent with Mr. Cox's youth and lack of experience in the criminal justice system. In simple terms, he was frightened. Once he received

legal counsel he decided to surrender himself to the government.  In part, he did that because he wants to have a life.  He wants to get married, settle down, and have a family.  He understands he cannot realistically achieve that goal or any of his other aspirations with an active federal warrant.

In light of the nature and circumstances of the offense; the weight of the evidence; Mr. Cox's history and characteristics; and the controlling issues of flight risk and danger to the community, the government cannot meet its burden to justify the continued detention of Mr. Cox.  Even when considering the evidence in a light most favorable to the government, Mr. Cox is not a ringleader or one of the original organizers and planners of the occupation.  At this time, over half of the defendants in this case have been granted pretrial release, and Travis Cox should be among them.  He has family and friends in the areas where he would reside and work, if permitted pretrial release.  He does not present a flight risk or a danger to the community, and pretrial release conditions are available to address any remaining concerns.

DATED this 2nd day of June 2016.		Respectfully submitted,

/s/ Paul Hood
PAUL HOOD, OSB No. 132271

Travis Cox Motion to Revoke Detention Order pg. 8		Paul Hood, Attorney at Law, LLC
1001 SW 5th Ave., Suite 1415
Portland, OR 97201