IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    3:16-cr-00051-BR

        Plaintiff,                          ORDER RESOLVING ROUND
                                             ONE MOTIONS ON THE
v.                                           PLEADINGS

AMMON BUNDY, JON RITZHEIMER,
JOSEPH O'SHAUGHNESSY, RYAN
PAYNE, RYAN BUNDY, BRIAN
CAVALIER, SHAWNA COX, PETER
SANTILLI, JASON PATRICK,
DUANE LEO EHMER, DYLAN
ANDERSON, SEAN ANDERSON,
DAVID LEE FRY, JEFF WAYNE
BANTA, SANDRA LYNN ANDERSON,
KENNETH MEDENBACH, BLAINE
COOPER, WESLEY KJAR, COREY
LEQUIEU, NEIL WAMPLER, JASON
CHARLES BLOMGREN, DARRYL
WILLIAM THORN, GEOFFREY
STANEK, TRAVIS COX, ERIC LEE
FLORES, and JAKE RYAN,

        Defendants.


BROWN, Judge.

    This matter comes before the Court on the following Motions:

    1.   Defendant Peter Santilli's Motion (#479) to Dismiss

Count One as Constitutionally Protected Conduct;

1 - ORDER RESOLVING ROUND ONE MOTIONS ON THE PLEADINGS

2.    All Defendants' Motion (#482) to Dismiss Count Two;[1]

3.    Defendant Kenneth Medenbach's Motion (#505) to Dismiss;
and

4.    Defendants' Motion (#527) to Dismiss for Lack of
Subject Matter Jurisdiction.[2]

On May 17, 2016, the Court concluded oral argument was not
necessary to resolve these Motions.  The Court, however,
permitted the moving Defendants to file optional reply memoranda
no later than May 27, 2016, in lieu of oral argument.  The Court
took the Motions under advisement on May 27, 2016.

For the reasons that follow, the Court **DENIES** Defendants'
Motions.


### DEFENDANT PETER SANTILLI'S MOTION (#479) TO DISMISS COUNT ONE AS CONSTITUTIONALLY PROTECTED CONDUCT

Defendant moves to dismiss Count One pursuant to Federal
Rule of Criminal Procedure 12(b) on the basis that the conduct
underlying the charge is constitutionally protected by the First
Amendment.

Rule 12 provides: "A party may raise by pretrial motion any
defense, objection, or request that the court can determine

_____

[1] Defendants' Motion (#482) to Dismiss Count Two was filed
by Defendant Geoffrey Stanek and is joined by all other
Defendants.

[2] Defendants' Motion (#527) to Dismiss Count Two was filed
by Defendant Ammon Bundy and is joined by all other Defendants.

without a trial on the merits."  In a motion to dismiss brought under Rule 12(b), the Court "must presume the truth of the allegations in the charging instruments." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). *See also United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  "'A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence. . . . The Court should not consider evidence not appearing on the face of the indictment.'" *Jensen*, 93 F.3d at 669. *See also Boren*, 278 F.3d at 914.  "The 'unavailability of Rule 12 in determination of general issues of guilt or innocence . . . helps ensure that the respective provinces of the judge and jury are respected.'" *Boren*, 278 F.3d at 914 (quoting *United States v. Nukida*, 8 F.3d 665, 670 (9th Cir. 1993)).

Santilli specifically contends his involvement in the underlying events in Harney County, Oregon, was to "cover and publish the continuing and developing story of the protesters' occupation" of the Malheur National Wildlife Refuge as "an alternative to mainstream media" by way of broadcasting news, current events, and a talk show on the internet.  He also contends the only conduct specific to him that was detailed in the Criminal Complaint and Superseding Indictment relates to his broadcasting of calls for others to come to Harney County for the purpose of joining in peaceful, lawful protests.  Santilli,

therefore, asserts his conduct was protected by the First Amendment because his speech did not qualify for any exception under the First Amendment.

The government, on the other hand, contends Santilli's Motion impermissibly requests the Court to examine whether there is sufficient evidence to support a charge against him before trial. The government contends its factual representations in the Complaint and the Superseding Indictment are not complete and that the government will present its case and additional evidence at trial.

The government is correct that Defendant's Motion presents arguments that can only be determined after the government has a full opportunity to present its case at trial. The government concedes Santilli may contend at trial that he is not guilty because his conduct was protected by the First Amendment.

After reviewing Count One of the Superseding Indictment as to Santilli, the Court concludes the Superseding Indictment is legally sufficient. *See United States v. Torres-Bobadilla*, 450 F. App'x 572, 573 (9th Cir. 2011)("A legally sufficient indictment is one that 'state[s] the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against which he must defend and to enable him to plead double jeopardy.'")(quoting *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000)).

