Amy Baggio, OSB #011920
amy@baggiolaw.com
Baggio Law
621 SW Morrison, Suite 1025
Portland, OR 97205
Tel:   (503) 222-9830
Fax:   (503) 274-8575

Attorney for Defendant O'Shaughnessy

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:16-cr-00051-BR |
| **Plaintiff,** | |
| v. | |
| **AMMON BUNDY, JON RITZHEIMER, JOSEPH O'SHAUGHNESSY, RYAN PAYNE, RYAN BUNDY, BRIAN CAVALIER, SHAWNA COX, PETER SANTILLI, JASON PATRICK, DUANE LEO EHMER, DYLAN ANDERSON, SEAN ANDERSON, DAVID LEE FRY, JEFF WAYNE BANTA, SANDRA LYNN PFEIFER ANDERSON, KENNETH MEDENBACH, BLAINE COOPER, WESLEY KJAR, COREY LEQUIEU, NEIL WAMPLER, JASON CHARLES BLOMGREN, DARRYL WILLIAM THORN, GEOFFREY STANEK, TRAVIS COX, ERIC LEE FLORES, and JAKE RYAN** | **JOINT STATUS REPORT IN ADVANCE OF JUNE 15, 2016, STATUS CONFERENCE** |
| **Defendants.** | |

PAGE 1.   JOINT STATUS REPORT IN ADVANCE OF JUNE 15, 2016, STATUS CONFERENCE

The defendants, through Amy Baggio, and the government, through Assistant United States Attorney (AUSA) Ethan Knight, submit the following Joint Status Report In Advance Of June 15, 2016, Status Conference, as directed in the Court's Order of May 6, 2016. (Doc. 523 at 4.)

**CERTIFICATION OF CONFERRAL:** Undersigned counsel certifies that AUSA Ethan Knight was provided a copy of, and consulted regarding the content of, this Joint Status Report. Both the defense and government positions are set forth below.

A. **Proposed Agenda For June 15, 2016, Status Conference**

(1) Impact, if any, of new counsel for Ammon Bundy on current dates;

(2) Calendaring Issues:

a. Dates/time necessary for *evidentiary hearings and argument* on Round 2 motions – Defendants will be in a position to update the Court on the number of estimated days necessary.

b. Dates for *decisions* as to Round 2 Motions to Compel Discovery - The Defendants seek an expedited schedule for consideration of Motions to Compel Discovery expected to be filed as part of Round 2 motions. The Court's decisions on Motions to Compel Discovery are important to have prior to the current July 18, 2016, Round 2 argument date for two reasons. First, if the Court grants a Motion to Compel, that newly-provided discovery may give rise to additional defense motions (such as motions to suppress). Second, the information sought in these motions is important information for trial preparation. Accordingly, the Defendants respectfully request that rulings on Motions to Compel filed in Round 2

    (1) be made in advance of the Round 2 argument dates; and (2) are understood by the Court to potentially give rise to additional motion litigation.

 c. Motions to stemming from evidence provided *after* the "substantially complete" discovery date – Defendants are concerned that additional discovery, such as images of digital devices and reports about digital devices, may give rise to additional motions, such as motions to suppress evidence, that cannot be filed by the June 15, 2016, Round 2 deadline. Defendants wish to notify the Court of this possibility and ask for the timing of any such motions to be discussed at the June Status Conference.

 d. Deadlines for Defendants' Motions to Continue;*

 e. Deadline for Government Notice of Prior Bad Act Evidence, Federal Rule of Evidence 404(b);*

 f. Deadline for Government Production of *Bruton* Statements;*

 g. Deadlines for Defendants' Motions to Sever;*

 h. Deadlines for Final Trial Documents;* and

 i. Days needed for the Pretrial Conference;*

* *See* Section B, below for parties' positions as these dates.

 (3) Discovery issues to be discussed:

  a. Information regarding informants;

  b. Images of digital devices;

   i. When they will be provided;

      ii. Issues related to co-defendants' access to seized digital devices, especially in light of government factual summaries of evidence against various defendants;

  c. Reports on digital devices, which were produced to the third party vendor on June 8, 2016;

  d. Distribution of District of Nevada discovery to Oregon defendants not charged in Nevada;

  e. Information from field offices outside Oregon and other federal agencies;

  f. The large volume of email messages under review as of May 18, 2016;

  g. The OIG investigation related to the shooting of LaVoy Finicum which the government asserts is not discoverable;

  h. Information related to witness identifications; and

  i. Issues related to co-defendants' access to FaceBook account evidence which the government is providing to individual defendants but which it intends to use at a joint trial.

(4) Argument on Defendants' Motion for Notice of Surveillance.

### B.  Joint Proposals/Recommendations Related To Scheduling

#### (1) Proposed Deadline: Defendants' Motions To Continue Trial Date

The Court directed the parties to provide a joint proposal as to a reasonable date by which parties will file motions to continue the September 7, 2016, trial date.  (Doc. 523 at 5; Email from Court, 06/07/16.)  The parties have conferred, and agree that a reasonable date would be June 30, 2016.

