BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**ETHAN D. KNIGHT, OSB #992984**
**GEOFFREY A. BARROW**
**CRAIG J. GABRIEL, OSB #012571**
**CHARLES F. GORDER, JR., OSB #912874**
**PAMALA R. HOLSINGER, OSB #892638**
Assistant United States Attorneys
ethan.knight@usdoj.gov
geoffrey.barrow@usdoj.gov
craig.gabriel@usdoj.gov
charles.gorder@usdoj.gov
pamala.holsinger@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:16-CR-00051-BR |
| v. | GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF INVESTIGATION OF FINICUM SHOOTING (#700) |
| AMMON BUNDY, et al., | |
| Defendants. | |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and through Ethan D. Knight, Geoffrey A. Barrow, Craig J. Gabriel, Charles F. Gorder, Jr., and Pamala R. Holsinger, Assistant United States Attorneys, hereby responds to defendants' Motion to Compel Production of the Investigation of FBI Use of Force and Cover-Up in the Finicum Shooting (ECF No. 700) and the supporting Memorandum (ECF No. 701), filed by defendant Fry on behalf of all defendants.

**I.     Government's Position**

The defendants seek production of reports produced by the Department of Justice's Office of Inspector General ("OIG") and the Deschutes County Sheriff's Office in their investigation of the conduct of certain members of the Federal Bureau of Investigation's ("FBI") Hostage Rescue Team ("HRT").   This separate investigation concerns events that occurred after the January 26, 2016, officer-involved shooting that led to the death of Robert "Lavoy" Finicum. Because the government has already voluntarily provided much discovery concerning this incident, and because further details of this separate investigation are not otherwise subject to discovery since that information is not relevant or material to the issues to be tried in this case, the motion should be denied without a hearing.

**II.    Statement of Facts**

The facts in the public record relevant to this motion are not substantially in dispute.   On January 26, 2016, a vehicle driven by Robert "Lavoy" Finicum at a high rate of speed, in which defendants Ryan Bundy and Shawna Cox were also riding, approached a roadblock manned by law enforcement officers employed by the FBI and the Oregon State Police ("OSP"). Finicum's vehicle veered off the highway, Finicum got out of his vehicle, and he was subsequently shot and killed by OSP troopers after reaching for a firearm concealed in his jacket. A Major Incident Team led by Deschutes County Sheriff Shane Nelson conducted a post-shooting investigation.   They determined that eight shots were fired on that day, six of which were attributed to OSP officers at the roadblock, including the three shots which resulted in the death of Mr. Finicum.   This Major Incident Team, along with Malheur County District Attorney

Dan Norris, determined that the shots taken by the OSP officers, including the lethal shots, were justified under Oregon law. The task force also attributed two additional shots to members of the FBI HRT.

In announcing the Major Incident Team's findings on March 8, 2016, Sheriff Nelson stated the following:

> The HRT operators were interviewed on the evening of January 26 and again on February 5th and 6th during the investigation by the Major Incident Team. Of particular concern to all of us is that the FBI HRT operators did not disclose their shots to our investigators, nor did they disclose specific actions they took after the shooting. The failure by HRT operators to disclose that they fired shots during this contact, and actions they took after the shooting, are the subject of an ongoing investigation by both the Deschutes County Sheriff's Office and the Inspector General of the United States Department of Justice.

https://www.youtube.com/watch?v=x2Tp80QwmAY, available on the website of the Deschutes County Sheriff's office, http://sheriff.deschutes.org.

During the discovery process in this case, the government has voluntarily provided the defense with 22 separate files totaling approximately 549 pages produced by the Major Incident Team's officer-involved shooting investigation, including a video of the shooting. These files include reports of extensive depositions and interviews with the OSP officers involved, reports of evidence collection at the scene of the roadblock, photographs of the scene, and diagrams of an analysis of shots fired. The reports were redacted to prevent the disclosure of the names of the OSP officers involved because of threats made against those officers and their families.

The investigation of the HRT members by the OIG and the Deschutes County Sheriff's Office, as described by Sheriff Nelson on March 8, 2016, remains on-going at present. Reports

of this separate investigation generated by the OIG have not been provided to the defense in discovery.

### III.     Legal Argument

As noted above, the government voluntarily provided defendants with numerous reports generated during the Major Incident Team's officer-involved shooting investigation. These reports cover any issue which could be relevant to the upcoming trial in this matter such as the chain of custody of weapons and ammunition seized from Finicum's vehicle or the voluntariness of any statements made by defendants Ryan Bundy or Shawna Cox after their arrests.

Rule 16(a)(1)(E)(i) of the Federal Rules of Criminal Procedure provides that a defendant is entitled to discovery of documents which are "material to the defense." The term "materiality" under Rule 16 is broader than *Brady* materiality. *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). It includes information "relevant to developing a possible defense," *id.*, or information that "would have helped" a defendant to prepare a defense. *United States v. Hernandez-Meza*, 720 F.3d 760, 768-69 (9th Cir. 2013).

But Rule 16(a)(1)(E) is limited to materials that are relevant to the defendant's response to the government's case-in-chief and does not require production of materials relating to claims challenging the prosecution's conduct of the case in general. *United States v. Armstrong*, 517 U.S. 456, 462-63 (1996) (Rule 16 does not permit discovery of materials related to claim of selective prosecution). Although the government interprets materiality broadly, as the law requires, defendant nevertheless bears the initial burden of satisfying this Court that the documents he demands are actually relevant, in some permissible way, to preparing his defense.

*Muniz-Jaquez,* 718 F.3d at 1183; *United States v. Stever*, 603 F.3d. 747, 752 (9th Cir. 2010).

