Ryan Bundy, *Pro Se*
Inmate: Swis# 795070
Multnomah County Detention Center
11540 NE Inverness Drive
Portland, OR 97220
Telephone: (503) 988-3689
*Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| UNITED STATES OF AMERICA, *Plaintiff*, vs. RYAN BUNDY, *Defendant*. | Case No. 3:16-cr-00051-BR-05 DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE CALLS Judge: Honorable Anna J. Brown |
|---|---|

**CERTIFICATE OF CONFERRAL:** Prior to the filing of this motion standby counsel Lisa J. Ludwig, on behalf of *pro se* Defendant Ryan Bundy, conferred with AUSA Geoffrey Barrow. The government takes no position on this motion.

**MOTION**

Defendant Ryan Bundy, *pro se*, respectfully moves the court for a protective order directing that his meetings, correspondence, and phone calls made for the purpose of his legal defense be unlimited, unmonitored and unrecorded by the Government, except to the extent it is necessary to maintain facility security.

Page 1 –  DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER
            FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE
            CALLS

**I.    As a *Pro Se* Defendant in Custody, Mr. Bundy Requires Certain Accommodations to Represent Himself.**

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975). Moreover, the Court stated, "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Id*. As defined by the Court, this right contemplates a defendant's active and meaningful participation in the trial:

> A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial.

*McKaskle v. Wiggins*, 465 U.S. at 174.

Additionally, the Ninth Circuit has held that "time to prepare and some access to materials and witnesses are fundamental to a meaningful right of representation," and that "[a]n incarcerated defendant may not meaningfully exercise his right to represent himself without access to law books, ***witnesses***, or other tools to prepare a defense." *Milton v. Morris*, 767 F.2d 1443, 1446 (9th Cir. 1985) (citing *Faretta*, 422 U.S. at 818)(emphasis supplied); see also *United States v. Sarno*, 73 F.3d 1470, 1491 (9th Cir. 1995)("[T]he Sixth Amendment demands that a *pro se* defendant who is incarcerated be afforded reasonable access to 'law books, witnesses, or other tools to prepare a defense.'" (quoting *Milton*, id.)). It is acknowledged, however, that these requirements are not unconditional. See *Sarno*, id. ("The right of access is not unlimited, but must be balanced against the legitimate security needs or resource constraints of the prison." (citations omitted));

*United States v. Robinson*, 913 F.2d at 717 ("A *pro se* defendant's right of 'some access'

Page 2 –   DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER
               FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE
               CALLS

to resources to aid the preparation of his defense must, however, be balanced against security considerations and the limitations of the penal system." (citation omitted)).

## II.  MCSO Currently Records All Communications and Visits

### a.  MCSO Denies Unmonitored Visits Without Court Order

Captain Derrick Peterson of the Multnomah County Sheriff's Office has responded to defense requests for information about visiting and communications, and participated in the filing of a joint status report regarding the conditions of Mr. Bundy's confinement at the Multnomah County Detention Center (Attachment #1).  His position (via June 7, 2016 email) is that he may not allow any person (other than stand-by counsel and her staff) to have unrecorded contact with Mr. Bundy.  Any exception to this policy would have to be made at the direction of the Court or the United States Marshals.

### b.  MCSO Prohibits Contact with Ammon Bundy

Although Ryan Bundy and his brother and co-defendant Ammon Bundy are housed in the same facility and wish to participate in a Joint Defense Agreement, MCSO has declined to permit them to have any contact with each other within that facility, or any confidential communication about their joint defense, citing a secret policy that prohibits contact between inmates who are close relatives.[1] The United States Marshals have no such rules, and if the Bundys were housed at Sheridan or Columbia County Jail, they could be in the same housing unit.

---

[1] Attachment #2 (articles re:  secret policy)

Page 3 –  DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER
             FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE
             CALLS

    *c. Means of Contact at MCDC*

The Multnomah County Detention Center has several means by which an inmate can be contacted: 1) ***In-person visits in a private, unmonitored room.*** The visitor has to be a professional (lawyer, lawyer's staff, or expert), must be on a list approved by MCDC Command Staff, and must be scanned through a metal detector prior to entry. Inmates are strip-searched following each visit; 2) ***In-person visits in a "non-contact room."*** These visits take place with a glass divider between the inmate and visitor. Communication is via a telephone handset, which records the conversation unless the visitor is a professional. Professional visitors are given a key that gives access to an unrecorded handset; 3) ***Attorney line incoming calls***. These are calls that are only permitted by lawyers and their staff. They are unrecorded and access is accomplished by use of an individual ID code issued by jail command staff after screening and approval; 4) ***Attorney outgoing calls.*** An inmate can make a call to an attorney's office. If that number is known to the jail as the number of an attorney, those calls are not supposed to be monitored or recorded[2]; 5) ***Regular outgoing calls.*** These are made by the inmate to anyone and are monitored and recorded by jail staff and made available upon request to any law enforcement agency for their investigation purposes; and, 6) ***Mail***: All mail that is not to or from a lawyer's office is inspected and copies of letters, documents and photos are supplied to the Government.

