J. Morgan Philpot (Oregon Bar No. 144811)
Marcus R. Mumford (admitted pro hac vice)
405 South Main, Suite 975
Salt Lake City, UT 84111
Telephone (801) 428-2000
morgan@jmphilpot.com
mrm@mumfordpc.com
*Attorneys for Defendant Ammon Bundy*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| United States of America,<br><br>      *Plaintiff*,<br><br>v.<br><br>Ammon Bundy, *et al*,<br><br>      *Defendant*. | Case No. 3:16-cr-00051-BR<br><br>DEFENDANT AMMON BUNDY'S MOTION TO CONTINUE SEPTEMBER 7, 2016 TRIAL DATE<br><br>Judge:  Hon. Anna J. Brown |

Ammon Bundy, through undersigned counsel, respectfully moves the Court to continue the current trial date set for September 7, 2016.  The grounds for this motion are as follows:

1.  <u>Prior Speedy Trial Right Assertions</u>.  Mr. Bundy has directly asserted his right to both a speedy and fair trial since his arraignment.    Nevertheless, the initial trial date was vacated over his objection, and his subsequent request to move for an earlier trial date was denied.  *See* Dkt. No. 470.

2.  <u>New Legal Counsel</u>.  For several reasons, including Mr. Bundy's desire and choices for pursuing his defense strategy, including pretrial motion practice decisions and discovery based work and motion related decisions, and the need to change his litigation approach and potentially revisit significant defense options, this month Mr. Bundy had new counsel substitute in, replacing his prior attorneys and now appear in this matter, as of June 1, 2016.  *See* Dkt. Nos. 610, 615, 647, 655 and 665.

3. Prior Representation and Legal Strategy. The existing expedited pretrial schedule (or "compressed timeframe") has a timeline where two significant pretrial motion deadlines have passed while several defense issues currently being reviewed by Mr. Bundy's new counsel have passed, including release issues, attorney-client access, privileged information, and other issues, as well as unaddressed legal concerns regarding Mr. Bundy's constitutional rights being put at issue in this trial, including his right to fully assert and fully litigate an innocence defense.

4. Pretrial Detention & Simultaneous Prosecutions. Mr. Bundy's pretrial detention (including but not limited to the restrictive conditions and excessive limitations being placed on him) has rendered it virtually impossible for him to participate meaningfully in his defense, including with his new defense counsel, on a schedule and in line with the current trial schedule. In fact, given the Court's recent ruling on the "crime of violence" issue, *see* Dkt. No. 671, it appears the government's overtly stated legal predicate (and the Court's subsequently expressed basis for its support) justifying Mr. Bundy's initial pretrial detention hearing and pretrial detention order has been significantly, if not completely compromised.[1] Defendant was ordered detained on January 29, 2016, based on the government's motion arguing that this case involved a crime of violence under 18 U.S.C. § 3142(f)(1). (Docket 26) The government had argued as follows:

> The charged offense involves the ongoing armed occupation of the Malheur National Wildlife Refuge (MNWR). Title 18, United States Code, Section 372 is a crime of violence for purposes of the Bail Reform Act because it "has as an element of the offense the use, attempted use, or

---

[1] The same "crime of violence" analysis employed by the Court in dismissing Count 3, has been expressly held by the Ninth Circuit to apply to the Bail Reform Act. *See United States v. Twine*, 344 F.3d 987, 987-88 (9th Cir. 2003)( "[W]e are bound by our holding in *United States v. Canon*, 993 F.2d 1439, 1441 (9th Cir.1993) […]for purposes of the Bail Reform Act.")

> threatened use of physical force against the person or property of another"
> and it is a felony that, "by its nature, involves a substantial risk that
> physical force against the person or property of another may be used in the
> course of committing the offense."

