BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**ETHAN D. KNIGHT, OSB #992984**
**GEOFFREY A. BARROW**
**CRAIG J. GABRIEL, OSB #012571**
Assistant United States Attorneys
ethan.knight@usdoj.gov
geoffrey.barrow@usdoj.gov
craig.gabriel@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:16-CR-00051-BR |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF NEVADA DISCOVERY (#823)** |
| **AMMON BUNDY, et al.,** | |
| Defendants. | |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and through Ethan D. Knight, Geoffrey A. Barrow, and Craig J. Gabriel, Assistant United States Attorneys, hereby responds to defendants' Motion to Compel Production of Nevada Discovery (ECF No. 823) and the supporting Memorandum (ECF No. 824), filed by defendant Dylan Anderson on behalf of all defendants not named in Nevada case.

I.  **Government's Position**

   a.  **Background**

The Superseding Indictment in this case charges twenty-six defendants with conspiracy to impede officers of the United States, in violation of Title 18, United States Code, Sections 371 and 2. The charged conspiracy began on or about November 5, 2015, and continued through February 12, 2016. As alleged in the Indictment, defendants conspired to impede officers of the U.S. Fish and Wildlife Service and the Bureau of Land Management from carrying out their official duties by taking over the Malheur National Wildlife Refuge (MNWR) in Harney County, Oregon.

Defendants Ryan Bundy, Ammon Bundy, Ryan Payne, Peter Santilli, Brian Cavalier, Blaine Cooper, and Joseph O'Shaughnessy (herein the common defendants) also face charges in the District of Nevada. The Nevada charges arise from allegations that the common defendants conspired to, and did, assault, impede, and extort federal law enforcement officers in and around Bunkerville, Nevada, in April of 2014, while those officers were executing federal court orders to remove and impound trespass cattle from federal public lands.

The remaining nineteen defendants in this case are not charged in the Nevada case and none of them is alleged to have engaged in illegal activity related to the events in Nevada.[1] The government has produced, and as it becomes available will continue to provide, discovery produced in the District of Nevada to the common defendants. The government has also reviewed the Nevada discovery for information that is discoverable in this case. Based on that

---

[1] One defendant, Neil Wampler, has made a public statement that he was present at Bunkerville.

**Government's Response to Defendants' Motion to Compel Production of**  **Page 2**
**Nevada Discovery (#823)**

review, the government has produced materials generated in the District of Nevada that are discoverable in this case to all defendants.

The defendants who are not charged in Nevada now seek to compel production of all discovery materials produced in the District of Nevada on grounds that they were already produced to their co-defendants. Defendants speculate that social media and e-mail data collected in the Nevada prosecution is relevant and material because it may show ongoing relationships between the Nevada defendants continuing through the MNWR occupation and no affiliation with the Oregon-only defendants prior to the MNWR takeover. (Defs.' Mem. 2). They suggest that this information could lead to exculpatory or impeachment evidence as to whether they were members of the same conspiracy as the common defendants. *Id.* The non-common defendants also speculate that the Nevada discovery may be relevant to unspecified witness bias or impeachment and may include *Brady* materials.

Defendants' Motion to Compel should be denied without a hearing because the materials they seek are not discoverable in this case.

### b.    Nevada Protective Order Insufficient

Defendants suggest that production of the Nevada materials in this case would have no impact on the prosecution because they will agree to abide by the Nevada protective order as well as the Protective Order entered in this case. In the District of Nevada, the discovery is currently subject to an interim protective order that closely tracks the language of the Oregon Protective Order. *See* Attachment A. A more restrictive protective order has been sought by the Nevada prosecution and it is currently the subject of litigation in Nevada. The concern with

defendants' proposal is that the Interim Protective Order has not adequately protected sensitive discovery in the Nevada case. As set forth in the Motion for Interim Protective Order and the Motion for Protective Order and Supporting Memorandum (Attachments B and C hereto), the Nevada discovery materials include information that identifies witnesses and victims. The Motions cite specific examples in which supporters of the Nevada defendants have, in the past, used social media to harass and intimidate law enforcement and civilian victims and witnesses in the Nevada case. However, even after the entry of the Interim Protective Order, investigative information from the Nevada case was published to a website affiliated with one of the common defendants, information that could only have been obtained from the discovery produced in the Nevada case and subject to the Interim Protective Order.

Even with an interim order in place, there is no guarantee that the information will not be further disseminated and used for an improper purpose. Accordingly, dissemination of the Nevada discovery to the non-common defendants who are otherwise not entitled to it only increases the risk that the victim and witness information would be misused and thereby needlessly jeopardize their safety.

      **c.**    **The Charged Conspiracies Are Separate and Distinct**

Defendants' argument that the Nevada discovery will show that they were not part of the charged conspiracy in this case is meritless. The indictment in Nevada charges a discrete conspiracy that is temporally and geographically separated from the conspiracy in this case. The Nevada discovery is being provided to the common defendants out of an abundance of caution to insure that the common defendants have any and all statements they may have made in

connection with that case as well as access to other Rule 16 materials and information so they may assess their liability in that case concurrently as they prepare for trial in this case.