Accordingly, on this record the Court **DENIES** Santilli's Motion (#479) to Dismiss Count One as Constitutionally Protected Conduct.

### DEFENDANTS' MOTION (#482) TO DISMISS COUNT TWO

Defendants move to dismiss Count Two on the basis that the offense in Count Two based on 18 U.S.C. § 930(b) is unconstitutionally vague and overbroad.  Section 930(b) provides:

> Whoever, with intent that a firearm or other dangerous weapon be used in the commission of a crime, knowingly possesses or causes to be present such firearm or dangerous weapon in a Federal facility, or attempts to do so, shall be fined under this title or imprisoned not more than 5 years, or both.

Count Two of the Superseding Indictment alleges Defendants Ammon Bundy, Jon Ritzheimer, Ryan Payne, Ryan Bundy, Brian Cavalier, Shawna Cox, Jason Patrick, Dylan Anderson, Sean Anderson, David Lee Fry, Jeff Wayne Banta, Sandra Lynn Anderson, Wesley Kjar, Corey Lequieu, Jason Charles Blomgren, Darryl William Thorn, Geoffrey Stanek, Travis Cox, and Eric Lee Flores violated § 930(b) by possessing firearms on the Malheur National Wildlife Refuge (MNWR) with the intent to use the weapons in the commission of Conspiracy to Impede Officers of the United States in violation of 18 U.S.C. § 372 (Count One).

I.  **Vagueness**

"'A criminal statute is void for vagueness if it is not

sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement.'" *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2012).  "In a facial challenge, a statute is unconstitutionally vague if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Harris*, 705 F.3d at 932 (quoting *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009)).  "In an as-applied challenge, a statute is unconstitutionally vague if it 'fail[s] to put a defendant on notice that his conduct was criminal.'" *Harris*, 705 F.3d at 932 (quoting *Kilbride*, 584 F.3d at 1257 ).

"When a statute 'clearly implicates free speech rights,' it will survive a facial challenge so long as 'it is clear what the statute proscribes in the vast majority of its intended applications.'" *Humanitarian Law Project v. United States Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009)(quoting *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149, 1151 (9th Cir. 2001)).  "The touchstone of a facial vagueness challenge in the First Amendment context, however, is not whether some amount of legitimate speech will be chilled; it is whether a substantial amount of legitimate speech will be chilled." *Cal. Teachers Ass'n*, 271 F.3d at 1152.  "To trigger heightened

6 - ORDER RESOLVING ROUND ONE MOTIONS ON THE PLEADINGS

vagueness scrutiny, it is sufficient that the challenged statute regulates and potentially chills speech which, in the absence of any regulation, receives some First Amendment protection." *Id.* at 1150

"Outside the First Amendment context, a plaintiff alleging facial vagueness must show that 'the enactment is impermissibly vague in all its applications.'" *Humanitarian Law Project*, 578 F.3d at 1146.

Section 930(b) does not "clearly implicate free speech rights," and, therefore, the heightened level of vagueness scrutiny does not apply to § 930(b). *See Humanitarian Law Project*, 578 F.3d at 1146 (quoting *Cal. Teachers Ass'n*, 271 F.3d at 1149, 1151). Defendants contend § 930(b) does not provide individuals with fair notice of the conduct prohibited and permits arbitrary enforcement because the terms "federal facility" and "firearm" are not sufficiently defined and because the phrase "inten[d] that [the] firearm . . . be used in the commission of a crime" does not sufficiently specify the crimes that fall within the scope of that phrase.

The term "federal facility," however, is well-defined in § 930(b) as "a building or part thereof owned or leased by the Federal Government, where Federal employees are regularly present for the purpose of performing their official duties." 18 U.S.C. § 930(g)(1). The term "firearm" is sufficiently clear to

"provide a person of ordinary intelligence fair notice of what is prohibited." *See Harris*, 705 F.3d at 932 (quoting *Kilbride*, 584 F.3d at 1257). Moreover, the phrase "intent that a firearm or other dangerous weapon be used in the commission of a crime" is not ambiguous. Accordingly, because § 930(b) provides individuals with sufficient notice of the conduct prohibited and sets out a standard for enforcement, the Court concludes § 930(b) is not unconstitutionally vague on its face.