### (2) Deadline For Government Notice Of Prior Bad Act Evidence, Federal Rule Of Evidence 404(b)

Defendants made the request for notice of "prior bad act evidence" both in the form of Requests for Discovery (*see, e.g.*, Doc. 180, O'Shaughnessy Discovery Request) and in the form of an April 15, 2016, letter of counsel for Mr. Wampler on behalf of all defendants. Defendants recall that the Court previously tabled discussion of the Defendants' request for Rule 404(b) notice. The parties have conferred and agree that the government should provide notice to all defendants of its intent to introduce other alleged "bad act" evidence for any defendant by July 11, 2016.

### (3) Timing Of *Bruton v. United States* Litigation

On April 27, 2016, Counsel for Mr. Kjar filed on behalf of all Defendants a Motion For Identification Of Defendants' Statements To Be Offered In A Joint Trial And For Production Of Redacted Versions Of Those Statements. (Doc. 472.) The Court directed the parties to confer and provide a joint statement regarding the timing of *Bruton v. United States*, 391 U.S. 123 (1968), litigation. (Doc. 523 at 8.) As the Court stated its Order of May 6, 2016: "The Court notes it cannot efficiently resolve this Motion until the anticipated Federal Rule of Evidence 404(b) motion has been filed and there is a clearer picture of which Defendants will be going to trial on September 7, 2016."

Defendants take the position that the government should provide *Bruton* statements on July 11, 2016, after motions to continue are filed on June 30, 2016, and at the same time as notice of FRE 404(b) evidence, all events which, defendants assert, should be take place in advance of any deadline for motions to sever.

The Government's position is that the Government will provide statements as required by *Bruton* 10 days after the Court rules on defendants' motions to continue/sever.

### (4) Proposed Deadline: Motions To Sever

The Court directed the parties to provide a joint proposal as to a reasonable date by which motions to sever from the September 7, 2016, trial must be filed. (Doc. 523 at 5; Email from Court, 06/07/16.)

Defendants submit that review of proposed prior bad act evidence and co-conspirator statements are necessary before Defendants can effectively evaluate and draft a motion for relief from prejudicial joinder under Fed. R. Crim. P. 14. Defendants therefore submit that if the Court directs the government to provide on July 11, 2016, both notice under Fed. R. Evid. 404(b) and *Bruton*, that a reasonable date for the filing of Defendants' motions to sever would be July 15, 2016.

The Government's position is that motions to sever should be filed the same day as motions to continue – June 30, 2016.

### (5) Suggested Deadline For Filing Of Final Pretrial Papers

In its May 19, 2016, email, the Court directed the parties to provide recommendations for deadlines for filing Final Pretrial Papers. The Defendants' position is that the government's Final Pretrial Papers should be filed by July 29, 2016, and that the Defendants' who are proceeding to trial in September should file their Final Pretrial Papers by August 5, 2016.

The Government's position is that trial documents should be filed 10 days after the Court has ruled on Round Two Motions. It is also the Government's position that, consistent with District practice, defendants' trial documents should be due the same day as the Government's trial documents.

### (6) Days Needed For Pretrial Conference

The Court requested that the parties provide recommendations for the number of days needed for pretrial conference proceedings scheduled to commence on August 24, 2016. (Email from Court, 5-19-16.) The Defendants suggest that, should the parties need to litigate *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), issues, such litigation could take place August 24-26. Discussion of remaining issues, such as motions *in limine* and any outstanding issues related to jury instructions, could be handled beginning the following week, beginning on August 29. This second week might also include discussion of logistics as to *voir dire* and the jury selection process, stipulated exhibits, and general process issues for such a large multi-defendant case (such as the order of witnesses, procedures for direct/cross for co-defendants of government and co-defendant witnesses, agreements that the objection of one defendant will preserve an issue for all, etc.). If the parties end up not engaging in *Daubert* litigation, the second week issues outlined in this paragraph could be addressed beginning on August 24. The parties would offer to provide an update on this suggestion as the parties' case preparation continues to evolve.

The Government has no objection to this proposal.

### C.   Removing Public Gallery

The Court directed the parties to provide a statement of positions and concise summary of authority regarding the proposed removing of the public gallery from the courtroom in which the multi-defendant trial will take place. (Doc. 523 at 7.) Certain of the Defendants' believe that the public gallery should remain in the courtroom. Counsel for Ammon Bundy, in a separate statement set out below, provide the legal basis for their objection to removal of the public gallery.

The Government defers to the Court regarding issues of use and placement of the public gallery.