Reports from the OIG investigation are irrelevant because the jury will be asked at the upcoming trial to determine whether the defendants are guilty or not guilty of the charges alleged in the indictment; it will not be asked to grade the FBI's response to the Malheur refuge occupation and its investigation of the defendants' alleged crimes. *United States v. McVeigh,* 153 F.3d 1166, 1192 (10th Cir. 1998). Although defects in an investigation may be relevant in certain circumstances, such as when a defendant seeks to introduce evidence that someone else committed the crime and law enforcement ignored it, *see, e.g.*, *United States v. Sager,* 227 F.3d 1138, 1145 (9th Cir. 2000), defendants have failed to identify any logical connection between the OIG reports and a recognized defense. Further, if they were to seek to introduce such evidence, it would be inadmissible under Rules 401 and 403. *See, e.g.*, *United States v. Patrick,* 248 F.3d 11, 22 (1st Cir. 2001) (affirming trial court's exclusion of evidence about the investigation's quality as irrelevant and confusing); *United States v. Carmichael*, 373 F. Supp. 2d 1293, 1296-97 (M.D. Ala. 2005).

Furthermore, internal government reports produced during an investigation are not generally subject to discovery. Rule 16(a)(2) of the Federal Rules of Criminal Procedure provides in part as follows:

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.

Here, defendants request internal government documents which are not described in Rule 16(a)(1)(A)-(D), (F), or (G). Instead, they demand internal reports produced in a separate, albeit

**Government's Response to Defendants' Motion to Compel Production of**     **Page 5**
**Investigation of Finicum Shooting (#700)**

collaterally related, investigation of others, rather than of themselves. The defendants have failed to make even a threshold showing of materiality of those collateral reports to their current prosecution.

Defendants suggest that reports of the on-going OIG investigation might be relevant to show institutional bias by the FBI in general or to show specific bias by those HRT members who were at the roadblock. Neither assertion establishes the required threshold of materiality.

There is no appropriate inference which establishes the general proposition. Assuming for the purposes of argument that a particular member of the HRT failed to disclose a shot or shots that he fired, or that the HRT members "picked up their brass" after the shooting, see Def. Mem. at 6, such conduct by one or more HRT members does not logically even begin to prove institutional bias against the defendants by the FBI as a whole. The alleged misbehavior of one or a few agents is no more probative of the attitudes of all FBI employees than the misbehavior of a member of an ethnic or racial group reflects the attitudes of all members of such a group.

Individual witness bias is generally admissible, even though it is not expressly covered by the Rules of Evidence. *United States v. Abel,* 469 U.S. 45, 50-51 (1984). Bias describes the "relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *Id.* at 52; *see also United States v. Hankey,* 203 F.3d 1160, 1171 (9th Cir. 2000) (recognizing bias as evidence that a witness may have a "special motive to lie" because of an interest in the outcome or personal animus). Despite defendants' rank speculation to the contrary, Def. Mem. at 8, however, AUSAs in the District of Oregon do know the identity of those HRT members currently under investigation by

the OIG.  The government will not call those persons as witnesses at the upcoming trial. Therefore, the reports of the on-going investigation are not material to any actual trial witness's bias against any defendant.

Defendants further suggest that information concerning who fired the unattributed two HRT shots is relevant to the defendants' state of mind and could establish a defense that the defendants possessed firearms to protect themselves from an FBI or HRT with a history of using "excessive force."  Even assuming that the concept of self-defense includes arming oneself because when planning to commit a crime one anticipates an unlawful law enforcement response, a proposition which the government does not concede, there is no logical inference one can make from the results of the shooting investigation to any defendant's state of mind regarding self-defense.  Before the occupation began, and up to and including January 26, 2016, the roadblock shooting had not occurred, and could not have therefore impacted anyone's state of mind.  Afterwards, the death of Mr. Finicum was widely and publicly known, but no one remaining on the refuge could have been aware of the further details of the officer-involved shooting investigation until that information was publicly released on March 8, 2016, by Sheriff Nelson, well after the Malheur occupation had ended.  Again, there is no relevant fact concerning the OIG investigation which could be material to the state of mind of any defendant during the course of the conspiracy alleged in this prosecution.[1]

---

[1] Defendants assert that "the FBI HRT squad had a significant operational presence in the Burns area as early as December, *i.e.*, before Bundy et al. took up residence at the refuge." Def. Mem. at 7.  We are at a loss how to respond to this unsupported assertion since the HRT did not arrive on the scene until after the occupation began on January 2, 2016.

**Government's Response to Defendants' Motion to Compel Production of**          **Page 7**
**Investigation of Finicum Shooting (#700)**

Finally, counsel argues on behalf of defendants Shawna Cox and Ryan Bundy that they are "entitled to know why an FBI agent shot at them and then covered it up" because that is "an extension" of their arrests.   However, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."   *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).   This prosecution does not involve a civil law suit against either the FBI or a particular HRT member.   The results of the OIG investigation will not shed any light on whether the arrests of defendants Shawna Cox or Ryan Bundy were supported by probable cause.

## IV.  Conclusion

For the reasons given above, the defendant's Motion to Compel Production of the Investigation of the FBI Use of Force and Cover-Up in the Finicum Shooting should be denied without a hearing.

Dated this 24th day of June 2016.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*s/ Charles F. Gorder, Jr.*
ETHAN D. KNIGHT, OSB #992984
GEOFFREY A. BARROW
CRAIG J. GABRIEL, OSB #012571
CHARLES F. GORDER, JR., OSB #912874
PAMALA R. HOLSINGER, OSB #892638
Assistant United States Attorneys