---

[2] See section *(e) for discussion.*

Page 4 –   DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER
             FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE
             CALLS

      *d. Privileged Calls are Being Captured and Provided to the Government*

The third-party vendor, Securus, that supplies phone service to MCDC, gives law enforcement direct access to all the recorded content of all calls and monitored visits a detainee has. Last year, Securus reportedly captured and subsequently leaked "at least 14,000 recorded conversations between inmates and attorneys" to the public via the internet. *The Intercept*, "Not So Securus: Massive Hack of 70 Million Prisoner Phone Calls Indicates Violations of Attorney-Client Privilege" November 11, 2015.[3]

Recently in this District in another high-profile case, law enforcement collected, reviewed and redisclosed recorded attorney-client calls to co-defendants. See *United States v. Pedersen*, 3:12-cr-00431-HA, Supervisory Opinion, ECMF #475.

      *e. The United States is Currently Obtaining Recorded Communications of PreTrial Detainees to Learn Planned Legal Strategy in This Case*

Attached is a "302" report regarding another defendant in this case (Attachment #3). The Government agents describe obtaining all of the recordings of Ryan Payne's calls from MCDC, including calls to an attorney, which were obtained by the agents but not listened to. Agents working at the direction of the United States Attorney then reduced the 79 calls to a three page report focused only on the information about Payne's legal strategy that he discusses with his loved ones.

---

[3] Securus has also reportedly amassed a huge database of federally protected consumer propriety network information (CPNI, or "metadata" containing the number you call, at what time and for how long) and has been storing and perhaps selling this date to law enforcement for years. *The Intercept*, "Not So Securus: Massive Hack of 70 Million Prisoner Phone Calls Indicates Violations of Attorney-Client Privilege" November 11, 2015.

Page 5 –   DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER
            FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE
            CALLS

### III. The Ability to Discuss the Case with Advisors, Witnesses, Experts and Co-Defendants is Fundamental to Trial Preparation

When a *pro se* defendant is denied communication with the outside world, he is denied due process. *Milton v. Morris*, 767 F.2d 1443, 1447 (9th Cir. Cal. 1985). Although here Mr. Bundy has limited access in custody to the written documents provided by the Government as discovery, and some legal materials provided by stand-by counsel, he has so far been prohibited from having unrecorded written, telephonic or in-person communication with anyone other than stand-by counsel and her staff.

### a. Ryan Bundy is Entitled to Participate Meaningfully in his JDA

The Ninth Circuit has long recognized that the joint defense privilege is "an extension of the attorney-client privilege." *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000) (explaining that a JDA had established an implied attorney-client relationship between the codefendants and their counsel); see also *United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (recognizing joint defense privilege as extension of attorney client privilege that "protects not only the confidentiality of communications passing from a party to his or her attorney but also 'from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel'") (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)). The privilege is also referred to as the "common interest" privilege or doctrine, because it has not been limited to criminal defense situations or even situations in which litigation has commenced. Whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a

Page 6 –   DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER
            FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE
            CALLS

common interest in litigation should be able to communicate with their respective attorneys *and with each other* to more effectively prosecute or defend their claims. *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)(emphasis supplied).

### b. MCDC's Right to Intercept Mr. Bundy's Communications is Limited

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). See also *Cruz v. Beto*, 405 U.S. 319, 321 (1972). In the First Amendment context a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law. *Pell v. Procunier*, 417 U.S. 817, 822 (U.S. 1974). Prisoners have a First Amendment right to telephone access, subject to reasonable security limitations.'" *Halvorsen v. Baird*, 146 F.3d, 680, 689 (9th Cir.1998) (quoting *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir.1996)); see also *Johnson v. California*, 207 F.3d 650, 656 (9th Cir.2000); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir.1986). Any burden placed upon a prisoner's constitutional rights requires a federal court to take the next step to determine whether it is "'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns." *Turner v. Safley,* 482 U.S. 78, 107 S. Ct. 2254 at 2260-61 (1987). The relevant factors set out by the Court in *Turner* to guide that inquiry are (1) whether there

Page 7 –   DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE CALLS

is a valid, rational connection between the prison policy and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) what the impact accommodation of the constitutional right will have on guards, on other inmates, or on the allocation of prison resources; and (4) whether the regulation or policy is an exaggerated response to prison concerns. Id at 2262. Given the critical balance that must be preserved between "the 'policy of judicial restraint regarding prisoner complaints and . . . the need to protect constitutional rights,'" id at 2259. (quoting *Procunier v. Martinez*, 416 U.S. at 406), the *Turner* Court concluded, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interest." 107 S. Ct. at 2261.