(Docket 23 at 4) The government's argument was based on the definition of a "crime of

violence" set forth in 18 U.S.C. § 3156(a)(4)(A). But the language from § 3156(a)(4)(A)

mirrors in all material respects the language from 18 U.S.C. § 924(c), defining a crime of

violence as set forth in 18 U.S.C. § 924(c)(3). On June 10, 2016, this court analyzed §

924(c)(3) and dismissed count three of the Superseding Indictment, based on the fact that

18 U.S.C. § 372 was not a "crime of violence." (Docket 671) The effect of the court's

ruling is that it was error to have detained Defendant from the outset of this case, and

Defendant should have been out on release able to review discovery, confer with his

lawyers unimpeded, and assist in assembling the resources for his defense. Defendant

intends and has notified the government concurrent with the filing of this motion that he

intends to seek immediate review of his detention order. The matter has been somewhat

complicated, as the court is aware, because the government has initiated a simultaneous

prosecution in Nevada federal court. At least one defendant in this case obtained his

release in this case only to be taken into immediate custody and incarcerated in Nevada

pending trial. Defendant has been attempting to review matters in both jurisdiction to

bring before the court the proper motion to address the unfairness presented by the issue.

Federal courts have long recognized:

> The Supreme Court long ago recognized that "the cruelty of harassment
> by multiple prosecutions" can violate the Due Process clause of the Fifth
> Amendment. *Bartkus v. Illinois*, 359 U.S. 121, 127 (1959). The question is
> whether the government is attempting "to wear [plaintiffs] out by a
> multitude of cases with accumulated trials." *Hoag v. New Jersey*, 356 U.S.
> 464, 467 (1958) (quoting *Palko v. Connecticut*, 302 U.S. 319, 328 (1937)).

*PHE, Inc. v. U.S. Dep't of Justice*, 743 F. Supp. 15, 24-25 (D.D.C. 1990). In *PHE*, the federal court exercised its equitable power to enjoin multiple, simultaneous prosecutions against the distributors of sexually-oriented media: a "coordinated effort," beginning with federal prosecutors in Utah and the Eastern District of North Carolina, to force those distributors "to face criminal prosecutions in multiple federal district courts for the purpose of coercing [them] to refrain from distributing materials which [the government] acknowledge are constitutionally protected," a strategy which the court characterized as intending to result in "a war of economic attrition," wherein the government would essentially "drive [the distributors] out of their chosen profession." *Id*. at 20. Among other things, the court relied on *Dombrowski v. Pfister,* 380 U.S. 479 (1965), where the Supreme Court held "that federal courts may enjoin not only threats of prosecution, but indictments and prosecutions that are calculated to infringe upon First Amendment rights." *Id*. at 22 (describing how the court was justified in *Dombrowski* to enjoin the prosecutions of civil rights workers active in fostering civil rights for blacks in Louisiana and other southern states). In fact, that is why the United States Department of Justice has long had a strict policy against dual prosecutions, except in the most limited of circumstances. This policy, termed the "Petite Policy," requires among other things, that the Assistant Attorney General provide express approval for any dual prosecutions "based on substantially the same act(s) or transaction(s)." United States Attorney Manual § 9-2.031, available at https://www.justice.gov/usam/usam-9-2000-authority-us-attorney-criminal-division-mattersprior-approvals#9-2.031 (last checked June 29, 2016). In this case, Defendant's counsel reached out to federal prosecutors recently and confirmed that no approval was sought or granted by either office in the prosecution of cases pending

here and in Nevada – which as the court knows are both based in part on Defendant's alleged actions in Nevada in 2014. That being the case, the government's policy provides that "[t]he United States will move to dismiss any prosecution governed by this policy in which prior approval was not obtained," subject to a limited procedure wherein the government may seek approval retroactively. *Id*. Suffice it to say, for purposes of this motion, Defendant requires additional time to resolve the unfairness presented by the government's actions before he should be forced to stand trial.