Any evidence generated by the Nevada investigation that the government intends to use in this case and all information that is potentially discoverable in this case has already been produced to all defendants, including the non-common defendants. For example, the Nevada investigation obtained information from a Dropbox account associated with Ryan Payne that includes relevant discoverable information about the planning of the Oregon conspiracy and the occupation of the MNWR. The Nevada search warrant for that account and the fruits of that search have been provided to all defendants in this case. As this Court knows, defendants in Oregon will be challenging the admissibility of this evidence. Similarly, the Nevada investigation obtained a search warrant for defendant Santilli's YouTube account. Much of this information is duplicative of materials obtained and produced in the Oregon case. Nevertheless, the government has produced the fruits of the Nevada warrant to all defendants in this case. Finally, Nevada investigators obtained a search warrant for a Facebook account associated with an individual charged in Nevada who is not charged in this case. Fruits of that search include videos from the MNWR, and those materials have been produced to all defendants. The remaining information is not discoverable as to the non-common defendants.

To the extent that the non-common defendants wish to prove that they were not part of the Nevada conspiracy or did not participate in the events in Bunkerville, Nevada, in April of 2014, the government will work with the non-common defendants on a joint stipulation to that effect.

**Government's Response to Defendants' Motion to Compel Production of         Page 5
Nevada Discovery (#823)**

### d.  Evidence Regarding the Events in Bunkerville Will Be Limited

The government intends to offer extremely limited evidence regarding the events in Bunkerville, Nevada, in order to offer the jury a coherent and comprehensible story regarding the charged conspiracy.  *See United States v. Vizcarra Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995).   The evidence at trial will show that the common defendants repeatedly referred to the events in Bunkerville as justification for challenging the federal government and occupying the MNWR.   For example, the government will present evidence that on November 5, 2015, Ammon Bundy and Ryan Payne met with Sheriff Dave Ward in his office in Burns, Oregon. During this meeting, Payne carried a firearm on his hip.   Payne and Bundy gave Sheriff Ward an ultimatum that if he did not prevent the Hammonds from serving their federal sentence and force the federal government to leave Harney County, they would bring thousands of people to Harney County and create extreme civil unrest in the community.[2]   Payne warned Sheriff Ward that they would not be able to control what those responding to their call would do.   Ammon Bundy told Sheriff Ward that Bundy and his supporters had won a great victory over the federal government in Bunkerville, Nevada, in April of 2014, when they stood against the federal government and the government was forced to retreat.   Sheriff Ward understood this to be a threat that if he did not comply with their wishes, Bundy and Payne would bring violence and bloodshed to his community.   This is but one example.

On multiple occasions, defendants claimed, through social media, press conferences and to witnesses, that the occupation of the MNWR was "another Bunkerville."   In order to give the

---

[2]  As this Court knows, Dwight and Steven Hammond were convicted of arson and had been ordered to serve statutorily required five-year sentences.

**Government's Response to Defendants' Motion to Compel Production of         Page 6
Nevada Discovery (#823)**

jury context for what "Bunkerville" refers to, the government will present evidence that: Bunkerville is located in Southern Nevada; in March and April of 2014, the Bureau of Land Management initiated an operation to execute federal court orders to impound cattle belonging to Cliven Bundy that were grazing unlawfully on federal public lands; about a week after initiating the impoundment, the BLM suspended operations after receiving information that hundreds of people had travelled to Bunkerville, Nevada, with guns, in support of Cliven Bundy and for the purpose of forcing the cessation of the impoundment; after the BLM announced publicly that it had stopped the impoundment operations for safety reasons and that it would leave the area, hundreds of Bundy supporters, including many openly carrying firearms, converged on the impoundment site demanding that the BLM law enforcement officers leave the site immediately and release the impounded cattle.   This information is relevant to explain to the jury the meaning of the defendants' references to Bunkerville or Bundy Ranch.   However, all of this very basic information is available from many different public sources and none of it is unique to or drawn solely from the discovery in the Nevada case.

The government will not seek to prove that any defendant committed a crime in Bunkerville or that they were part of the alleged conspiracy arising from Bunkerville.   That will be a matter for a separate jury at a separate trial in a different district.   Instead, the government will introduce limited information in order to put defendants' words and actions in context.   In order to prevent a trial within a trial regarding the events in Bunkerville, the government will file a motion in limine to carefully limit the scope of evidence regarding the Bunkerville events.

/ / /

**Government's Response to Defendants' Motion to Compel Production of            Page 7
Nevada Discovery (#823)**

II.     Conclusion

For the reasons set forth above, Defendants' Motion to Compel Production of Nevada Discovery should be denied without a hearing.

Dated this 8th day of July 2016.

                                              Respectfully submitted,

                                              BILLY J. WILLIAMS
                                              United States Attorney


                                              *s/ Geoffrey A. Barrow*
                                              ETHAN D. KNIGHT, OSB #992984
                                              GEOFFREY A. BARROW
                                              CRAIG J. GABRIEL, OSB #012571
                                              Assistant United States Attorneys