Defendants also contend § 930(b) violates equal protection because "[t]here is no rational basis for punishing the same conduct (possessing a firearm) differently in § 930(a) and (b) but curtailing a defense based solely on the intent of a defendant to use the firearm in some crime to be committed someplace else in the future." Although Defendants' argument is more properly characterized as substantive due process rather than equal protection, it is without merit under either doctrine. Section 930(b) prohibits the possession of a firearm or dangerous weapon in a federal facility with the intent to use that weapon in the commission of a crime. The only reasonable reading of the statute is that a defendant must intend to use the weapon to commit the crime (at least in part) within that federal facility. The Court concludes this prohibition and the additional penalties provided in § 930(b) are rationally related to the legitimate government interest of protecting federal facilities.

Similarly, the Court concludes § 930(b) is not vague as applied to Defendants.  Defendants have not demonstrated any basis by which § 930(b) failed to put them "'on notice that [their alleged] conduct was criminal.'"  *Harris*, 705 F.3d at 932 (quoting *Kilbride*, 584 F.3d at 1257).  As noted, the scope of § 930(b) is clear and Defendants have not identified any basis to conclude that its application to Defendants' conduct was uncertain in any way.

Accordingly, on this record the Court concludes § 930(b) is not unconstitutionally vague either on its face or as applied to these Defendants and is rationally related to the legitimate government interest of protecting federal facilities.

## II.  <u>Overbreadth</u>

"Under the doctrine of First Amendment overbreadth, a litigant may mount a facial attack on a statute that restricts protected speech even if the litigant's own speech is unprotected." *Turney v. Pugh*, 400 F.3d 1197, 1200 (9th Cir. 2005).  "The overbreadth must be substantial in order for the statute to be invalidated on its face; the fact that a court may conceive of a single impermissible application is insufficient to justify striking down the law." *Id.*  *See also United States v. Stevens*, 559 U.S. 460, 472 (2010)("[A] law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly

legitimate sweep.'")(quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n.6 (2008)).

Defendants contend § 930(b) is unconstitutionally overbroad because it chills constitutionally protected speech that may include the possession of firearms in a federal facility.  In addition, Defendants contend § 930(b) is overbroad because it encompasses conduct that is protected by the Second Amendment.

Section 930(b) and its prohibition on possessing a firearm in a federal facility with the intent to use that firearm in the commission of a crime, however, does not prohibit a substantial amount of expression protected by the First Amendment nor conduct protected by the Second Amendment.[3]  *See Stevens*, 559 U.S. at 472.  Accordingly, on this record the Court concludes § 930(b) is not unconstitutionally overbroad.

For these reasons, the Court **DENIES** Defendants' Motion (#482) to Dismiss Count Two.

### DEFENDANTS' MOTION (#527) TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND DEFENDANT KENNETH MEDENBACH'S MOTION (#505) TO DISMISS

---

[3] Defendants also contend § 930(b) directly violates the Second Amendment.  The Second Amendment, however, does not prevent the prohibition of carrying firearms "in sensitive places such as schools and government buildings."  *District of Columbia v. Heller*, 554 U.S. 570, 626 and n.26 (2008)(noting such prohibitions are "presumptively lawful.").

In Defendants' Motion (#527) to Dismiss for Lack of Subject Matter Jurisdiction and Defendant Kenneth Medenbach's Motion (#505) to Dismiss, Defendants move to dismiss the Superseding Indictment for lack of subject-matter jurisdiction on the basis that the United States does not constitutionally own and exercise jurisdiction over the MNWR.  In particular, Defendants contend the Constitution does not permit the federal government to "forever retain the majority of land within a State" and, thus, to exercise its current ownership over federal lands including the MNWR.

The government, on the other hand, contends Defendants lack standing to challenge the government's authority to retain land, including the MNWR, because a ruling in favor of Defendants on that issue would not affect any of the charges against Defendants.  In any event, the government contends Defendants' arguments concerning the government's ability to retain certain land within the borders of states are without merit.

The Court concludes even if Defendants' arguments concerning the government's authority to own the MNWR are properly raised as subject-matter jurisdictional defenses to the Counts in the Superseding Indictment, Defendants' arguments are without merit. Defendants would, at the least, have to demonstrate the federal government may not constitutionally own the land that constitutes the MNWR rather than merely raise generalized objections to the

extent of federal landholdings in the western United States.

In any event, the Property Clause of the United States
Constitution provides Congress has the power "to dispose of and
make all needful Rules and Regulations respecting the Territory
or other Property belonging to the United States." U.S. Const.
art IV, § 3, cl. 2. "[U]nder the Property Clause, the United
States can administer its federal lands any way it chooses."
*United States v. Gardner*, 107 F.3d 1314, 1318 (9th Cir. 1997).
*See also Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976)("And
while the furthest reaches of the power granted by the Property
Clause have not yet been definitively resolved, we have
repeatedly observed that '[t]he power over the public land thus
entrusted to Congress is without limitations.'")(quoting *United
States v. San Francisco*, 310 U.S. 16, 29 (1940)).