D.  **Statement From Ammon Bundy's Legal Team**

Due to the lack of any accommodation for private attorney-client calls (all calls to and from the jail are being monitored by the government, including on the so-called attorney-line), Mr. Philpot and Mr. Mumford have not been able to freely communicate confidential legal strategy and other important attorney-client matters with Ammon.  However, early this week both attorneys booked the first available flights to Portland and have arranged significant time to visit and consult with Ammon this week regarding his legal defense and related choices.  Further, counsel for Ammon understands that the government has confiscated, is monitoring, and has distributed privileged attorney-client communications, including to prosecutors in this case.  This clearly raises additional and significant pre-trial and trial related litigation subjects related to Ammon's fundamental rights.  Thus, at this point, Mr. Bundy cannot yet offer a position on the items in the report, and respectfully reserves and requests the right to modify or supplement the report after he is able to visit, in confidence, with his new legal counsel, and he intends to make any such modifications or supplemental statements (if any) as soon as possible thereafter.

However, one separate issue is essential to individually address at this point.  Mr. Bundy adamantly objects to the trial court room being converted so as to prohibit the public from live attendance, and physical presence and observation of trial proceedings - or any other proceedings in this matter.

Both the United States Supreme Court and the Ninth Circuit have recently re-affirmed that an open and public court room is guaranteed by the Sixth and First Amendments (government both a defendant's right, and the public and media's rights), and as a general matter,

the public itself has rights "to be present" in the courtroom where trial and related proceedings are taking place. *Presley v. Georgia*, 558 U.S. 209, 214, 130 S. Ct. 721 (2010).

A video display or other technology does not accomplish the purpose of the rights at issue. "The right to a public trial entitles a criminal defendant 'at the very least ... to have his friends, relatives and counsel **present**, no matter with what offense he may be charged.' *In re Oliver*, 333 U.S. 257, 272, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *see Braun v. Powell*, 227 F.3d 908, 917 (7th Cir. 2000); *Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir.1994)." *United States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012) (Emphasis added.)

The *Rivera* court goes on to explain that the values underpinning the rights at issue include: "ensuring fair proceedings; reminding the prosecutor and judge of their grave responsibilities; discouraging perjury; and encouraging witnesses to come forward." *Id*. at 1229. In *Rivera*, the court also addressed mitigating arguments by the government, holding that it is not just the public's right to witness or see the proceedings – but their actual presence – in view of the judge, prosecutors, and witnesses that is essential.

> The presence of the public [...] reminds the participants, especially the judge, that the consequences of their actions extend to the broader community. Friends and family members, especially a defendant's young children, are particularly effective in this regard, because they are the individuals most likely to be affected by the defendant's incarceration. *Cf*. U.S.S.G. § 5H1.6 (stating that "family ties and responsibilities are not ordinarily relevant" in deciding whether to depart below a Guidelines sentence, but application notes authorize departures when the defendant's sentence "will cause a substantial, direct, and specific loss of essential caretaking"). Moreover, a child's ingenuousness may have an intensely sobering effect on the responsible adults, including on the person being sentenced.

*Id*. at 1230. (9th Cir. 2012).

This is particularly important, and a paramount concern in the present case. The United States Supreme Court has explained that the presence of the public in the court room is a tool

designed to avoid "the suppression of political and religious heresies in ruthless disregard of the right of an accused to a fair trial." *In re Oliver*, 333 U.S. 257, 270, 68 S. Ct. 499, 506 (1948) ("Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution [...and] is an effective restraint on possible abuse of judicial power."). The personal, community and media attention this case has already gained, all inveigh directly against any exceptions under these circumstances. The public, Defendant's family and friends, and the media all should be "present" in the courtroom. *See e.g. Presley v. Georgia*, 558 U.S. 209, 212, 130 S. Ct. 721, 723 (2010) ("The public has a right to be present whether or not any party has asserted the right.") The United States Supreme Court has further held that "the public trial right extends beyond the accused and can be invoked under the First Amendment." *Id*.

This Court should therefore reject the idea of removing the seating gallery or any other provision for trial and other proceedings in this case, that would preclude Ammon's Sixth and First Amendment rights, including specifically that the judge, prosecutors and witnesses experience a present and in person reminder of the rights and legal tensions at issue - as described by the United States Supreme Court and by the Ninth Circuit. In this regard, trial courts are "obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Presley*, 558 U.S. at 215. And, it is plainly "'the law of the land' that no man's life, liberty or property be forfeited as a punishment until there has been a charge fairly made and fairly tried in a public tribunal." *Oliver*, 333 U.S. at 278. As argued and cited above, "public" trial provisions must include an actual "presence" in the courtroom where in-person proceedings are taking place.

PAGE 10. JOINT STATUS REPORT IN ADVANCE OF JUNE 15, 2016, STATUS CONFERENCE

Finally, in the interests of candor and helping the Court remain aware of developments in the case, based upon the preliminary and brief prior communications with new counsel, it is anticipated that after this week's attorney-client visits there may be significant changes in Mr. Bundy's approach to his legal defense.

E.  **Conclusion**

Undersigned counsel offers this Joint Status Report on behalf of Defendants and the Government.

Respectfully submitted on June 8, 2016.

>  */s/ Amy Baggio*
> Amy Baggio, OSB #011920
> 503-222-9830
> Attorney for Defendant O'Shaughnessy