Here, the legitimate penological interest served by monitoring and recording a pretrial detainee's calls and visits is facility security:  the need to ensure that detainees do not use the phones and visits to stage escape attempts or commit crime within the institution.

> c. *No Legitimate Penological Interest is Served by Making a Pretrial Detainee's Calls Available to the Prosecution*

Restrictions on a pretrial detainee's exercise of basic constitutional rights must be justified by a legitimate penological interest.  It is settled that a prison inmate "retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (U.S. 1974).  While monitoring by MCDC staff for the facility security issues listed above might meet this test, handing over all of the recordings, or permitting a private contractor to do so, has no relationship to any

Page 8 –   DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER
            FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE
            CALLS

penological objective except to keep the facilities full by invading the detainee's rights and privacy to obtain an advantage in the litigation and more convictions.

>  d. *Subjecting a Pretrial Detainee to 24 hour Surveillance by the Prosecution Violates Due Process*

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755. See also *Reno v. Flores*, 507 U.S. 292, 316(1993) (O'CONNOR, J., concurring) ("The institutionalization of an adult by the government triggers heightened, substantive due process scrutiny"); *Foucha v.Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action"); id., at 90 (KENNEDY, J., dissenting) ("As incarceration of persons is the most common and one of the most feared instruments of state oppression and state indifference, we ought to acknowledge at the outset that freedom from this restraint is essential to the basic definition of liberty in the Fifth and Fourteenth Amendments of the Constitution").

A defendant, including a *pro se* defendant, on release pre-trial has the ability to consult with whomever he wants:  to meet jointly with co-defendants, to research and identify witnesses, to discuss his case with experts, to receive the honest counsel of loved ones about how to proceed.  A defendant in custody is stripped of this ability to communicate frankly, not because the jail screens his calls for indicators of escape plans and crime within the jail, but because MCDC (and Securus) make those recorded calls, visits and mail available to the prosecution.  This puts the pretrial detainee at an additional and significant disadvantage unjustified by any security concern.

Page 9 –   DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER
            FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE
            CALLS

> b. *As a Pro Se defendant, Ryan Bundy Should be Permitted to Communicate Confidentially with the Advisors of his Choosing to Develop Legal Strategy*

In order to make Mr. Bundy's right to self-representation manifest, he needs to be able to consult with advisors and experts, and interview witnesses and potential witnesses, with the frankness that only comes in a confidential setting. It is well-accepted in cases analyzing the attorney-client relationship that only when the communications are confidential are they assured of the openness that in turn supplies effective representation. *Ching v. Lewis*, 895 F.2d 608 (9th Cir. Ariz. 1990)(A prisoner's right of access to the courts includes confidential contact visitation with his counsel).

The same is true here: Mr. Bundy cannot act as his own lawyer if he is denied the most basic privacy to discuss his legal options with trusted advisors, trial strategy with his co-defendants, and both inculpatory and exculpatory material with potential witnesses he may call at trial. He cannot safely conduct himself as a *pro se* defendant when he is being denied what an out of custody defendant would have, and there is no legitimate justification for the Government to invade and surveil his pretrial investigation, research and preparation.

## IV. Remedies Requested

Mr. Bundy understands that the outgoing calls from the jail, including those from all inmates to their attorneys are recorded by the third-party vendor, Securus.[4] If no mechanism exists to make those outgoing calls free from surveillance, he requests that the Court order that his outgoing calls not be provided by Securus to any law

---

[4] Attorney calls are not supposed to be monitored, but as discussed above, errors and disclosures are common.

Page 10 – DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER
         FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE
         CALLS

enforcement agency except MCSO for screening for facility security reasons, and that MCSO be ordered not to redisclose any recordings to any other law enforcement agency.

Further, or in the alternative, Mr. Bundy requests the Court permit him to designate any individual, including nonlawyer advisors, witnesses and experts, as a "professional" for the purpose of receiving a code to make incoming calls to him at MCDC, provided they otherwise meet the security requirements.

Further, or in the alternative, Mr. Bundy requests that the Court order that he be permitted in-person, unmonitored, unrecorded visits with any advisor, expert or potential witness so that he can prepare to represent himself at trial.

Further, Mr. Bundy requests that the Court prohibit the disclosure of the names or dates of Mr. Bundy's visits, calls or correspondence by MCSO to any other agent of the Government.

Finally, Mr. Bundy requests that the Court order that the Government identify and disclose to him any and all recordings, reports and records already collected about his communications.

Respectfully submitted this 27th day of June, 2016.

/s/ Ryan Bundy*
*Pro Se Defendant*

\*Filed on behalf of Mr. Bundy by standby counsel Lisa J. Ludwig, OSB #953387

Page 11 – DEFENDANT RYAN BUNDY'S MOTION FOR PROTECTIVE ORDER FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE CALLS