5.  <u>Due Process</u>. After review of the present status of this case and the consequences of his current pretrial detention, and after consultation with his attorneys, Mr. Bundy has concluded that a fair trial demands that he must fully litigate his release, and this necessitates the time to do so, and the subsequent time to prepare once on release.  It is also well established that there is a point at which detention in a particular case can become so prolonged and/or so restrictive that its overall effect is punitive and therefore impermissible under the Due Process Clause of the Fifth Amendment.  *See, e.g., United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir.1993); *United States v. Gelfuso*, 838 F.2d 358, 359–60 (9th Cir.1988); *United States v. Gonzales Claudio*, 806 F.2d 334, 339 (2d Cir.1986), cert. dismissed, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986); *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir.1986).

6.  <u>Discovery Review and Preparation</u>.  In addition to the above grounds, Mr. Bundy has read the descriptions of other defendants who have also moved for a continuance (e.g. Ryan, Patrick, Ritzheimer, Thorn, and others), and their description of discovery review, and timing, and concurs that review and analysis of the government's produced discovery (and the necessary and related investigation) in the context of how the pretrial schedule

and protocols have been developed, circumstances simply requires more time, under any reasonable consideration of fairness, than the current trial schedule allows.

    7.  <u>Speedy Trial "Ends of Justice" and Waiver</u>. Regarding Speedy Trial rights, Mr. Bundy continues to assert his right to a Speedy Trial, however, pursuant to the provisions of the Speedy Trial Act much time is automatically excluded for pretrial motions, and the Court has already issued (over Mr. Bundy's objection) a "complexity" ruling excluding all time from arraignment through trial based upon the Speedy Trial Act's end of justice provision. **Here, Mr. Bundy is asking the Court to vacate the current trial date, and agrees to a short sixty day (60) period of time to litigate his release and to further prepare (with his new legal counsel) before his can be prepared to asked for a specific trial date or inform the court when he and his legal counsel can reasonably be prepared to proceed to trial.** What Mr. Bundy seeks is a status hearing at the end of that time period to address this matter further. This timing will be dramatically affected by the outcome of other forthcoming litigation, including particularly litigation regarding his pretrial release.  Thus, during this time, pursuant to 18 U.S.C. § 3161(h)(7)(a) Mr. Bundy agrees that this one sixty day period should be excluded from calculation on the Speedy Trial Act 70-day clock because the ends of justice served by taking this one discrete action outweigh the best interests of the public and his own speedy trial rights, so that the ultimate trial will be fair, and that Mr. Bundy's other rights at issue are not sacrificed.  Mr. Bundy does not "waive" any speedy trial right, but instead agrees to a discrete exclusion of time under the Speedy Trial Act, and reserves the right to further

consider any other continuance or exclusion of time while asserting and maintaining his right to a speedy trial.[2]

## Conclusion

Finally, Mr. Bundy has not conferred with the government on this motion, because it was not until approximately 10:30 pm Pacific Time, after much consultation with his legal counsel, that he agreed to file this motion, judging that his larger interest in a fair trial, must at this point request a continuance of the trial date.

Respectfully submitted this 30th day of June, 2016.

/s/ Marcus R. Mumford
Marcus R. Mumford
Attorney for Ammon Bundy

/s/ J. Morgan Philpot
J. Morgan Philpot
Attorney for Ammon Bundy

---

[2] *Zedner v. United States*, 547 U.S. 489, 500-01, 126 S. Ct. 1976, 1985, 164 L. Ed. 2d 749 (2006) ("Petitioner contends, and the Government does not seriously dispute, that a defendant may not prospectively waive the application of the [Speedy Trial] Act. We agree. […]Conspicuously, § 3161(h) has no provision excluding periods of delay during which a defendant waives the application of the Act, and it is apparent from the terms of the Act that this omission was a considered one. Instead of simply allowing defendants to opt out of the Act […]Among the factors that a district court must consider in deciding whether to grant an ends-of-justice continuance are a defendant's need for "reasonable time to obtain counsel," "continuity of counsel," and "effective preparation" of counsel. § 3161(h)(8)(B)(iv) […] The purposes of the Act also cut against exclusion on the grounds of mere consent or waiver."