Here Defendants do not submit any evidence that demonstrates
the United States does not appropriately own the land that now
constitutes the MNWR. Moreover, Defendants do not contend the
United States ever relinquished title to the MNWR or that the
MNWR was ever owned by any other entity. To the contrary, in
*United States v. State of Oregon* the Supreme Court noted much of
the land that now makes up the MNWR "was a part of the public
domain of the United States" at the time Oregon was admitted to
the Union, and "[n]o part of it has ever been disposed of, in
terms, by any grant of the United States." 295 U.S. 1, 6 (1935).

The Court found the waters of Malheur Lake and other bodies of
water in the area were not navigable, and, accordingly, concluded
the lands underlying and surrounding those waters did not
automatically pass to the State of Oregon at the time of its
admission into the Union. *Id.* at 14-24. The Court, therefore,
quieted title in the United States to much of the land that now
makes up the MNWR.[4] *Id.* at 29.

Defendants' sole contention, therefore, is that the United
States does not have the constitutional authority to own the
MNWR.[5] Defendants, however, are mistaken.

Prior to Oregon becoming a state in 1859, "the United States
acquired clear ownership of the Oregon Territory, which included
what is now Washington, Oregon and Idaho, as well as portions of
Montana and Wyoming."[6] Office of the Attorney General, State of

---

[4] Defendants acknowledge the Supreme Court held the federal
government owns the MNWR in *United States v. Oregon*, but
nonetheless contend that case is wrongly decided. This Court is
not empowered to overrule Supreme Court precedent.

[5] Defendant Medenbach has raised similar arguments in two
prior proceedings. In each instance the courts rejected
Medenbach's contentions. *See United States v.* Medenbach, No. 96-
30168, 1997 WL 306437, at *2-*3 (9th Cir. 1997); United *States v.
Medenbach*, 1:15-cr-00407-MC, 2016 WL 1394440, at *1 (D. Or. Apr.
7, 2016).

[6] Medenbach contends the "Oregon Territorial Act" of 1848
defined and limited the extent to which the federal government
could own land within the as-yet unformed State of Oregon.
Medenbach is incorrect, however, because that Act did not contain
any provision that disposed of any federally-held lands, and the
federal government retained ownership of lands within the Oregon
Territory that were not expressly granted to the State of Oregon

13 - ORDER RESOLVING ROUND ONE MOTIONS ON THE PLEADINGS

Oregon, Op. No. 8237, 48 Or. Op. Atty. Gen. 1, 1995 WL 400487, at *3 (Jul. 7, 1995). "Oregon never had any claim to sovereignty prior to its admission to the Union," and, therefore, "it had no basis to claim independence or ownership of land." *Id.* The Oregon Attorney General summarized as follows the disposition of lands owned by the federal government and granted to the State of Oregon at the time Oregon was granted statehood:

> By the terms of this compact between Oregon and the United States, Oregon agreed that in return for a grant of certain land and monies from Congress' sale of public land, the state would never interfere with the disposal of the remaining land by the United States. In effect, Oregon acquiesced in federal ownership of the unappropriated public lands within the boundaries of the new state. This agreement preserved the federal government's authority under the Property Clause from challenge by the new state.

*Id.* at *5. Because there is not any evidence in the record that the United States ever relinquished title to the lands that comprise the MNWR, the Court concludes the Property Clause grants the United States regulatory jurisdiction over the MNWR. *See Kleppe*, 426 U.S. at 539.

The Ninth Circuit in *Gardner* addressed a similar situation regarding federal lands in Nevada and concluded the United States had the constitutional authority to regulate those lands under the Property Clause. *See Gardner*, 107 F.3d at 1318 ("[A]s the United States has held title to the unappropriated public lands

---

at the time of statehood.

in Nevada since Mexico ceded the land to the United States in 1848, the land is the property of the United States." Moreover, because Nevada had "no independent claim to sovereignty," the United States can administer its federal lands within the State of Nevada "any way it chooses."). Accordingly, the Court concludes the United States' exercise of regulatory jurisdiction over the MNWR is authorized by the Property Clause, and, therefore, this Court has jurisdiction over the charged offenses that allegedly took place on the MNWR.

For these reasons, the Court **DENIES** Defendants' Motion (#527) to Dismiss for Lack of Subject Matter Jurisdiction and Defendant Kenneth Medenbach's Motion (#505) to Dismiss.

IT IS SO ORDERED.

DATED this 3rd day of June, 2016.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge